# BRIEF FOR INTERVENOR MERIT SYSTEMS PROTECTION BOARD

---

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

NO. 19-2454

ELFINA MCINTOSH,
Petitioner,
v.

DEPARTMENT OF DEFENSE,
Respondent,

and

MERIT SYSTEMS PROTECTION BOARD,
Intervenor.

---

PETITION FOR REVIEW OF A DECISION OF THE
MERIT SYSTEMS PROTECTION BOARD IN NO. DC-0752-17-0803-I-4

---

Respectfully submitted,

TRISTAN L. LEAVITT
General Counsel

KATHERINE M. SMITH
Deputy General Counsel

STEPHEN FUNG
Attorney
Office of the General Counsel
Merit Systems Protection Board
1615 M Street, NW
Washington, DC 20419-0002
(202) 254-4483

DATE: June 22, 2020

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

STATEMENT OF RELATED CASES ........ iv

STATEMENT OF THE ISSUES ........ 1

STATEMENT OF THE CASE ........ 2

A. Nature of the Case ........ 2

B. Statement of Facts and Disposition Below ........ 2

SUMMARY OF ARGUMENT ........ 5

ARGUMENT ........ 7

I. This Matter Should be Remanded to Allow the Board to Address the Appointments Clause Challenges ........ 7

II. MSPB Administrative Judges Are Not Principal Officers ........ 13

A. The Board's Supervision Power Supports Non-Principal Officer Status ........ 15

B. The Board's Review Power Supports Non-Principal Officer Status ........ 17

C. The Board's Removal Power Supports Non-Principal Officer Status ........ 23

CONCLUSION ........ 26

# TABLE OF AUTHORITIES

## CASES

*Arthrex v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019)................ passim

*Azarkhish v. Office of Pers. Mgmt.*, 915 F.2d 675, 679 (Fed. Cir. 1990)................19

*Byars v. Dep't of the Army*, 9 M.S.P.R. 225, 225-26, 228-29 (1981) .....................19

*Edmond v. U.S.*, 520 U.S. 651 (1997)............................................................. 13, 17

*Elgin v. Dep't of Treasury*, 567 U.S. 1, 22-23 (2012) ..............................................9

*Kling v. Dep't of Justice*, 2 M.S.P.R. 464, 468 (1980)..........................................20

*Lucia v. Securities and Exchange Commission*, 138 S.Ct. 2044, 2055-56 (2018) .........................................................................................4, 10

*Masias v. Secretary of Health and Human Servs.*, 634 F.3d 1283, 1294-95 (Fed. Cir. 2011) .........................................................................24

*McIntosh v. Dep't of Defense*, MSPB Docket No. DC-0752-17-0803-I-4 (Initial Decision, June 24, 2019).........................................................................2

*New Process Steel, L.P. v. Nat'l Labor Relations Bd.*, 560 U.S. 674, 688 (2010) ..........................................................................................22

*Tarrant v. Dep't of Transportation*, 87 M.S.P.R. 308, 310-11 (2000)............. 21, 22

*U.S. v. Eaton*, 169 U.S. 331, 343 (1898) ..................................................................23

**STATUTES**

28 U.S.C. § 1295(a)(9) ........ v

5 U.S.C. § 1203(a) ........ 16

5 U.S.C. § 7701(a) ........ 15

5 U.S.C. § 7701(e)(1) ........ 18, 19

5 U.S.C. § 7701(e)(1)(A) ........ 19

5 U.S.C. § 7701(e)(1)(B) ........ 19

5 U.S.C. § 7703(b)(1)(A) ........ v

**OTHER AUTHORITIES**

*Flynn v. Sec. and Exchange Comm'n*, MSPB Docket No. DC-1221-14-1124-M-4, Order and Certification for Interlocutory Appeal (MSPB, Apr. 23, 2019) ........ 8

MSPB Organization Functions & Delegations of Authority, available at https://tinyurl.com/wus27zp (April 2011) ........ 15

**REGULATIONS**

5 C.F.R. § 1201.117(c)(1) ........ 16

5 C.F.R. § 1201.118 ........ 19, 21

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 47.5, counsel for the intervenor states that he is unaware of any other appeals stemming from this action that were previously before this Court or any other appellate court under the same or similar title. Counsel for the intervenor further states that, as explained in Section I, this Court's decision may directly affect all other appeals of Merit Systems Protection Board decisions pending before this court.

# JURISDICTIONAL STATEMENT

The Court has jurisdiction over this appeal pursuant to 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9).

BRIEF FOR INTERVENOR MERIT SYSTEMS PROTECTION BOARD

---

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

NO. 19-2454

ELFINA MCINTOSH,
Petitioner,
v.

DEPARTMENT OF DEFENSE,
Respondent,

and

MERIT SYSTEMS PROTECTION BOARD,
Intervenor.

---

PETITION FOR REVIEW OF A DECISION OF THE
MERIT SYSTEMS PROTECTION BOARD IN NO. DC-0752-17-0803-I-4

---

## STATEMENT OF THE ISSUES

1. Whether this Court should remand this matter to allow the Merit Systems Protection Board ("MSPB" or "Board") to determine in the first instance whether the administrative judge in this case was an officer under the Appointments Clause and, if so, whether she was properly appointed.

2. Whether MSPB administrative judges are principal officers under the Constitution's Appointments Clause, U.S. Const. art. II, § 2, cl. 2.

# STATEMENT OF THE CASE

## A. Nature of the Case

The petitioner, Elfina McIntosh, seeks review of a Merit Systems Protection Board ("MSPB") administrative judge's initial decision, which became the final decision of the MSPB on July 29, 2019, after neither party petitioned for administrative review. *McIntosh v. Dep't of Defense*, MSPB Docket No. DC-0752-17-0803-I-4 (Initial Decision, June 24, 2019). Appx0001-0056. The administrative judge found that the MSPB had jurisdiction over the petitioner's appeal and affirmed the employing agency's decision to remove the petitioner from federal employment. Appx0001. The petitioner filed an appeal of the MSPB's decision with this Court on September 30, 2019. The MSPB intervenes in this matter to address the petitioner's argument – which was not raised before the MSPB – regarding this Court's recent decision in *Arthrex v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019), and the respondent's request for remand.

## B. Statement of Facts and Disposition Below

On September 18, 2017, the petitioner, Elfina McIntosh, filed an appeal with the MSPB, alleging that the Department of Defense ("agency") improperly removed her from her GS-15 Program and Budget Analyst position. Appx0063, Appx0068-0091. The petitioner alleged that her

removal was unlawful because it constituted race, color, age, and disability discrimination, as well as reprisal for her whistleblowing activity.[1] Appx0003.

On June 24, 2019, an MSPB administrative judge issued an initial decision affirming the agency's removal action. Appx0001-0056. The administrative judge found that the agency proved its charges of misconduct, a nexus between the proven charges and the efficiency of the service, and the reasonableness of the removal penalty. Appx0004-0032, Appx0044-0050. The administrative judge further found that the petitioner failed to establish her affirmative defenses of prohibited discrimination and whistleblower reprisal. Appx0032-0044.

Because the petitioner did not file a petition for review of the administrative judge's decision with the full Board, the administrative judge's decision became the MSPB's final decision on July 29, 2019. Appx0050. On September 26, 2019, the petitioner filed a timely petition for

---

[1] The petitioner waived her claims of discrimination based on race, color, age, and disability discrimination, giving this Court jurisdiction under 5 U.S.C. § 7703(b)(1)(A). Statement Concerning Discrimination, October 15, 2019, ECF Doc. No. 5.

review of the MSPB's decision with this Court. Notice of Docketing, September 30, 2019, ECF Doc. No. 1.

On February 18, 2020, the petitioner filed her opening brief in support of her appeal. Petitioner's Brief ("PB"), February 18, 2020, ECF Doc. No. 13. In the brief, the petitioner argued for the first time that this Court's recent decision in *Arthrex*, a case involving administrative patent judges ("APJs") of the United States Patent and Trademark Office's ("USPTO") Patent Trial and Appeal Board ("PTAB"), meant that the MSPB administrative judge was an improperly appointed principal officer under the Appointments Clause of the United States Constitution. Petitioner's Brief ("PB") at 46-50. On March 23, 2020, respondent filed a motion to remand this matter to the MSPB, arguing that remand was appropriate to allow for a new hearing under a "properly appointed officer[,]" pursuant to the Supreme Court's recent decision in *Lucia v. Sec. Exchg. Comm.*, 138 S.Ct. 2044 (2018). Respondent's Motion for Remand, March 23, 2020, ECF Doc. No. 17. On April 21, 2020, this Court denied respondent's motion for remand without prejudice to it raising the same argument in its responsive brief, and directed the MSPB to inform the Court whether it wished to intervene in this matter. Order, April 21, 2020, ECF Doc. No. 23. On May 11, 2020, the MSPB requested leave to intervene. Merit Systems Protection

Board's Response to April 21, 2020 Order, May 11, 2020, ECF Doc. No. 24. On May 28, 2020, this Court granted the MSPB's request to intervene. Order, May 28, 2020, ECF Doc. No. 26.

## **SUMMARY OF ARGUMENT**

The petitioner and respondent have both requested remand based on their respective beliefs that the administrative judge was an improperly appointed officer under the Appointments Clause, with the petitioner arguing the administrative judge was a principal officer and respondent intimating the administrative judge was an inferior officer. Intervenor agrees that remand is appropriate in this matter, but respectfully requests that this Court remand the matter without ruling on either party's Appointments Clause argument. Intervenor instead requests that this Court remand to allow the Board to make the first determinations as to whether the administrative judge was an officer, either principal or inferior, under the Appointments Clause, and, if so, whether she was properly appointed. Intervenor believes that the Board's expertise and knowledge of its own processes place it in the best position to make these determinations and will be valuable to this Court in future appeals on this issue. The current lack of a quorum at the MSPB does not foreclose such review. The lack of quorum is temporary, rather than structural, and when the Board is reconstituted it

will be able to swiftly rule on these issues and, if necessary, remedy them. Moreover, even if the Court held that the administrative judge was an invalidly appointed officer, the petitioner could obtain no more relief than she could if the Court merely remanded without a substantive ruling: both scenarios require restoration of the Board's quorum before the case can proceed following remand. Such a ruling, however, could potentially halt all other pending MSPB appeals, even if no party to an appeal has raised an Appointments Clause violation.

Additionally, if this Court should choose to address the petitioner's principal officer argument, the Court should not apply its recent holding from *Arthrex* to find that, like USPTO APJs, the MSPB administrative judge was an invalidly appointed principal officer under the Appointments Clause of the United States Constitution. MSPB administrative judges function under a different statutory scheme that vests the Board with significantly greater oversight than the USPTO Director possesses, including potential for complete control over the outcome of final MSPB decisions. Pursuant to the MSPB's governing statute and regulations, administrative judges' decisions become final only if neither party or the Office of Personnel Management petitions for administrative review, ***and*** the Board chooses not to reopen any case on its own motion. Importantly, in contrast to the

USPTO Director, the Board or any Member may choose to review any decision of its administrative judges – even after the decision would otherwise have become final. This vital oversight authority prevents the administrative judges from possessing sufficient power to be principal officers.

## ARGUMENT

### I. This Matter Should be Remanded to Allow the Board to Address the Appointments Clause Challenges

The intervenor believes that remand is appropriate in this matter, but does not agree with either party's premise for their respective remand requests. The petitioner argues that remand is appropriate because it believes MSPB administrative judges are improperly appointed principal officers, whereas respondent's March 23, 2020 remand request is premised on the implication that MSPB administrative judges are improperly appointed inferior officers. Before this Court, intervenor respectfully requests that this matter be remanded to allow the Board to decide both issues in the first instance.

The Board has not yet had an opportunity to make a determination regarding the validity of the appointments of MSPB administrative judges. The question of whether administrative judges are principal officers has not

yet been presented to the Board or any MSPB administrative judge, and in April 2019, an MSPB administrative judge certified the inferior officer issue for interlocutory review by the Board. *Flynn v. Sec. and Exchange Comm'n*, MSPB Docket No. DC-1221-14-1124-M-4, Order and Certification for Interlocutory Appeal (MSPB, Apr. 23, 2019). As of the date of this filing, the *Flynn* matter is pending before the Board.[2] In fact, since the *Flynn* order issued, dozens of other MSPB appeals in which the validity of MSPB administrative judge appointments has been raised have been dismissed without prejudice by MSPB administrative judges to allow the Board to first rule on this issue.

The intervenor respectfully suggests that remand for the Board to consider both issues would be the best path forward. Upon reestablishment of a quorum at the MSPB, both Appointments Clause challenges could be expeditiously reviewed by the Board. If either party is dissatisfied after the Board's ruling, that party could then seek judicial review of the Board's

[2] Because the question of whether MSPB administrative judges qualify as inferior officers is pending before the Board on interlocutory review in a separate appeal, the intervenor currently takes no position on that question at this time. *Flynn v. Sec. and Exchange Comm'n*, MSPB Docket No. DC-1221-14-1124-M-4, Order and Certification for Interlocutory Appeal (MSPB, Apr. 23, 2019).

ruling with this court. Additionally, because neither Appointments Clause issue was raised before the MSPB, the record in this matter has not been developed with respect to administrative judge appointments or authority. Allowing the Board to rule on the matter first would allow development of a full record on the Appointments Clause issue for the Court to review. Moreover, the intervenor's approach would allow the Board's expertise regarding its statutes and procedures to be "brought to bear" with respect to its administrative judges. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 22-23 (2012).

Indeed, the Board's ruling could eliminate the need for this Court to rule on the matter at all. If the Board should determine that MSPB administrative judges are vested with such strong authority that they are, indeed, principal officers, the Board may reduce the administrative judges to inferior officer status by modifying its procedures to weaken their authority or taking other remedial steps, such as altering its procedures that allow administrative judges to review and decide appeals in the first instance.[3] *See* 5 U.S.C. §§ 1204(b)(1), (h); 5 U.S.C. § 7701(b)(1). And if the Board

[3] The Board's authority in this regard stands in contrast to the USPTO, where, as noted by this Court in *Arthrex*, the USPTO lacked the ability to remedy the Appointments Clause issue. *Arthrex*, 941 F.3d at 1327.

should find that the administrative judge was an invalidly appointed inferior officer, the Board could remedy that situation by reappointing its administrative judges and reassigning the appeal to a different administrative judge. *See Lucia*, 138 S.Ct. at 2055-56 (the remedy for an Appointments Clause violation is reassignment to a new, properly appointed inferior officer). In either scenario there would be no need for this Court to address the matter.

Of critical importance, a ruling from the Court in this case that MSPB administrative judges are invalidly appointed – either because they are improperly appointed inferior officers, as respondent implies, or because they are principal officers, whose removal protections, oversight, or decisional authority must be changed to make them into inferior officers, as petitioner contends – will not permit immediate rehearing of petitioner's claims on the merits. Until the MSPB's quorum is restored, the Board cannot cure any appointment deficiencies the Court might identify. Intervenor concedes that, to its knowledge, all MSPB administrative judges are appointed in the same way. Thus, if one administrative judge's appointment is invalid if challenged under *Arthrex* or *Lucia*, all administrative judges' appointments could be deemed invalid. Accordingly, if the Court holds that the administrative judge in the petitioner's case was

invalidly appointed and remands the case to the MSPB for a new proceeding by a properly appointed administrative judge, the MSPB will be unable to reassign the case until a quorum is restored *and* that quorum remedies the appointment deficiencies identified by the Court. Intervenor has no way of knowing how long that will take. Thus, a ruling by the Court that MSPB administrative judges are invalidly appointed under *Arthrex*[4] or *Lucia* will have the same practical effect as if the Court simply remanded the case without a substantive ruling. In either circumstance, the case cannot proceed before the MSPB until a quorum is restored. Judicial economy therefore would better be served by remanding the case without a substantive ruling.

Moreover, the consequences of a ruling against the MSPB on either appointment issue could reach far beyond just the petitioner's appeal. The vast majority of currently pending MSPB appeals do not raise the validity of administrative judge appointments. The MSPB currently has approximately 1,500 appeals pending at the regional level, and approximately 2,700

[4] If, pursuant to *Arthrex*, the Court held that MSPB administrative judges are principal officers and effected a change that converted them to inferior officers, the *Lucia* question would still remain. Thus, as explained above, the MSPB would not be able to process the remanded case until its quorum was restored.

appeals pending administrative review by the Board. Presently, fewer than 200 appeals include a challenge to the validity of administrative judge appointments (all of them under *Lucia* rather than *Arthrex*). If the Court invalidates all administrative judge appointments under *Arthrex* or *Lucia*, it could potentially affect all pending appeals at the MSPB – including the approximately 4,000 appeals in which neither party raised the issue and simply wanted their matter adjudicated by the MSPB. Such a result might require every one of those appeals to be restarted from scratch after reassignment to a new, validly appointed administrative judge. But if none of the administrative judges could be validly appointed until the Senate confirms new Board members, all of those appeals would be put on hold. New appeals continue to be filed every day, and in this scenario all of those appeals would equally be forced to wait.

Intervenor recognizes that ensuring the MSPB is operating in conformance with the Appointments Clause is unquestionably important. However, that issue is best addressed by the Board when a quorum is restored. As explained above, an adverse Appointments Clause ruling from the Court now will not speed review of the petitioner’s case on remand. An adverse ruling could, however, deprive thousands of other MSPB appellants of the ability to have their appeal processed in a timely fashion. The Court

need not reach this inequitable result, and should avoid it by remanding this case without ruling on the *Arthrex* or *Lucia* challenges.

## II. MSPB Administrative Judges Are Not Principal Officers

In the event this Court decides to address the petitioner's *Arthrex* argument, it should hold that the MSPB administrative judge in the underlying appeal was not a principal officer under the Appointments Clause of the Constitution.[5] The petitioner bases her argument on this Court's recent decision in *Arthrex,* where this Court found that USPTO APJs were principal officers under the Appointments Clause. *Arthrex*, 941 F.3d at 1335. As explained below, the MSPB's use of administrative judges, including the Board's unrestricted oversight and review authority over its administrative judges' decisions, differs in crucial respects from the structural barriers to strong oversight that compelled *Arthrex*'s conclusion that USPTO APJs were principal officers.

In *Arthrex*, this Court applied the Supreme Court's analysis from *Edmond v. U.S.*, 520 U.S. 651 (1997), in which the Supreme Court held that

[5] Because, as noted above, the inferior officer issue is currently pending before the Board, the intervenor does not offer an alternative argument on that issue before this Court. Additionally, in the event this Court remands to the Board for consideration of the principal officers issue, the Board will not be bound by any position put forward in litigation in this matter.

appellate military judges of the Coast Guard Court of Criminal Appeals were inferior officers under the Appointments Clause. This Court determined that, although the *Edmond* court expressed that "there is 'no exclusive criterion for distinguishing between principal and inferior officers for Appointments Clause purposes,'" the *Edmond* court focused on three factors it believed were relevant to determining whether an individual was a principal, versus an inferior, officer. *Arthrex*, 941 F.3d at 1328-29 (quoting *Edmond*, 520 U.S. at 665). Those three factors were: (1) review power; (2) supervision power; and (3) removal power. Together, "[t]hese factors are strong indicators of the level of control and supervision appointed officials have over the officers and their decision-making on behalf of the Executive Branch. The extent of direction or control in that relationship is the central consideration . . . because the ultimate concern is 'preserv[ing] political accountability.'" *Id.* at 1329.

This Court found in *Arthrex* that, while the supervision power factor supported USPTO APJs being inferior officers, the other two factors led to the conclusion that the APJs were ultimately principal officers. *Arthrex*, 941 F.3d at 1335. Intervenor believes this Court should reach the opposite conclusion for MSPB administrative judges because, in contrast to *Arthrex*, all three *Edmond* factors strongly support non-principal status.

### A. The Board's Supervision Power Supports Non-Principal Officer Status

The second *Edmond* prong, which is addressed first because it more clearly explains the MSPB's structure, is "the level of supervision and oversight an appointed official has over the officers." *Id.* at 1329; *see also Edmond*, 520 U.S. at 664-65. In *Arthrex*, this Court determined that the USPTO Director's supervisory power over APJs supported non-principal officer status for APJs, noting in particular the Director's authority to promulgate regulations, ability to designate opinions as precedential and control processing of cases, and administrative supervisory authority. *Arthrex*, 941 F.3d at 1331-32. In this regard the MSPB is similarly situated to the USPTO. The Board has sole authority to issue all rules and procedures regarding adjudicatory issues, including how MSPB appeals are processed and decisions are issued. 5 U.S.C. § 7701(a). Indeed, the authority to hear all appeals originates with the Board; MSPB administrative judges only hear appeals via Board delegation (and do not hear all appeals that come before the Board, as some are heard first by administrative law judges and some are decided directly by the Board itself). 5 U.S.C. § 7701(b)(1). Through its delegation authority, the Board controls how all

appeals are processed, including determinations on which administrative judge will be assigned to a given appeal.[6] *See* MSPB Organization Functions & Delegations of Authority, available at https://tinyurl.com/wus27zp (April 2011) ("Delegations Manual") at 15-20. Moreover, only the Board may issue precedential opinions, by which all administrative judges are bound when ruling on cases. 5 C.F.R. § 1201.117(c)(1).

Additionally, again like the USPTO, the Board Chairman exercises management supervision over the entire MSPB, including the administrative judges. The Board Chairman is the Chief Executive and Administrative Officer of the MSPB, and in this role controls all policy with respect to the employment conditions of all MSPB administrative judges, including their level of pay, employment standards, and days of work.[7] 5 U.S.C. § 1203(a).

---

[6] This authority has been delegated from the Board through the Director, Office of Regional Operations, to the Regional Directors and Chief Administrative Judges who directly supervise the MSPB's administrative judges. *See* Delegations Manual at 17-20.

[7] As with administrative judge assignments, the authority over administrative judge employment conditions has been delegated from the Chairman to various members of MSPB's management chain, including – depending on the function – the Executive Director, the Director of the Office of Financial and Administrative Management, and the Regional

Accordingly, because the MSPB's Board appears to have at least as much supervisory authority over MSPB administrative judges as the USPTO Director has over APJs – having supervision both of their docket and their employment – the supervision factor supports non-principal officer status for MSPB administrative judges.

### B. The Board's Review Power Supports Non-Principal Officer Status

The first *Edmond* prong, which is addressed second, is "whether an appointed official has the power to review and reverse the officers' decision." *Arthrex*, 941 F.3d at 1329; *see also Edmond*, 520 U.S. at 664-65. While the MSPB and the USPTO may be similar with respect to supervision, a critical distinction exists between the MSPB and the USPTO with respect to the Board's review power. The USPTO only has two Presidentially-appointed, Senate-confirmed individuals from which it takes direction – the Secretary of Commerce and the Director of the USPTO. This Court found most significant in *Arthrex* that neither individual wields sufficient authority to review USPTO APJ decisions before the decisions issue on behalf of the USPTO. *Arthrex*, 941 F.3d at 1329-31. At the

---

Directors and Chief Administrative Judges. *See* Delegations Manual at 25-32.

USPTO, the PTAB reviews appeals of issued patent claims. *Id*. at 1325-26. Its membership consists of hundreds of individuals, primarily APJs, but also includes the USPTO Director.[8] *Id.* at 1329. The PTAB review process operates by the Director assigning any three members of the PTAB to review an individual claim, including potentially the Director. *Id*. at 1329-32. The three PTAB members render a decision for the PTAB by voting, with each seated member retaining an equal share of the vote. *Id*. That decision of the three members then becomes the final decision of the USPTO. *Id*. Importantly, "there is no provision or procedure providing the Director the power to single-handedly review, nullify, or reverse a final written decision issued by a panel of APJs." *Id.* at 1329. This is true even if the Director was a member of the panel that issued the decision. *Id*. at 1330. The Director's role in the review process is only to occupy one seat of the PTAB. *Id*. at 1329-32. At most, the Director can request to intervene in a party's appeal of the decision in court. *Id*. at 1329. But even there the Director cannot even actually appeal the decision; the Director may only intervene in an already appealed decision. *Id*.

[8] The Secretary of Commerce has no role in the review of APJ decisions. *See Arthrex*, 941 F.3d at 1329-31.

In contrast, the MSPB's Board possesses unfettered authority to review its administrative judges' decisions. Both the Board and the individual Board members have statutory authority to review all MSPB administrative judge decisions and limit their potential finality. *See* 5 U.S.C. § 7701(e)(1). An initial decision rendered by an MSPB administrative judge becomes the final decision of the MSPB 35 days after the decision is issued, unless any party to the appeal, or the Director of the Office of Personnel Management, petitions the Board for review of the decision prior to the expiration of the 35 days. 5 C.F.R. § 1201.113; *see* 5 U.S.C. § 7701(e)(1)(A) (providing that the initial decision becomes final 30 days after the parties receive it). Crucially, however, even if no administrative petition for review is filed, the decision will not become final if either a quorum of the Board or any individual Board member chooses to review it. The Board as a body may reopen and reconsider *any* decision from an administrative judge on its own motion, and this action will prevent the decision from becoming a final MSPB decision, even if the 35-day period has passed. 5 U.S.C. § 7701(e)(1)(B); 5 C.F.R. § 1201.118. *See Azarkhish v. Office of Pers. Mgmt.*, 915 F.2d 675, 679 (Fed. Cir. 1990) (Congress explicitly granted the full Board authority to reopen any initial decision upon its own motion). Moreover, any individual Board member

also may direct that the Board review an administrative judge's decision, and such an action will equally divest an administrative judge's initial decision of finality. 5 U.S.C. § 7701(e)(1); *see also Byars v. Dep't of the Army*, 9 M.S.P.R. 225, 225-26, 228-29 (1981) (a single Board member reopened an appeal *sua sponte* under section 7701(e) to address whether there was a nexus between the appellant's misconduct and the efficiency of the service); *Kling v. Dep't of Justice*, 2 M.S.P.R. 464, 468 (1980) (recognizing that the authorization of section 7701(e) for the Board to reopen cases on its own motion, without the necessity of a petition for review by any party or the Director of the Office of Personnel Management, demonstrates a Congressional intent to vest ultimate responsibility for all Board adjudicative functions in the Board itself).

The plain language of section 7701(e) demonstrates that it is the Presidentially-appointed, Senate-confirmed Board members, i.e. the principal officers of the MSPB, who determine whether any administrative judge's decision can become a final decision of the MSPB. In contrast to the Director of the USPTO, where "there is no provision or procedure providing the Director the power to single-handedly review, nullify, or reverse a final written decision issued by a panel of APJs," the MSPB's Board members individually can single-handedly nullify an administrative

judge's decision by causing it to be reviewed by the full Board, and the Board collectively can reopen or review *and* reverse an administrative judge's decision. *Arthrex*, 941 F.3d at 1329; 5 U.S.C. § 7701(e)(1). Essentially, an administrative judge's decision cannot become a final decision of the MSPB unless all of the Board members permit it. Consequently, unlike the USPTO, the MSPB's statutory scheme provides for principal officers with sufficiently strong review powers that the administrative judge's authority cannot be deemed unreviewable.

The petitioner posits in her brief that the Board's review power is insufficient to support non-principal officer status, but these arguments lack merit. The petitioner first argues that the Board's regulation limits the Board's reopening power to, as the petitioner states, "only unusual or extraordinary circumstances and generally within a short period of time after the decision becomes final." Petitioner's Brief ("PB") at 49 (quoting 5 C.F.R. § 1201.118). This argument is based on a selective quotation of the regulation and disregards that the regulation still leaves the question of reopening an appeal within the discretion of the Board, and provides the Board leeway to reopen any appeal it desires, at any time. 5 C.F.R. § 1201.118 ("The Board will exercise its *discretion* to reopen an appeal only in unusual or extraordinary circumstances and *generally* within a short

period of time after the decision becomes final.") (emphasis added); *see also Tarrant v. Dep't of Transportation*, 87 M.S.P.R. 308, 310-11 (2000) (the Board reopened an appeal nearly two years after issuance of its prior final decision).

The petitioner next argues that the present lack of any Board members nullifies the Board's review power, thus making the administrative judges principal officers. But the loss of a Board quorum is only temporary. Ultimately, when the President's nominees have been confirmed by the Senate, *see* 5 U.S.C. § 1203, the Board will be reconstituted and will have authority to review the initial decision in the petitioner's case. The delay from the Board's lack of quorum is unfortunate, but it does not nullify the Board's review power, both *sua sponte* and on petition for review. *Cf. New Process Steel, L.P. v. Nat'l Labor Relations Bd.*, 560 U.S. 674, 688 (2010) (noting the costs on litigants due to delays from the National Labor Relations Board's lack of quorum, but concluding that quorum requirements could not be "swept aside in the face of admittedly difficult circumstances"); *see also Tarrant*, 87 M.S.P.R. at 310-11.

Further, even if the current lack of Board members did mean that administrative judges were temporarily performing principal officer duties by issuing final decisions, as the petitioner contends, PB at 49-50, the

performance of those duties still would not mean the administrative judges were acting as principal officers. That theory was rejected by the Supreme Court well over 100 years ago: the performance of principal officer duties by a subordinate does not make an individual a principal officer.[9] *U.S. v. Eaton*, 169 U.S. 331, 343 (1898) ("Because the subordinate officer is charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, he is not thereby transformed into the superior and permanent official. To so hold would render void any and every delegation of power to an inferior to perform under any circumstances or exigency the duties of a superior officer, and the discharge of administrative duties would be seriously hindered.")

### C. The Board's Removal Power Supports Non-Principal Officer Status

The third *Edmond* prong addresses "the appointed official's power to remove the officers." *Arthrex*, 941 F.3d at 1329; *see also Edmond*, 520 U.S. at 664-65. Importantly, this Court in *Arthrex* did not view this prong in a vacuum. Rather, it viewed the removal power in conjunction with the

[9] This argument also appears to undermine the remainder of the petitioner's argument, as it suggests that the Board's presence would be sufficient to render MSPB administrative judges non-principal officers.

Director's review power, and held that because the Director did not have authority to review APJs' decisions, the for-cause removal restrictions provided by 5 U.S.C. § 7513 granted the APJs too much power, rendering them principal officers. *Arthrex*, 941 F.3d at 1332. In so holding, this Court compared the removal restrictions for APJs with the removal restrictions afforded to special masters under the Vaccine Act in *Masias v. Sec'y of Health and Human Servs.*, 634 F.3d 1283, 1294-95 (Fed. Cir. 2011). The Court acknowledged that the removal standard of "incompetency, misconduct, or neglect of duty or for physical or mental disability or for other good cause shown" in *Masias* was a higher standard than the "efficiency of the service" standard for APJs, yet held that the higher standard in *Masias* did not support principal officer status because of the significant review power over the special masters' decisions, as compared to the nearly non-existent review power of the USPTO Director. *Arthrex*, 941 F.3d at 1333-34.

MSPB administrative judges are protected by the same § 7513 removal standard as APJs, but a critical distinction exists: unlike the USPTO Director, the MSPB's Board has unfettered review authority over administrative judge decisions. *Supra*, at 17-22. Indeed, the review power of the Board is at least as strong as the review power vested in the Court of

Federal Claims in *Masias*. *Masias*, 634 F.3d at 1294-95 (the Court of Federal Claims had jurisdiction to review the record and "(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision; (B) set aside any findings of fact or conclusions of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law; or (C) remand the petition to the special master for further action in accordance with the court's direction"); *see also* 5 C.F.R. 1201.115. As such, because the Board has the significant review power this Court found present in *Masias* but lacking in *Arthrex*, the removal standard for administrative judges – which is lower than the removal standard in *Masias* – necessarily supports non-principal officer status in this matter.

Accordingly, this court should reject the petitioner's argument that MSPB administrative judges are principal officers under the Appointments Clause. MSPB administrative judges are similar to APJs with respect to supervision, and most significantly, MSPB Board members wield much stronger review power, which permits administrative judges to be protected by an efficiency of the service removal standard without any danger of straying into principal officer territory.

## CONCLUSION

Intervenor respectfully requests that the Court remand this matter to allow the Board to consider both parties' Appointments Clause positions in the first instance. In the alternative, if the Court reaches the *Arthrex* argument on the merits, intervenor requests that the Court reject the petitioner's contention that MSPB administrative judges are principal officers.

Respectfully submitted,

TRISTAN L. LEAVITT
General Counsel

KATHERINE M. SMITH
Deputy General Counsel

/s/ Stephen W. Fung
STEPHEN W. FUNG
Attorney
Office of the General Counsel
Merit Systems Protection Board
1615 M Street, NW
Washington, DC 20419-0002
(202) 254-4483

DATE: June 22, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on this date, service of the BRIEF FOR INTERVENOR MERIT SYSTEMS PROTECTION BOARD was made upon all parties by CM/ECF.

DATE: June 22, 2020

/s/ Stephen W. Fung
Stephen W. Fung

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(g)(1) of the Federal Rules of Appellate Procedure, I hereby certify that the text of the electronic version of the foregoing brief is identical to the paper copies, has been scanned by Symantec Endpoint Version 12.1 and found to be virus-free, and that the textual portion of the brief, exclusive of the tables of contents and authorities, certificates of service and compliance, and statement of related cases, but including headings, footnotes, and quotations, contains 5,209 words as determined by the word counting feature of Microsoft Word 2016, and therefore complies with Rule 32(a)(7)(B).

/s/ Stephen W. Fung
Stephen W. Fung