No. 2019-2454

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

ELFINA McINTOSH,
Petitioner,

v.

DEPARTMENT OF DEFENSE,
Respondent,

and

MERIT SYSTEMS PROTECTION BOARD,
Intervenor.

Appeal from the Merit Systems Protection Board,
Case No. DC-0752-17-0803-I-4

# CORRECTED BRIEF FOR RESPONDENT, DEPARTMENT OF DEFENSE

JOSEPH A. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

ALLISON KIDD-MILLER
Assistant Director

ERIN K. MURDOCK-PARK
Trial Attorney
Commercial Litigation Branch
Civil Division, U.S. Dept. of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3753
Facsimile: (202) 514-8624

June 29, 2020

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE**


TABLE OF AUTHORITIES ........................................................................ v

STATEMENT OF RELATED CASES ........................................................ ix

INTRODUCTION ........................................................................................ 1

STATEMENT OF THE ISSUES ................................................................. 3

STATEMENT OF THE CASE SETTING OUT RELEVANT FACTS .................. 3

- I. Nature Of The Case ........................................................................ 3
- II. Statement Of Facts ........................................................................ 4
  - A. Ms. McIntosh's Role At The Office Of Financial Readiness .... 4
  - B. Ms. McIntosh Refuses To Perform Core Job Functions ........... 5
  - C. Ms. McIntosh Goes AWOL ....................................................... 9
  - D. The Events Of April 5 And 6, 2017 ......................................... 11
  - E. Ms. McIntosh's Removal From Federal Service ..................... 12
    - i. Notice Of Proposed Removal ........................................... 12
    - ii. Removal Decision ........................................................... 15
  - F. Agency Administrative Grievances ......................................... 16
  - G. MSPB Proceedings .................................................................. 18
  - H. The Administrative Judge's Decision ...................................... 19
    - i. The Agency Proved Each Charge .................................. 19

ii. Affirmative Defenses Found Inadequate ....................... 22

iii. Ms. McIntosh's Removal Was Reasonable And Promoted Efficiency Of The Service ............................ 24

SUMMARY OF THE ARGUMENT .................................................................. 25

ARGUMENT ............................................................................................ 26

I. Standard Of Review .......................................................................... 26

II. The Agency Proved Each Of Its Four Charges Against Ms. McIntosh .......................................................................................... 27

A. Substantial Evidence Supports The Finding That Ms. McIntosh Engaged In Inappropriate Conduct .......................... 29

B. Substantial Evidence Supports The Finding That Ms. McIntosh Failed To Follow Supervisory Instructions ............. 32

C. Substantial Evidence Supports The Finding That Ms. McIntosh Was AWOL ............................................................. 36

D. Substantial Evidence Supports The Finding That Ms. McIntosh Lacked Candor ........................................................ 41

III. Removal Was A Reasonable Penalty ................................................ 44

IV. The Agency Proved By Clear And Convincing Evidence That It Would Have Removed Ms. McIntosh Absent Any Protected Activity ............................................................................................ 47

V. The Court Should Not Consider Ms. McIntosh's Belated Appointments Clause Argument, But If It Does, Should Find That Administrative Judges Are Not Principal Officers ............................ 53

A. Ms. McIntosh Waived Her Appointments Clause Argument ........................................................................... 53

B. The Administrative Judge Is Not An Principal Officer ........... 59

CONCLUSION ....................................................................................................63

CERTIFICATE OF SERVICE ..........................................................................................65

CERTIFICATE OF COMPLIANCE..................................................................................66

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**


*Arthrex, Inc. v. Smith Nephew, Inc.*,
941 F.3d 1320 (Fed. Cir. 2019) .......................................... 54, 57, 59, 60, 61

*Bigelow v. Dep't of Health & Human Servs.*,
750 F.2d 962 (Fed. Cir. 1984) ....................................................................35

*Bosco v. United States*,
931 F.2d 879 (Fed. Cir. 1991) ......................................................................6

*Brook v. Corrado*,
999 F.2d 523 (Fed. Cir. 1993) ............................................................. 44, 47

*Burroughs v. Dep't of Army*,
918 F.2d 170 (Fed. Cir. 1990) ....................................................................28

*Carr v. Soc. Sec. Admin.*,
185 F.3d 1318 (Fed. Cir. 1999) ...................................................... 23, 50, 51

*Ciena Corp. v. Oyster Optics, LLC*,
958 F.3d 1157 (Fed. Cir. 2020) ...................................................... 54, 57, 58

*Cooke v. USPS*,
67 M.S.P.R. 401 (1995) .............................................................................36

*Curtain v. OPM*,
846 F.2d 1373 (Fed. Cir. 1988) ..................................................................39

*Customedia Techs., LLC v. Dish Network Corp.*,
941 F.3d 1173 (Fed. Cir. 2019) ...................................................... 54, 57, 59

*Diggs v. Dep't of Hous. & Urban Dev.*,
670 F.3d 1353 (Fed. Cir. 2011) ..................................................................22

*Douglas v. Veterans Admin.*,
5 M.S.P.R. 280 (MSPB 1981) ....................................................................14

*Edmond v. United States*,
520 U.S. 651 (1997) ....... 62

*Elgin v. Dep't of Treasury*,
567 U.S. 1 (2012) ....... 55

*Forshey v. Principi*,
284 F.3d 1335 (Fed. Cir. 2002) ....... 54

*Freytag v. Comm'r*,
501 U.S. 868 (1991) ....... 54, 56

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) ....... 54, 58

*Graybill v. USPS*,
782 F.3d 1567 (Fed. Cir. 1986) ....... 26

*Grubb v. Dep't of Interior*,
96 M.S.P.R. 377 (2004) ....... 47

*Haebe v. Dep't of Justice*,
288 F.3d 1288 (Fed. Cir. 2002) ....... 28

*In re DBC*,
545 F.3d 1373 (Fed. Cir. 2008) ....... 53, 55, 56

*In re Grand Jury Investigation*,
916 F.3d 1047 (D.C. Cir. 2019) ....... 61, 62

*In re Sealed Case*,
829 F.2d 50 (D.C. Cir. 1987) ....... 62

*Lucia v. Sec. Exch. Comm'n*,
138 S.Ct. 2044 (2018) ....... 58

*Ludlum v. Dep't of Justice*,
278 F.3d 1280 (Fed. Cir. 2002) ....... 22, 41, 42

*Maloney v. USPS*,
No. PH-0752-06-0698-I-1, 2007 WL 933889 (MSPB Jan. 19, 2007) .......... 60

*Miller v. Dep't of Justice*,
842 F.3d 1252 (Fed. Cir. 2016) .......... 49, 50, 52

*Nagel v. Dep't of Health & Human Servs*.,
707 F.2d 1384 (Fed. Cir. 1983) .......... 35

*Parkinson v. Dep't of Justice*,
815 F.3d 757 (Fed. Cir. 2016) .......... 43

*Patacca v. Dep't of Navy*,
766 F. App'x 986 (Fed. Cir. 2019) .......... 31, 36

*Pedelose v. Dep't of Defense*,
343 F. App'x 605 (Fed. Cir. 2009) .......... 34, 35, 36

*Poschl v. United States*,
206 Ct. Cl. 672 (1975) .......... 27

*Power v. United States*,
531 F.2d 505 (Ct. Cl. 1976) .......... 27

*Robinson v. VA*,
923 F.3d 1004 (Fed. Cir. 2019) .......... 48, 49, 50

*Ryan v. DOD*,
760 F. App'x 990 (Fed. Cir. 2019) .......... 42

*Ryder v. United States*,
515 U.S. 177 (1995) .......... 54

*Schultz v. U.S. Navy*,
810 F.2d 1133 (Fed. Cir. 1987) .......... 39

*SmithKline Beecham Corp. v. Apotex Corp*.,
439 F.3d 1312 (Fed. Cir. 2006) .......... 22, 28, 59

*Snyder v. Dep't of Navy*,
854 F.3d 1366 (Fed. Cir. 2017) .......... 40, 52

*Spezzaferro v. Fed. Aviation Admin.*,
807 F.2d 169 (Fed. Cir. 1986) .......... 27

*Standley v. Merit Sys. Prot. Bd.*,
715 F. App'x 998 (Fed. Cir. 2017) .......... 36

*Synan v. Merit Sys. Prot. Bd.*,
765 F.2d 1099 (Fed. Cir. 1985) .......... 37, 40

*United States v. L.A. Tucker Truck Lines, Inc.*,
344 U.S. 33 (1952) .......... 53

*Villela v. Dep't of Air Force*,
727 F.2d 1574 (Fed. Cir. 1984) .......... 27

*Whitmore v. Dep't of Labor*,
680 F.3d 1353 (Fed. Cir. 2012) .......... 49, 50, 51, 52

*Winters v. Dep't of Navy*,
242 F. App'x 701 (Fed. Cir. 2007) .......... 39

*Woodford v. Ngo*,
548 U.S. 81 (2006) .......... 55

*Yates v. Merit Sys. Prot. Bd.*,
145 F.3d 1480 (Fed. Cir. 1998) .......... 26

**<u>STATUTES</u>**

5 U.S.C. § 1201 .......... 60

5 U.S.C. § 2302(b)(9)(D) .......... 34, 48

5 U.S.C. § 7513(a) .......... 62

5 U.S.C. § 7701(b)(1) .......... 61

5 U.S.C. § 7701(c)(1)(B) ....................................................................27

5 U.S.C. § 7701(e)(1)...........................................................................61

5 U.S.C. § 7703(c) ..............................................................................26

**REGULATIONS**

5 C.F.R. pt. 1201 ................................................................................61

5 C.F.R. § 1201.4 ................................................................................62

5 C.F.R. § 1201.4(q) ............................................................................27

5 C.F.R. § 1201.41(b) ..........................................................................39

5 C.F.R. § 1201.115 ............................................................................61

5 C.F.R. § 1201.117 ............................................................................61

5 C.F.R. § 1201.118 ............................................................................61

5 C.F.R. § 1201.29 ..............................................................................18

5 C.F.R. § 1209.4(3) ............................................................................48

## STATEMENT OF RELATED CASES

Pursuant to Rule 47.5, counsel for respondent states that she is unaware of any other appeal from this civil action that previously was before this Court or any other appellate court under the same or similar title. Counsel is also unaware of any case pending in this or any other court or agency that may directly affect or be affected by this Court's decision in this appeal.

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

| | | |
|---|---|---|
| ELFINA MCINTOSH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2019-2454 |
| | ) | |
| DEPARTMENT OF DEFENSE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MERIT SYSTEMS | ) | |
| PROTECTION BOARD, | ) | |
| | ) | |
| Intervenor. | ) | |

**RESPONDENT'S CORRECTED BRIEF**

**INTRODUCTION**

Firing an employee who fails to follow orders, fails to show up to work, fails to perform her core job functions, and fails to truthfully recount a conversation with a senior leader indisputably promotes the efficiency of Federal service. Those reasons formed the basis for the Department of Defense's decision to remove petitioner, Elfina McIntosh, from Federal service.

Beginning in the fall of 2016, Ms. McIntosh's "work ethic deteriorated." She refused to perform her core job duties and stopped following explicit instructions from her supervisor. When instructed to follow those instructions and

to do her job, Ms. McIntosh began to file grievances alleging a hostile work environment. She then stopped coming to work for approximately two weeks: in March and April 2017, Ms. McIntosh was absent without leave for 87 hours.

Upon Ms. McIntosh's return to work, she unilaterally removed herself as the Contracting Officer Representative from two contracts. Then, following an attempt by her new supervisor to speak with her, she left sensitive contract binders on the desk of her second-level supervisor's executive assistant and misrepresented her conversation with that supervisor to others, incorrectly asserting that she had informed him of her immediate departure from work.

After placing Ms. McIntosh on paid administrative leave and following the procedures for removal, including considering the *Douglas* factors, the agency removed her from Federal service. Separately, the agency investigated Ms. McIntosh's grievances and found that they lacked any support; indeed, she never even responded to the investigator's repeated attempts to discuss her grievances.

When sustaining 18 of the specifications supporting the four charges that formed the basis for Ms. McIntosh's removal, the administrative judge did not abuse her discretion or apply the wrong law, but she instead considered the substantial evidence supporting the agency's actions. Nor did she err when determining that the agency took its actions for non-retaliatory reasons. In short, Ms. McIntosh's actions warranted removal, as the administrative judge held.

## STATEMENT OF THE ISSUES

Whether substantial evidence supports the determination by the Merit System Protections Board (MSPB or board) that the Department of Defense's decision to remove Ms. McIntosh from Federal service—based upon charges that she (1) engaged in inappropriate conduct, (2) failed to follow supervisory instructions, (3) was absent without leave, and (4) lacked candor—was proven by a preponderance of the evidence, was within the tolerable bounds of reasonableness, and promoted the efficiency of the service.

Whether Ms. McIntosh waived her argument that the administrative judge was not properly appointed pursuant to the Appointments Clause; if not waived, whether the administrative judge is a principal officer.

## STATEMENT OF THE CASE SETTING OUT RELEVANT FACTS

### I. Nature Of The Case

Petitioner Elfina McIntosh appeals the administrative judge's June 24, 2019 decision, which became the final decision of the board on July 29, 2019, in *McIntosh v. Department of Defense*, 2019 MSPB LEXIS 2198 (M.S.P.B. 2019), which upheld the agency's removal of Ms. McIntosh from Federal service, based upon sustaining the four charges that she: (1) engaged in inappropriate conduct;

(2) failed to follow supervisory instructions; (3) was absent without leave (AWOL); and (4) lacked candor. Appx1-56.[1]

## II. Statement Of Facts

### A. Ms. McIntosh's Role At The Office Of Financial Readiness

Prior to her removal, Ms. McIntosh served as a Program and Budget Analyst in the Defense Education Authority Headquarters (agency), within the Office of Financial Readiness, Office of the Deputy Assistant Secretary of Defense, Department of Defense. Appx2; *see* Appx1063-1064 (explanation of office core functions). Ms. McIntosh moved to the office as the first Financial Readiness employee, where she continued to perform her Contracting Officer Representative (COR) responsibilities for the Personal Financial Counseling (PFC) contract. Appx1064. Ms. McIntosh's main job functions involved serving as COR for the large PFC contract, Appx464-469; Appx477, as well as serving as both the COR and Program Manager for the smaller Strategic Communications, Outreach, and Management Support (STRATCOM) contract. Appx470-475; Appx1063-1064.

CORs are "authorized to act in the stead of the [Contracting Officer (CO)] to monitor the technical effort being performed under the contract," including verifying "efficient and satisfactory performance of work for payment purposes,"

[1] "Appx__" refers to the joint appendix that the parties will file. "Br.__" refers to Ms. McIntosh's corrected brief filed as Docket Entry (DE) 15-1.

and approving or rejecting contract invoices within five business days. Appx464-465; Appx470-471; *see also* Appx216-248 (Department of Defense (DoD) Instruction 5000.72, DoD Standard For [COR] Certification). Only "contractually funded travel expenses" that complied with regulations could be authorized or approved; if Ms. McIntosh approved expenses outside the contract's scope that obligated the Government, she could be held personally liable. Appx467-468; Appx473-474. COR duties also required protecting "privileged and sensitive procurement information." Appx465; Appx471. Termination of Ms. McIntosh's COR appointments ended only upon one of four events: (1) contract completion; (2) contract termination; (3) departure from "present duty position"; or (4) appointment termination by the CO. Appx468; Appx474; *see also* Appx231.

Ms. McIntosh reported to Wayne Boswell, Financial Readiness's Director, until March 31, 2017. Appx1065. Effective April 3, 2017, Andrew Cohen, Ms. McIntosh's former co-worker, became Acting Director and thus Ms. McIntosh's direct supervisor. *See* Appx171-172; Appx1037-1038. In early 2017, John T. Hastings served as Ms. McIntosh's second-level supervisor. Appx1037-1039; Appx1143.

**B. Ms. McIntosh Refuses To Perform Core Job Functions**

Although she had previously worked as the PFC contract's COR, Mr. Boswell increasingly found that Ms. McIntosh "needed additional training to be an

effective COR and [to] advance her personal relationship and leadership skills." Appx886; *see, e.g.*, Appx878; Appx880. He placed Ms. McIntosh on a training plan. Appx886.

Ms. McIntosh received a promotion in November 2016, from GS-14[2] to GS-15, performing the same job duties but at a higher level of responsibility. *See* Appx454-461; Appx887. Following her promotion, Ms. McIntosh's "demeanor degraded" and her "work ethic deteriorated." Appx887; *see* Appx947-948; *see also* Appx480, Appx500, Appx504, Appx512 (Mr. Boswell's handwritten notes describing performance counseling). Two problems repeatedly arose: Ms. McIntosh's refusal to approve travel authorizations and invoices as COR for the PFC contract, and her refusal to provide contract documents to co-workers when authorized to do so.

First, Ms. McIntosh began to refuse to approve what she considered "untimely" submitted travel authorizations. *See, e.g.*, Appx480; Appx886. As part of her COR duties on the PFC contract, Ms. McIntosh was required to review and authorize the vendor's travel cost estimates in advance of travel to perform services, as well as review invoices and make recommendations to the CO for payment after completion of the approved travel. Appx1067; Appx1074. Yet in

[2] "GS" refers to the General Schedule pay system for civilian Federal employees. *Bosco v. United States*, 931 F.2d 879, 881 (Fed. Cir. 1991). GS-15 is the highest pay level prior to entering the Senior Executive Service.

December 2016, Ms. McIntosh refused to approve one same-day travel authorization request despite failing to articulate any "legal contractual prohibition" against doing so. Appx1120-1126. She also refused to approve travel invoices if she had "not previously authorized work to be performed. No[] one can[] authorize anything on my behalf." Appx1116. Contrary to Ms. McIntosh's assertions that only she could approve these travel authorizations, the PFC contract allowed for the CO and the Project Manager to also approve them; the CO also explained that as the Director, Mr. Boswell could do so as well. Appx473-474; Appx502; Appx1067; *see also* Appx471 (COR responsible for "knowing and understanding" the contract's terms, or seeking clarification from the CO). Nor did a prohibition exist on approving a travel invoice authorized by someone else. Appx1067.

Ms. McIntosh's refusal to perform these central COR functions continued throughout early 2017. *See, e.g.*, Appx1070-1075. Mr. Boswell explained to Ms. McIntosh in February 2017 that, if he had to continually ask others to perform a core task required by her position description, she "essentially refus[ed] to perform [her] job requirements." Appx1074.

Second, in late 2016, Ms. McIntosh ignored Mr. Boswell's explicit directions when she refused to provide contract documents to two co-workers, to assist with a review of the "existing PFC contract processes and approval

approaches." Appx510-512. Indeed, Ms. McIntosh inexplicably insisted that neither Heather McIntosh-Braden[3]—the PFC Program Manager—nor Andy Cohen, who was "asked to review [the] PFC contract processes," needed the requested information. Appx510. Ms. McIntosh similarly refused to "provide any details" on the contract processes in early 2017, although she finally agreed to provide generalities. Appx512. Despite Mr. Boswell informing Ms. McIntosh that providing the requested information on "her COR processes in reviewing and approving contract requirements" did not exceed the bounds of what she could provide to others, Ms. McIntosh never provided the requested information. Appx512; *see* Appx17.

In mid-February 2017, Mr. Boswell and Ms. McIntosh met to discuss a future desk audit of her duties, her desire to continue with COR duties on the PFC contract, and her request to move to another office environment. Appx408; Appx1076. Mr. Boswell requested that Ms. McIntosh send to him her "annual leave plan" because she had ended 2016 with significant use-or-lose leave. Appx1076. Ms. McIntosh then emailed Mr. Boswell her "Tentative Leave Dates," explaining that the dates were "tentative, and may be changed or modified if necessary as I have not planned for the year." Appx176. She included March 27-April 3, 2017 among the tentative dates. Appx176.

---

[3] Ms. McIntosh and Ms. McIntosh-Braden are not related. Appx1064.

Ms. McIntosh's performance problems continued into March 2017. As the STRATCOM contract CO informed Mr. Boswell, Ms. McIntosh lacked "the contract technical knowledge that [she] should possess for someone of [her] rank," finding many of her contract questions to be "basic questions [that] every COR should be able to answer." Appx114. Likewise, the CO of the PFC contract explained that Ms. McIntosh "sometimes presumed too much authority" in her COR role by "inappropriate[ly]" directing the entire contracting team, as well as "disrupt[ing]" the invoice processes when she refused to approve invoices. Appx114; *see* Appx485.

### C. Ms. McIntosh Goes AWOL

On March 22, 2017, Ms. McIntosh sent to Mr. Boswell a blank email containing only the subject "Sick Leave, 3-22." Appx1030. Although Mr. Boswell wished her a speedy recovery, he also emailed Employee Relations, explaining that he found Ms. McIntosh's absence "curious" because they had scheduled her performance feedback for that day, prior to his retirement. Appx1030-1031; *see* Appx1076. Employee Relations advised that Mr. Boswell could require a signed medical certificate. Appx1031. Ms. McIntosh sent similar emails to Mr. Boswell on March 23 and 24, 2017, and again did not attend work. Appx1032-1033.

On Friday, March 24, 2017, Mr. Boswell informed Ms. McIntosh that, although it appeared she had requested leave for the following week, the time and attendance system showed no pending approval request. Appx354. He explained that he would not approve a leave request, assuming that an active request existed, prior to speaking with her, and instructed Ms. McIntosh to attend work on Monday if they could not discuss that issue or her need to provide a medical note for her sick leave. Appx354. Ms. McIntosh did not attend work on March 27-29, and did not respond to Mr. Boswell's attempts to contact her by telephone and by email. Appx356-360.

Following multiple attempts to contact Ms. McIntosh, Mr. Boswell requested her personal telephone number from Human Resources on March 29. Appx359. Upon his identification, Ms. McIntosh refused to speak with Mr. Boswell, contending that she was on leave. Appx359. When Mr. Boswell explained that he had not approved a leave request, Ms. McIntosh informed him that she would "not [] get into it with you," and hung up. Appx359. She requested a protective order against Mr. Boswell following this telephone call, *see* Appx27, and again failed to attend work on March 30 and 31. *See* Appx118; Appx1069.

Despite a meeting scheduled with her second-level supervisor, Mr. Hastings, on April 3, Ms. McIntosh neither attended the meeting nor contacted him; indeed, she again did not appear at work at all that day. Appx199; *see* Appx446. Ms.

McIntosh similarly failed to attend work on April 4. Appx199. She finally returned to work on April 5, by which time Mr. Boswell had retired and Mr. Cohen was her supervisor. *See* Appx172; Appx1026.

### D. The Events Of April 5 And 6, 2017

Upon returning to work on April 5, Ms. McIntosh was instructed to meet with Mr. Hastings to discuss her grievances, and at their meeting, he directed her to report to Mr. Cohen, her new supervisor. *See* Appx1043-1045. Ms. McIntosh refused to work with Mr. Cohen, reiterated her grievances, and requested reassignment. Appx1043-1045. She also provided a medical note for March 22-24, 2017. *See* Appx518; Appx1035. Approximately ten minutes after the meeting ended, Ms. McIntosh emailed the COs of the PFC and STRATCOM contracts, instructing them to remove her as COR "[e]ffective immediately." Appx486.

On the morning of April 6, 2017, Mr. Cohen attempted to speak with Ms. McIntosh regarding his "supervisory instructions and expectations." Appx447. After Ms. McIntosh informed him that he should send the information by email, she interrupted Mr. Cohen's effort to continue the conversation, and left the office. Appx447. She quickly requested a meeting with her fourth-level supervisor, Mr. Kurta, then went to Mr. Hastings's office. *See* Appx175; Appx450; Appx495.

As Mr. Hastings explained, upon entering his office at approximately 8:30 a.m., Ms. McIntosh informed him that "it's already starting." Appx495. When

Mr. Hastings indicated his unavailability to discuss immediately but that he would like further information, Ms. McIntosh responded "never mind, I'll deal with it," and "I'm not doing COR duties anymore." Appx495. On his way out of the office suite, Mr. Hastings "noticed three large notebooks on the desk of my executive assistant," which Ms. McIntosh stated were her COR files. Appx495; Appx1039. Ms. McIntosh left the contract files there, and emailed Mr. Cohen that the files were available for his "retrieval." Appx494.

Ms. McIntosh also emailed numerous individuals outside of DoD, requesting that she be removed from "all future communication" on the PFC and STRATCOM contracts, because she would no longer be supporting the contracts. Appx487-494. In her final action of the day, Ms. McIntosh emailed multiple individuals, including the executive assistants of Messers. Hastings and Kurta, asserting that she was "in a hostile work environment[]. For my safety, I have advised Mr. Hasting[s] that I am going home." Appx1047-1048. Ms. McIntosh then left the office at 8:47 a.m., without leave to do so. Appx1039-1041.

### E. Ms. McIntosh's Removal From Federal Service

#### i. Notice Of Proposed Removal

Mr. Cohen placed Ms. McIntosh on paid administrative leave on April 7, 2017. Appx322-323; *see* Appx529-552. On May 19, 2017, he issued a Notice of Proposed Removal containing four charges and 22 specifications. Appx113-121.

"Charge 1: Inappropriate Conduct" contained three specifications detailing Ms. McIntosh's unilateral removal of herself as COR (Specification 1); leaving three COR notebooks on the desk of Mr. Hastings's executive assistant (Specification 2); and refusing to speak with Mr. Cohen regarding his supervisory instructions and expectations (Specification 3). Appx115-116.

"Charge 2: Failure to Follow Supervisory Instructions" contained seven specifications[4] detailing Ms. McIntosh's failure to provide a copy of the STRATCOM's statement of work to others at a meeting when instructed to do so (Specification 2); failure to release or provide contract documents when instructed to do so (Specifications 3 and 4); failure to review or approve invoices when instructed to do so (Specifications 5 and 6); and failure to report to Mr. Cohen, as directed by Mr. Hastings (Specification 7). Appx116-117.

"Charge 3: AWOL" contained 11 specifications totaling 87 hours, and included Ms. McIntosh's sick leave on March 22-24, 2017, for which she provided insufficient medical documentation (Specifications 1-3); failure to attend work without an authorized leave request on March 27-31 and April 3-4, 2017 (Specifications 4-10); and unauthorized premature departure from work at 8:47 am on April 6, 2017 (Specification 11). Appx117-119.

[4] Because the agency withdrew specification one during the board appeal, we do not discuss it here. Appx12.

"Charge 4: Lack of Candor" contained one specification. Appx119. Prior to her departure on April 6, 2017, Ms. McIntosh emailed multiple individuals claiming that she told Mr. Hastings she would leave early that day—an assertion that Mr. Hastings refuted. Appx119. By falsely conveying to others that she had followed "proper leave-request procedures, namely that by advising Mr. Hastings" of her departure she thus was "not required to follow proper leave request procedures," Ms. McIntosh demonstrated a lack of candor. Appx119.

Mr. Cohen considered the factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (MSPB 1981), when proposing the penalty of removal; in particular, "the nature and seriousness of [Ms. McIntosh's] misconduct, its relation to [her] duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated." Appx119. Although he considered Ms. McIntosh's years of service, Mr. Cohen explained that her actions diminished his faith in her honesty, credibility, and integrity, and that her "continued failures to comply with instructions" related directly to her job performance. Appx120. Moreover, Ms. McIntosh's "continued defiance of authority" demonstrated a lack of rehabilitation potential. Appx120. Because the regulations permitted a penalty of "reprimand to removal" for each of the charges,

*see* Appx146-154, Mr. Cohen determined that removal was the appropriate penalty. Appx120.

**ii. Removal Decision**

Ms. McIntosh responded in writing to the Notice, which the deciding official—Ms. McIntosh's third level supervisor, Dr. Elizabeth Van Winkle—considered. Appx122-126; *see* Appx155-156. Dr. Van Winkle noted that, although Ms. McIntosh disclaimed any responsibility for her actions and asserted her status as a whistleblower, she failed to "articulate or provide any evidence to support" her whistleblower allegations, and did not refute any charge with specificity. Appx122.

Dr. Van Winkle considered the *Douglas* factors. Appx122-126; Appx425-437. She considered the nature and seriousness of Ms. McIntosh's misconduct, finding Ms. McIntosh's actions to be unprofessional, harmful to contract administration, directly correlated to her duties, and detrimental to the workplace. Appx122-123. Because of her severe misconduct in a GS-15 position with COR responsibilities—which required a high level of integrity, accountability, and good judgment—as well as her "lack of dependability and refusal to work with team members, management had lost confidence in Ms. McIntosh's ability to perform her duties. Appx123.

Despite Ms. McIntosh's length of service and lack of prior discipline, Dr. Van Winkle explained that she herself had lost confidence that Ms. McIntosh could perform her assigned duties, and noted that the extreme level of disrespect that Ms. McIntosh demonstrated for her supervisor and co-workers showed her lack of rehabilitation potential. Appx124. Ms. McIntosh's removal became effective August 18, 2017. Appx124.

**F. Agency Administrative Grievances**

Beginning in January 2017, and continuing after her proposed removal, Ms. McIntosh raised the allegedly improper actions of Mr. Boswell and others in multiple agency administrative grievances.

Ms. McIntosh filed five grievances with the agency: four in late January and early February 2017, and the last on March 20, 2017. *See* Appx407-410. She first alleged that Mr. Boswell and Ms. McIntosh-Braden "constantly forced [her] to approve things that in my professional opinion felt were not 'best value for the government,'" and improperly required her to provide PFC contract information to those without "a need-to-know." Appx407. Three days later she alleged that Mr. Boswell forced her endure the "interrogation" of another employee. Appx408. Next, Ms. McIntosh alleged yelling and belligerence on the part of Mr. Cohen when he asked her contract questions. Appx409. In each of these grievances, Ms.

McIntosh asserted a hostile work environment and requested permanent reassignment. Appx407-409.

Ms. McIntosh's fourth grievance alleged that Mr. Boswell directed her to approve work and invoices that she did not authorize, although she had repeatedly informed him of her discomfort doing so. Appx410. Finally, Ms. McIntosh asserted that Mr. Boswell constantly harassed and demeaned her, as well as threatened to retaliate against her for filing grievances by seeking the input of others "to obtain negative feedback" for her performance evaluation. Appx411. Ms. McIntosh alleged that she found this behavior frightening and that she feared Mr. Boswell. Appx411.

The agency investigated Ms. McIntosh's grievances. Appx867-888. The investigator conducted six interviews of Ms. McIntosh's current and former supervisors and several co-workers. Appx867-888. The interviewees consistently noted Ms. McIntosh's low work ethic and her unwillingness to work with team members; none observed illegal or unethical behavior on the part of Mr. Boswell, nor considered the office environment hostile. Appx878-888. Ms. McIntosh herself did not respond to the seven separate requests from the investigator to "meet and discuss the grievances she filed." Appx868 (detailing contact attempts). On June 27, 2017, the agency denied Ms. McIntosh's grievances, determining that

the agency "did not create a hostile work environment or violate any law, rule or regulation, as alleged." Appx258-259.

### G. MSPB Proceedings

Ms. McIntosh timely appealed her removal to the board. Following the administrative judge's instruction that Ms. McIntosh "specifically identify the factual bases" for her affirmative defenses claims, *see* Appx577, Ms. McIntosh's counsel withdrew. *See* Appx619; *see also* Appx627-631. To permit Ms. McIntosh additional time to obtain new counsel, the administrative judge dismissed the board appeal without prejudice. Appx674-675; *see* 5 C.F.R. § 1201.29.

In her reinstated appeal, the administrative judge denied Ms. McIntosh's request to proceed with a telephonic hearing, Appx727-728, and the agency deposed Ms. McIntosh. *See* Appx841. She obtained new counsel, then quickly informed the administrative judge that she would proceed *pro se*. Appx738. And after Ms. McIntosh again obtained new counsel on May 20, 2018, his availability limitations resulted in a second dismissal without prejudice. Appx749; Appx760-761. The administrative judge dismissed Ms. McIntosh's appeal without prejudice for a third time due to medical reasons. Appx798-800. Through counsel in her reinstated appeal, Ms. McIntosh withdrew her hearing request and requested a decision on the briefs. Appx828-829.

### H. The Administrative Judge's Decision

In her decision dated June 24, 2019, the administrative judge sustained 18 of the agency's 21 remaining specifications, across all four charges, finding that Ms. McIntosh largely did not dispute the actions forming the basis of the specifications; further, that the sworn statements Messers. Boswell, Cohen, and Hastings, combined with the emails and contemporaneous documents in the record, were more persuasive than the evidence presented by Ms. McIntosh. Appx1-32. She also considered, and rejected, Ms. McIntosh's affirmative defenses. Appx32-43. After finding that the penalty of removal was reasonable and promoted the efficiency of the service, she affirmed the agency's decision. Appx43-50.

#### i. The Agency Proved Each Charge

First, the administrative judge found that the agency proved by preponderant evidence that Ms. McIntosh engaged in inappropriate conduct, and sustained the charge's three specifications. Appx4-12. She explained that Ms. McIntosh did not dispute the alleged actions, and her defense that her actions were not inappropriate because they were part of her protected disclosures did not permit Ms. McIntosh to take the unilateral actions that she took. Appx4-12.

Second, the administrative judge found that the agency proved by preponderant evidence that Ms. McIntosh failed to follow supervisory instructions,

sustaining three of the six remaining specifications.[5] Appx12-22. With respect to Specifications 3 and 4, Ms. McIntosh did not dispute her actions, and the administrative judge found unpersuasive Ms. McIntosh's argument that disclosing the documents at issue could have subjected her to discipline. Appx14-18. In particular, the administrative judge noted that Ms. McIntosh offered no evidence or legal citation to establish that providing the requested information to Ms. McIntosh-Braden—the PFC Program Manager—was in any way improper. Appx16-18.

With respect to Specification 7, the administrative judge explained that Ms. McIntosh did not deny that she failed to report to Mr. Cohen, and that her hostile work environment allegations against Mr. Boswell did not justify her failure to do so. Appx18-22. The administrative judge then considered the second charge in light of the three sustained specifications, and found that they sufficiently proved that Ms. McIntosh failed to follow supervisory instructions. Appx22.

Third, the administrative judge found that the agency proved by preponderant evidence that Ms. McIntosh was AWOL for 87 hours, sustaining all 11 specifications for the charge. Appx22-30. With respect to Specifications 1-3, Ms. McIntosh was indisputably absent from work and she failed to provide administratively acceptable documentation showing her medical incapacitation

[5] We do not address the three specifications that were not sustained.

from March 22-24, 2017. Appx23-25. Ms. McIntosh provided no legal support for her argument that an agency cannot change an employee's leave status even if initially approved, if "it later requests additional information and the employee fails to provide it." Appx23-25.

With respect to Specifications 4-10, the administrative judge similarly found that Ms. McIntosh undisputedly did not attend work from March 27-31 and April 3-4, 2017. Appx25-28. The administrative judge found more persuasive Mr. Boswell's sworn statement that he never approved the leave, supported by his contemporaneous emails and actions, to be more persuasive than Ms. McIntosh's assertion of Mr. Boswell's verbal leave approval. Appx25-28. With respect to Specification 11, the administrative judge explained that Ms. McIntosh did not dispute that she left work at 8:47 am on April 6, and her assertions of a hostile work environment did not justify her early departure, particularly considering that Mr. Hastings's statement and contemporaneous documents that showed she never asked for, or received, approval to leave early that day.

Fourth, the administrative judge found that the agency proved by preponderant evidence that Ms. McIntosh lacked candor when she emailed numerous individuals on March 27 that "I have advised Mr. Hasting[s] that I am going home." Appx30-32. The administrative judge explained that "lack of candor" could encompass a broad range of misconduct, including failure "to

disclose something that, in the circumstances, should have been disclosed in order to make the given statement accurate and complete." Appx30-31 (quoting *Ludlum v. Dep't of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002)).

Ms. McIntosh did not deny sending the email that formed the basis of the charge. The administrative judge noted that Ms. McIntosh's briefs and deposition testimony conflicted regarding her conversation with Mr. Hastings that day, while Mr. Hastings "categorically denied" that Ms. McIntosh had told him of her early departure, nor did he authorize her departure. Appx30-32. Because Ms. McIntosh's "representation to multiple agency officials that she advised Mr. Hastings about leaving work appears clearly designed to imply that she had notified someone in the agency," despite substantial evidence to the contrary, the charge was sustained. Appx31-32.

**ii. Affirmative Defenses Found Inadequate**[6]

The administrative judge determined that Ms. McIntosh failed to sufficiently demonstrate retaliation for protected disclosures or activity as an affirmative

[6] On appeal, Ms. McIntosh has abandoned her affirmative defenses of disability discrimination and discrimination based upon race, color, gender, or age. *See* Appx32-38; *see generally* Br. Consequently, any argument on those affirmative defenses is waived and we do not address them. *SmithKline*, 439 F.3d at 1319. Further, to the extent that Ms. McIntosh alleges that her removal was in retaliation for the allegations of a hostile work environment that she raised in her grievances, that claim is also outside of this Court's jurisdiction. *Diggs v. Dep't of Hous. & Urban Dev.*, 670 F.3d 1353, 1358 (Fed. Cir. 2011).

defense. Appx39-44. The administrative judge found undisputed that Ms. McIntosh alleged contracting irregularities on the part of Mr. Boswell that Mr. Cohen may have known about, and that she filed grievances against both; further, because she referred to herself as a "whistleblower" in her removal response, Dr. Van Winkle presumptively know about her protected disclosures. Appx40-41. Ms. McIntosh thus sufficiently demonstrated "based on the knowledge-timing test," that her protected disclosures and grievances were a contributing factor in her removal. Appx41-42 (citing cases).

After finding that Ms. McIntosh met her burden, the agency had to show through clear and convincing evidence that it would have taken the same action absent any protected disclosure or grievance. Appx42 (citing *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999)). The administrative judge set forth the three *Carr* factors that the board considers in tandem: (1) strength of agency evidence; (2) existence and strength of the motive to retaliate on the part of agency officials involved in the decision; and (3) evidence that the agency takes similar actions against similarly situated non-whistleblowers. Appx42-43. She determined that in light of the substantial evidence supporting Ms. McIntosh's removal, and with no demonstrated retaliatory motivation on the part of Mr. Cohen or Dr. Van Winkle—whom Ms. McIntosh had never met—the agency had

demonstrated that it would have removed Ms. McIntosh absent any protected activity or disclosure. Appx43-44.

#### iii. Ms. McIntosh's Removal Was Reasonable And Promoted Efficiency Of The Service

Finally, the administrative judge determined that Ms. McIntosh's removal was reasonable and promoted efficiency of the service. Appx44-50. She considered Dr. Van Winkle's application of the *Douglas* factors to Ms. McIntosh's removal decision, and noted the serious and repeated nature of the charges; Ms. McIntosh's senior position; her demonstrated lack of respect for her supervisor; and the correlation of her misconduct to her job duties. Appx45-47. The administrative judge also explained that agencies are entitled to expect compliance with valid orders as well as honest and trustworthy employees, and that continuous unexcused absences do not promote the efficiency of the service. Appx47-48.

Rather than "demonstrate any remorse for her conduct or express any intention to conduct herself differently in the future," Ms. McIntosh provided "conclusory and unsupported allegations about a hostile work environment" to justify her behavior, or "blamed everything on her first-level supervisors based on assertions" of retaliation. Appx49. But it is "well established that an employee who engaged in misconduct does not mask or avoid the consequences of her own misconduct by becoming a whistleblower," and often a failure to demonstrate remorse shows lack of rehabilitation potential. Appx49. Because her "serious and

repeated conduct" warranted the imposed penalty, the administrative judge affirmed the agency's removal action. Appx50. The decision became final on July 20, 2019. *See* Appx50.

This appeal followed.

## SUMMARY OF THE ARGUMENT

Substantial evidence supports the administrative judge's decision upholding the agency's four charges against Ms. McIntosh—inappropriate conduct, failure to follow instructions, AWOL, and lack of candor.

Ms. McIntosh largely did not deny the actions that formed the basis of the charges against her, but instead asserted retaliation as an affirmative defense. But after correctly analyzing the parties' respective burdens, the administrative judge correctly determined that the agency would have removed Ms. McIntosh absent any protected disclosures or activity. Finding that the agency considered the relevant *Douglas* factors and removal was a reasonable penalty, the administrative judge properly sustained Ms. McIntosh's removal.

Ms. McIntosh now unpersuasively attacks the administrative judge's decision on 15 of the 18 sustained specifications, mainly asserting that the administrative judge either failed to consider or improperly weighed evidence. Not only does Ms. McIntosh attempt to introduce new evidence not before the administrative judge in the first instance, she also ignores the substantial discretion

afforded the judge's decision on evidentiary matters. Nor does Ms. McIntosh provide sufficient legal support for her arguments, but bases her arguments—as she did below—on conclusory statements.

Despite actively seeking MSPB review, Ms. McIntosh also attempts to raise a belated claim that the administrative judge was improperly appointed pursuant to the Appointments Clause. Her attempt should be denied, and, in any event, her contentions that the administrative judge would be a principal officer are incorrect.

The administrative judge's decision was not arbitrary, capricious, or contrary to law, but instead was supported by substantial evidence and shows no error. It should be affirmed.

## ARGUMENT

### I. Standard Of Review

The scope of judicial review of board decisions is narrowly defined and limited by statute. A board decision shall be affirmed unless it is found to be: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Yates v. Merit Sys. Prot. Bd.*, 145 F.3d 1480, 1483 (Fed. Cir. 1998). "The court cannot merely substitute its judgment for that of the MSPB." *Graybill v. USPS,* 782 F.3d 1567, 1569 (Fed. Cir. 1986). Nor will the Court disturb a

board's penalty determination unless it "exceeds the range of permissible punishments specified by statute or regulation, or unless the penalty is 'so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.'" *Villela v. Dep't of Air Force*, 727 F.2d 1574, 1576 (Fed. Cir. 1984) (citing *Power v. United States*, 531 F.2d 505, 507 (Ct. Cl. 1976)).

The burden of establishing deficiencies in an administrative decision rests with Ms. McIntosh. *Poschl v. United States*, 206 Ct. Cl. 672, 692 (1975). That burden is a heavy one due to the presumption that administrative actions are correct and that Government officials act in good faith in discharging their duties. *Spezzaferro v. Fed. Aviation Admin.*, 807 F.2d 169, 173 (Fed. Cir. 1986).

## II. **The Agency Proved Each Of Its Four Charges Against Ms. McIntosh**

Substantial evidence demonstrates that the agency proved each of its charges against Ms. McIntosh.

The board considers an agency's charges under a preponderant evidence standard, which is "[t]he degree of relevant evidence [] a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." 5 U.S.C. § 7701(c)(1)(B); 5 C.F.R. § 1201.4(q). Not every specification forming the basis of a charge must be sustained to find that the agency proved its charge: if "more than one event or factual specification is set out to support a single charge . . . proof of one or more,

but not all, of the supporting specifications is sufficient to sustain the charge." *Burroughs v. Dep't of Army*, 918 F.2d 170, 172 (Fed. Cir. 1990). This Court's review is thus limited to determining whether the board's decision that an agency "proved the charge against the federal employee by a preponderance of the evidence is supported by substantial evidence." *Haebe v. Dep't of Justice*, 288 F.3d 1288, 1305 (Fed. Cir. 2002).

As demonstrated below, substantial evidence supports the decision that the agency proved by a preponderance of the evidence the four charges against Ms. McIntosh. One initial matter must be raised prior to discussing the agency's charges and specifications in detail, however. Ms. McIntosh fails to argue error regarding three sustained specifications: Charge 1, Specification 3; Charge 2, Specification 7; and Charge 3, Specification 11. *See* Br. 25-51. Rather, she contends that her appeal before this Court only "focuses on the most serious specifications." *Id*. 25. By failing to raise argument on those specifications in her opening brief, Ms. McIntosh waives any argument regarding these specifications, and we do not address them. *SmithKline*, 439 F.3d at 1319.

As demonstrated below, substantial evidence supports each of the four charges, and the decision contained no error.

### A. Substantial Evidence Supports The Finding That Ms. McIntosh Engaged In Inappropriate Conduct

Substantial evidence demonstrates that the agency proved by preponderant evidence that Ms. McIntosh engaged in inappropriate conduct. *See* Appx4-12.

Specification 1: Ms. McIntosh admitted to emailing numerous individuals to request that they no longer contact her as the COR. Appx4-8. Her actions occurred unilaterally. As Mr. Cohen explained, even if Ms. McIntosh had been relieved of her COR duties at the time she sent the emails (which she was not), notice from the Contracting Officers, not Ms. McIntosh, was "the appropriate method" to notify others. Appx1021-22. Mr. Boswell never removed Ms. McIntosh from the primary function of her COR duties, Appx1065; as set forth in the COR Memoranda, only the Contracting Officer could do so. Appx468; Appx474; *see also* Appx223; Appx228; Appx231.

Ms. McIntosh brings forth very different arguments now than she did below. *Compare* Appx4-8 *with* Br. 40-41. She currently argues that an email sent by Mr. Boswell on March 29, 2017—explaining that Mr. Cohen would become the Acting Financial Readiness Director and would "assume all duties in *overseeing* program management and COR responsibilities"—relieved her of her COR duties. Br. 40-41 (citing Appx171-172) (emphasis added). She also argues that she informed Mr. Cohen of her intentions to send an email asking to be removed as COR, and that her interpretation of Mr. Boswell's email was reasonable because Mr. Hastings's

executive assistant, Grace Hansberry, viewed it in the same manner. *Id*. Even assuming that Ms. McIntosh genuinely believed that her COR duties had been removed, she should not have. Her interpretation of the email is strained, considering that it referenced "oversight" of duties and transitioned responsibilities to Mr. Cohen as the new Acting Director upon Mr. Boswell's retirement. *See* Appx171-172. Moreover, Ms. McIntosh knew that termination of her COR appointments ended only upon one of four events—contract completion; contract termination; departure from "present duty position"; or appointment termination by the Contracting Officer, *see* Appx231; Appx468; Appx474—none of which were demonstrated in the email.

<u>Specification 2</u>: Ms. McIntosh did not dispute the three aspects of this charge: that she left binders containing sensitive COR documentation with Ms. Hansberry; that she left Mr. Hastings's office without speaking with him; and that she directed Mr. Cohen to "retrieve" files from Mr. Hastings's office. Appx8-11. As Mr. Hastings detailed in his statement and contemporaneously, Ms. McIntosh left her "COR files," contained within "three large 3-ring binders[,] on the ledge/counter of the desk" of his executive assistant, Ms. Hansberry. Appx1039. The administrative judge found Mr. Hasting's statement entitled to more weight than Ms. McIntosh's assertions that she left the binders in his "secured" office, especially considering that she did not raise this defense in her removal notice

response. Appx10. And by her own admission, Ms. McIntosh—who repeatedly refused to share some of the same files with Mr. Cohen and the PFC Program Manager, alleging that they lacked a "need-to-know," *see, e.g.*, Appx177—left COR documents with someone who "was not the custodian of those records," as charged. Appx115-16; *see* Appx465. Ms. McIntosh also refused to speak with Mr. Hastings after waiting in his office, as charged, and instructed Mr. Cohen to "retrieve" the COR files that she left behind, as charged. Appx494; Appx1023; Appx1039; Appx1046. Particularly in light of her senior level position and COR responsibilities, she acted inappropriately.

As demonstrated above, substantial evidence supports both of these specifications. The Court has upheld inappropriate conduct charges in multiple circumstances, including a petitioner who "did not dispute" that she spoke disrespectfully to a supervisor. *Patacca v. Dep't of Navy*, 766 F. App'x 986, 990 (Fed. Cir. 2019). Ms. McIntosh's arguments that the administrative judge ignored the evidence regarding the exact location where she left the COR files are unpersuasive; no matter where she left the files, she indisputably left them with someone who was not the custodian of records, as charged. *See* Br. 20-21, 39-40. No error occurred here, and the Court should affirm this charge.

### B. Substantial Evidence Supports The Finding That Ms. McIntosh Failed To Follow Supervisory Instructions

Substantial evidence demonstrates that the agency proved by preponderant evidence that Ms. McIntosh failed to follow supervisory instructions. *See* Appx12-22.[7]

Specifications 3-4: Ms. McIntosh admitted that she refused to provide PFC contract information to Ms. McIntosh-Braden and Mr. Cohen in December 2016 and January 2017 despite Mr. Boswell's instructions to do so. Appx15-17. In December 2016, Ms. McIntosh-Braden—the PFC Program Manager—began to review the PFC program "for efficiency and effectiveness," along with Mr. Cohen. Appx511. She requested access to certain information, and Mr. Boswell approved. Appx511. Ms. McIntosh, copied on the emailed approval, refused to release the information. Appx511. Mr. Boswell explained that Mr. Cohen was asked to review contract processes with Ms. McIntosh and Ms. McIntosh-Braden to identify areas of improvement, and that he "authorize[d] the release of these required documents" for Mr. Cohen's initial review prior to an early January meeting. Appx510. Ms. McIntosh responded that she "d[id] not agree with releasing these

[7] Although Ms. McIntosh does not contest specification seven, we note that Ms. McIntosh's assertion that she "reported" to Mr. Cohen on April 5 because they briefly interacted that day, Br. 20, is contrary to the undisputed evidence that Ms. McIntosh refused to recognize Mr. Cohen as her supervisor and never "reported" to him; a fact she did not contest. Appx20-22; *see, e.g.,* Appx1038-1039.

contract documents. The only things that [Ms. McIntosh-Braden] will need are things pertaining to her program." Appx510. Mr. Boswell then directed Ms. McIntosh to walk Mr. Cohen through the "entire PFC contract process." Appx510. Ms. McIntosh never released the contract files nor walked Mr. Cohen through the PFC contract process. Appx508; Appx510; Appx1066.

Inexplicably, the basis for Ms. McIntosh's refusal to provide the required documents included her assertion that the PFC Program Manager did not "need-to-know" this information. Appx15; Appx177; Appx510. As the administrative judge noted, Ms. McIntosh "offered no evidence or argument to establish that disclosing the contract information to Ms. McIntosh-Braden was improper." Appx15; *see* Appx17; Appx227; Appx510. And not only did the PFC Program Manager need this information, but both Mr. Boswell and the PFC Contracting Officer agreed to the release of this documentation to Mr. Cohen, who was arguably independently a permitted "internal review official." Appx227; Appx508.

In defense of her actions, Ms. McIntosh argues that her refusal to provide the requested information could not form the basis of a misconduct charge because it was protected activity and Mr. Boswell's actions were improper. Br. 30-33. For the first time she references a COR handbook that states "following the boss's orders" could result in her pecuniary liability. *Id.* at 9-10, 32-33. But this

handbook is not in the record. Ms. McIntosh never presented the document to the administrative judge nor referenced it below, and it should not be considered now.[8] And Ms. McIntosh incorrectly asserts that the agency's specifications were "based entirely on [her] refusal to disclose confidential information to Mr. Cohen." *Id*. at 33. As demonstrated above, the specifications were based on Ms. McIntosh's refusal to provide information to both Ms. McIntosh-Braden and Mr. Cohen, Appx177, and her argument thus fails at the threshold.

Moreover, despite now arguing that she was asked to violate a "law, rule, or regulation," 5 U.S.C. § 2302(b)(9)(D), Ms. McIntosh never—in response to her notice of removal, in briefs before the MSPB, or even in her deposition—cited to any "law, rule, or regulation" that she was allegedly asked to violate in complying with these proper instructions from Mr. Boswell. *See, e.g.,* Appx255-257 (OSC analysis of Ms. McIntosh's disclosures). Absent this showing, Ms. McIntosh, like other employees, was required to comply with the instructions first and then, if she disagreed, register her complaint later. *See Pedelose v. Dep't of Defense*, 343 F. App'x 605, 609 (Fed. Cir. 2009) ("Absent exceptional circumstances, government employees generally cannot refuse to do work simply because they disagree with a

[8] In any event, it is unclear clear how providing this information to individuals with an authorized "need-to-know" could have resulted in Ms. McIntosh's pecuniary liability, nor does Ms. McIntosh make a specific argument that it would have.

superior and, consequently, failing to comply with their duties is done at the risk of insubordination. The evidence of record substantiates that the investigation was never found to violate any law or regulation.") (citing *Nagel v. Dep't of Health & Human & Servs*., 707 F.2d 1384, 1387 (Fed. Cir. 1983); *Bigelow v. Dep't of Health & Human Servs*., 750 F.2d 962, 966 (Fed. Cir. 1984)).

The only potential "rules" that Ms. McIntosh now even attempts to identify are the COR Memoranda and the COR handbook, although Ms. McIntosh cites to no cases that demonstrate these documents are considered to be "rules," nor did she argue below that these were the "rules" she was purportedly asked to violate. Rather, the only possible "rule" referenced in the record is the DoD Instruction governing COR appointments, which directs that—at all times—"COR files will be available for review by the contracting officer, internal review officials, or other officials as authorized by the contracting officer." Appx227 ¶ 3(d). Both Ms. McIntosh-Braden and Mr. Cohen fit squarely within this definition.

Finally, the administrative judge did not err in citing to *Pedelose* for the proposition that Ms. McIntosh should have obeyed Mr. Boswell's instructions first and grieved them later. Br. 30-33. As demonstrated above, Ms. McIntosh identified no law, rule, or regulation that Mr. Boswell supposedly asked her to violate, and she fails to show that her generalized allegations that she was asked to violate an unidentified "law, rule, or regulation" would be reasonable to a

disinterested observer. *See, e.g., Standley v. Merit Sys. Prot. Bd.*, 715 F. App'x 998, 1001 (Fed. Cir. 2017). Although *Pedelose* refers to a violation of "law" rather than a violation of "law, rule, or regulation" as now set forth in the Whistleblower Protection Enhancement Act, the requirement that Ms. McIntosh had to show a reasonable belief of some violation before refusing an order still holds.

Because substantial evidence supports this charge, it should be affirmed. *See, e.g., Patacca*, 766 F. App'x at 990 (sustaining failure to follow supervisory instructions charge).

### C. Substantial Evidence Supports The Finding That Ms. McIntosh Was AWOL

Substantial evidence supports the finding that the agency proved by preponderant evidence that Ms. McIntosh was AWOL for 87 hours. *See* Appx22-30. "To support a charge of AWOL, the agency must show both that the appellant was absent and that either the absence was not authorized or that a request for leave was properly denied." *Cooke v. USPS,* 67 M.S.P.R. 401, 404 (1995), *aff'd* 73 F.3d 380 (Fed. Cir. 1995).

<u>Specifications 1-3</u>: Ms. McIntosh did not dispute that she was not at work from March 22-24, 2017. Appx23. Following her email on March 22, 2017 that simply stated "Sick Leave, 3-22," Mr. Boswell sought guidance from Employee Relations as to Ms. McIntosh's absence. Appx1030-1031. He found it "curious" that Ms. McIntosh was ill the very day that he was scheduled to give her last

performance review before his retirement. Appx1030-1031. Employee Relations explained that he could request medical documentation from Ms. McIntosh that "include[d] a statement that the medical problem rendered her incapacitated for the performance of her duties." Appx1031. As set forth in Mr. Cohen's sworn statement, he understood that Ms. McIntosh was informed by Mr. Boswell that she would be required to provide that documentation upon her return to work, and that her sick leave for those days was "conditionally" approved. Appx1026-1027. When Ms. McIntosh returned to the office on April 5 and provided Mr. Hastings with a medical note, Mr. Cohen, in consultation with Employee Relations, found it to be administratively unacceptable. Appx518. Mr. Cohen requested additional documentation, which Ms. McIntosh never provided. Appx24.

Ms. McIntosh asserted below, with "no legal support for her contention," that the agency improperly "converted" her sick leave to AWOL. Appx24. She argues now that Defense Education Authority (DoDEA) Regulation 5630.9 prevented the agency from requiring a medical certificate unless it informed her of the requirement in advance. Br. 33-35. Because she did not cite to this regulation below and the administrative judge could not consider argument about the regulation, the Court should consider it waived. *Synan v. Merit Sys. Prot. Bd.*, 765 F.2d 1099, 1101 (Fed. Cir. 1985) ("Petitioner cannot raise before this court an issue which could have been raised below but which was not."). As the

administrative judge noted, Ms. McIntosh had provided "no legal support" for her contentions. Appx24. She cannot do so now.

Specifications 4-10: Ms. McIntosh did not dispute that she was not at work March 27-31, or April 3-4, 2017. Appx25. Mr. Boswell explained in his sworn statement that, upon his request, Ms. McIntosh informed him of her tentative leave dates, including March 27-31 and April 3. Appx1068; *see* Appx176; Appx1076. But on March 24, Mr. Boswell did not see a formal leave request and explained to Ms. McIntosh that he would not approve one without first speaking to her. Appx1068; *see* Appx354. He then attempted repeatedly to contact her between March 27-29, informing her by email and voicemail of her AWOL status. Appx356-360. When Mr. Boswell finally reached Ms. McIntosh on her personal telephone—a number obtained from Human Resources—to inform her of her AWOL status, not only did Ms. McIntosh hang up on Mr. Boswell, but she requested a protective order against him. Appx27; Appx359. Ms. McIntosh again failed to show up to work April 3-4, despite a scheduled meeting with Mr. Hastings on April 3. Appx199; Appx209; Appx446.

In considering the evidence, the administrative judge explicitly noted Ms. McIntosh's deposition testimony in which she asserted that she had provided Mr. Boswell with her anticipated future leave; that he subsequently provided verbal approval for the requested dates; and that she "could not recall the entirety" of her

March 29 conversation with Mr. Boswell. Appx25; Appx27. But, weighed against Mr. Boswell's statement and contemporaneous emails showing that no leave request existed for those dates, as well as his multiple attempts to communicate to Ms. McIntosh her AWOL status, the administrative judge found the agency's evidence more persuasive. Appx28; *see* 5 C.F.R. § 1201.41(b); *see, e.g., Curtain v. OPM*, 846 F.2d 1373, 1378-79 (Fed. Cir. 1988); *Winters v. Dep't of Navy*, 242 F. App'x 701, 704 (Fed. Cir. 2007).

Ms. McIntosh argues that her leave was "improperly and arbitrarily denied," and cites to *Schultz v. U.S. Navy*, 810 F.2d 1133, 1136-37 (Fed. Cir. 1987), for the proposition that leave is improperly denied when Office of Personnel Management policy "would permit leave to be granted and leave was nonetheless denied by an agency." Br. 35-37. *Schultz* does not support Ms. McIntosh's claims. The Court held in *Schultz* that, in the context of an employee's forced resignation stemming from denied sick leave, her "request to use annual leave because of illness, instead of requesting sick leave, is not probative that she was not in fact sick." *Schultz,* 810 F.2d at 1136. Ms. McIntosh does not contend that she requested sick leave for these days.

Further, the evidence to which Ms. McIntosh cites fails to support her claims. She first cites to Appx176 to support her incorrect assertion that she "sent her leave request to Mr. Boswell in February 2017." Br. 35. This is an email from

Ms. McIntosh to Mr. Boswell titled "Tentative Leave Dates," and states "[t]hese are tentative, and may be changed or modified if necessary as I have not planned for the year." Appx176. Next Ms. McIntosh points to Appx354 to support her contention that an alleged "formal leave request for March 27 through April 4" existed. Br. 36-37. But that email shows that Ms. McIntosh lacked an active leave request in the system and, moreover, that Mr. Boswell would not consider approving a leave request for the following week, even assuming that "there [wa]s an active request for annual leave." Appx354.

Ms. McIntosh also asserts that Mr. Boswell's actions were "improper and unethical," when he required Ms. McIntosh speak with him before approving her leave request, and that doing so was coercive. Br. 36. Not only were those arguments not raised below and are thus waived, *see Synan*, 765 F.2d at 1101, but Mr. Boswell's actions were entirely proper: Mr. Boswell had reason to question Ms. McIntosh's sick leave as an attempt to avoid the "bad closeout review" that he would have allegedly given prior to his retirement. Appx411; Appx1031.

Finally, the administrative judge did not "completely ignore[]" Ms. McIntosh's sworn deposition testimony, Br. 37; she explicitly cited to that testimony in deciding the specification. Appx25; Appx27; *see also Snyder v. Dep't of Navy*, 854 F.3d 1366, 1373 (Fed. Cir. 2017) (explaining that an administrative judge is presumed to have considered the available arguments and

evidence) (citing cases). Ms. McIntosh cannot demonstrate that any actual leave request existed that the agency somehow improperly denied.

Substantial evidence supports the agency's charge and it should be affirmed.

### D. Substantial Evidence Supports The Finding That Ms. McIntosh Lacked Candor

Substantial evidence demonstrates that the agency proved by preponderant evidence that Ms. McIntosh lacked candor. *See* Appx30-32 (citing *Ludlum*, 278 F.3d at 1284).

Ms. McIntosh does not deny that on April 6, 2017, she sent the email that formed the basis of her charge: "I am in a hostile work environment, and I am being harassed by Andy Cohen. For my safety, I have advised Mr. Hasting[s] that I am going home." Appx31; Appx1047-1048. Mr. Hastings explained that, on April 6, when Ms. McIntosh left his "office at about 8:35 a.m.," she never "mention[ed] or discuss[ed] leaving for the day, and I did not authorize her to leave for the day. Appx1039-1041. He also explained that he "would not release an employee based on such a statement" without first speaking to her supervisor; here, Mr. Cohen. Appx1039-1041. In his contemporaneous memorandum for the record, Mr. Hastings did not refer to Ms. McIntosh's departure. Appx1046.

Conversely, Ms. McIntosh's own assertions were inconsistent. Appx30-31. In her deposition she claimed that she explicitly told Mr. Hastings "that she was 'going to go home for [her] own safety. And he concurred.'" Appx31 (citations

omitted). But she also argued in briefing that she "merely stated that she 'advised Mr. Hastings that [she was] going home.'" Appx31. Contrasted with Mr. Hastings's consistent denial that Ms. McIntosh told him she was leaving, substantial evidence supports the administrative judge's finding that Ms. McIntosh's email to "multiple agency officials that she advised Mr. Hastings about leaving work appear[ed] clearly designed to imply that she had notified someone in the agency when, in fact, the preponderant evidence indicates that she left work without any authorization or without notifying any agency official." Appx31-32.

Ms. McIntosh ignores the administrative judge's correct analysis regarding the requirements to prove a lack of candor charge, relying on *Ludlum*. Br. 37-38; *see* Appx31-32. This Court explained in *Ludlum* that "a lack of candor charge may be proven by showing that the employee failed to disclose something that, in the circumstances, should have been disclosed in order to make the given statement accurate and complete." *Ludlum*, 278 F.3d at 1284. *Ludlum* differentiated between a lack of candor charge and a falsification charge: although falsification requires "intent to deceive," a lack of candor charge was a "broader and more flexible concept whose contours and elements depend upon the particular context and conduct involved." *Id.*; *see* Appx30; *see also Ryan v. DOD*, 760 F. App'x 990, 994 (Fed. Cir. 2019) (following *Ludlum*).

Citing instead to non-binding authority and to *Parkinson v. Department of Justice*, 815 F.3d 757 (Fed. Cir. 2016),[9] Ms. McIntosh asserts that "[t]his Court has refused to recognize a lack of candor charge where a statement 'provide[d] an *appearance* of' a lack of candor," because the statement could be read in multiple ways, one of which would be "'wholly accurate.'" Br. 37-38 (quoting *Parkinson*, 815 F.3d at 767-68) (emphasis in original). She alleges error because the administrative judge purportedly interpreted the April 6 email as unfavorably as possible. *Id.* at 38.

Ms. McIntosh overstates *Parkinson*. The Court concluded in *Parkinson* that the petitioner's statement that funds were "not approved" could be read in different ways because "'approved' is a generic way of saying 'pre-approved or ratified,'" and reading it in that manner made the statement entirely accurate. *Parkinson*, 815 F.3d at 767-68. As the Court went on to explain, however, even reading the petitioner's statement as favorably as possible did not "necessarily preclude a finding of a lack of candor based on other evidence of the speaker's state of mind," because the use of a generic term did not show by substantial evidence that the petitioner "'knowingly' failed to be forthright." *Id.* at 768.

---

[9] Ms. McIntosh fails to cite the Court's subsequent *en banc* proceedings, which vacated-in-part the case on other grounds. *Parkinson*, 874 F.3d 710.

No such multiple interpretations are possible here. Either Ms. McIntosh advised, *i.e.* told, Mr. Hastings that she would be leaving that day, as she represented in her email to multiple agency officials, or she did not advise him of her departure. Her statement is at a minimum misleading, implying that she *had* told Mr. Hastings of her departure and it was thus at least implicitly authorized. After weighing the evidence, the administrative judge found Ms. McIntosh's email "designed to imply that she had notified someone in the agency when" she had not. Appx31-32.

Because substantial evidence supports this charge, it should be affirmed.

## III. Removal Was A Reasonable Penalty

The agency demonstrated that Ms. McIntosh's penalty was within the bounds of reasonableness.

This Court has repeatedly held that it "defers to an agency's choice of penalty" unless the penalty exceeds the specified range of permissible punishment, or is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Brook v. Corrado*, 999 F.2d 523, 528 (Fed. Cir. 1993) (citations omitted). Thus, if the penalty of removal was among the permissible penalties set forth in the table of penalties for the charges against Ms. McIntosh, the Court should uphold her removal. Removal was among the permissible penalties, and the Court should affirm.

In determining the proposed penalty for Ms. McIntosh's actions, the proposing official, Mr. Cohen, considered the relevant *Douglas* factors. In particular, he considered the nature and seriousness of the misconduct; its relation to Ms. McIntosh's duties, position, and responsibilities; whether the offenses were intentional, technical, inadvertent; whether they were committed maliciously or for gain; and if the offenses were repeated. Appx119. He found Ms. McIntosh's length of service and lack of prior disciplinary records to be outweighed by the serious nature of the charges, her GS-15 position, and the repeated nature of the offenses. Appx120. Her "continued failures to comply with instructions" related directly to her job performance, and her actions diminished Mr. Cohen's faith in her honesty, credibility, and integrity. Appx120. Mr. Cohen noted that the applicable regulations permitted a penalty of "reprimand to removal" for each of the charges. Appx120; *see* Appx146 (AWOL of 6 or more consecutive workdays); Appx148 (insubordination, including deliberate refusal follow a directive); Appx149 (dishonest, infamous, or notoriously disgraceful conduct).

The deciding official, Dr. Van Winkle, took another look at the *Douglas* factors when reviewing the proposal of removal. Appx122-126; Appx425-437. She found the nature and seriousness of Ms. McIntosh's actions to be unprofessional, harmful to contract administration, directly correlated to her duties, and detrimental to the workplace. Appx122-123. Ms. McIntosh's position as a

GS-15 COR and her "lack of dependability and refusal to work with team members" caused management to lose confidence in the performance of her job duties, despite her length of service and lack of prior discipline. Appx123. Ms. McIntosh's extreme level of disrespect for her supervisor and co-workers showed a lack of rehabilitation potential. Appx124.

The administrative judge examined the agency's removal decision to determine whether the penalty was appropriate, and explained that "[t]he charges in this case are serious." Appx44-50. Ms. McIntosh's misconduct was directly related to her job duties, which gave her significant responsibility that she refused to accept by failing to perform her job duties. Ms. McIntosh's behavior also demonstrated a lack of respect for her supervisors and drew into question her veracity, and she expressed no remorse to the deciding official or in the board proceedings, underscoring her lack of rehabilitation potential. Rather, Ms. McIntosh made conclusory allegations that "justified or excused her behavior or blamed everything" on someone else. Appx48-49. After citing to numerous decisions upholding removal in similar circumstances, the administrative judge found the penalty of removal to be reasonable. Appx44-50.

Ms. McIntosh cites to no binding authority for her assertion that removal was "grossly disproportionate to the charges" in view of her lengthy service and lesser punishments received by other Government employees in other cases. Br.

42. She cites to *Douglas* and to *Grubb v. Department of Interior*, 96 M.S.P.R. 377 ¶ 49 (2004), in which the board affirmed the 45-day suspension imposed by the agency. *Id*. at 42-43. *Grubb* merely stands for the proposition that the board should not second-guess an agency's penalty, but rather consider whether the agency acted within the "tolerable bounds of reasonableness." Indeed, this Court has repeatedly held that it defers to an agency's penalty choice unless it exceeds the permissible range of punishment or is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Brook*, 999 F.2d at 528. Separately, each of the four charges carries a penalty of "reprimand to removal," and whether alone or in combination, removal was not outside the bounds of permissible punishment. The fact that a different agency proposed a 45-day suspension rather than removal in different circumstances does not justify this Court reversing the imposed penalty here, when the underlying charges are each demonstrated by substantial evidence.

## IV. The Agency Proved By Clear And Convincing Evidence That It Would Have Removed Ms. McIntosh Absent Any Protected Activity

Substantial evidence demonstrates that the agency proved by clear and convincing evidence that it would have removed Ms. McIntosh absent any protected disclosure or activity.

Ms. McIntosh's retaliation claims were based upon the five administrative grievances that she filed between January and March 2017. Appx407-411;

Appx716. Her allegations mostly centered around Mr. Boswell's actions of allegedly abusing his authority, creating a hostile work environment, and improperly requiring her to provide contract information to those lacking a "need-to-know" as well as improperly requiring that she approve travel invoices. Appx407-411. She also filed one grievance against Mr. Cohen, for allegedly acting in a hostile and belligerent manner when attempting to gather contract information from her. Appx409.[10]

The administrative judge found that Ms. McIntosh made protected disclosures and filed grievances; moreover, that this activity was a contributing factor to her removal based upon the timing, and the proposing and deciding officials' knowledge of, that activity. Appx41-42.

The burden then shifted to the agency to show by clear and convincing evidence that it would have removed Ms. McIntosh notwithstanding her protected disclosures and activity. *Robinson v. VA*, 923 F.3d 1004, 1018 (Fed. Cir. 2019); *see* 5 C.F.R. § 1209.4(3). The agency's actions are analyzed under the *Carr* factors: strength of evidence; existence of motive to retaliate by the decision-makers; and evidence that the agency takes similar actions against similarly

---

[10] On appeal, Ms. McIntosh focuses on the grievances that she filed and, although she generally refers to "whistleblowing," she references only 5 U.S.C. § 2302(b)(9)(D), which relates to "refusing to obey" Mr. Boswell's orders. *See, e.g.*, Br. 9-13, 30-33, 43-47.

situated employees who have not made protected disclosures or engaged in protected activity. *Robinson*, 923 F.3d at 1019-20 (citing *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1374 (Fed. Cir. 2012)). The agency "need not produce evidence with regard to each of these factors, nor must each factor weigh in favor of the agency," but the Court instead considers the record as a whole and balances the factors to determine if substantial evidence supports the agency's action. *Id.* (citing *Miller v. Dep't of Justice*, 842 F.3d 1252, 1263 (Fed. Cir. 2016)).

The agency met its burden. As relevant to the first *Carr* factor, and as demonstrated above, the agency proved each of its four charges by substantial evidence. Those charges were "serious, many with multiple specifications, and were often repeated," and resulted in the agency's loss of confidence in Ms. McIntosh, undermining its efforts to accomplish its mission. Appx43; *see* Appx113-126. As relevant to the second *Carr* factor, in proposing and sustaining Ms. McIntosh's removal, no discernable retaliatory motive existed on the part of Mr. Cohen or Dr. Van Winkle. Appx43-44. Ms. McIntosh's grievances mostly alleged improper acts by Mr. Boswell, who had retired and had no part in the removal decision. Appx407-411. Her one grievance against Mr. Cohen alleged belittling and hostile treatment that occurred when he was her co-worker, Appx409, and she did not reference Dr. Van Winkle in her grievances. Indeed, Ms. McIntosh admitted that the two had never interacted. Appx978 (210:33-6).

Turning to the third *Carr* factor, "[f]or an employee to be considered similarly situated to an individual who is disciplined, it must be shown that the conduct and the circumstances surrounding the conduct of the comparison employee are similar to those of the disciplined individual." *Carr*, 185 F.3d at 1326. Ms. McIntosh did not identify any "similarly situated" individuals below, except in support of the discrimination claims that she has waived on appeal (and those comparators related mainly to the allegedly preferential telework treatment given to employees with children). Appx715-717; Appx896-901; Appx911-917; *see* Appx714; Appx919-920. And the agency identified no "similarly situated" individuals. Appx434; *see, e.g., Robinson*, 923 F.3d at 1019-20. Substantial evidence thus supports that the agency would have taken the same actions absent Ms. McIntosh's protected activity.

Ms. McIntosh argues that the administrative judge insufficiently examined the *Carr* factors, particularly the third. Br. 43-47. She is incorrect. First, she argues that Mr. Cohen, named in only one grievance, "was at the heart" of all the grievances, relying on *Whitmore* and *Miller* to assert that his motive to retaliate may have existed by virtue of his position as supervisor. *Id*. at 44-46. Ms. McIntosh misunderstands the cases. In both, the Court explained that the administrative judge needed to consider the motives of the "'agency officials who were involved in the decision,' not just the employee's direct supervisor." *Miller*,

842 F.3d at 1262 (citing *Carr*, 185 F.3d at 1323); *see Whitmore*, 680 F.3d at 1370 (same). The administrative judge did so here, and Ms. McIntosh points to no other official involved in the removal decision with a retaliatory motive.

Rather, the administrative judge had before her the express denials of the two individuals involved in the removal decision: Mr. Cohen and Dr. Van Winkle. Mr. Cohen expressly denied that he considered Ms. McIntosh's "whistleblowing" when proposing her removal, explaining that he instead took into account the "nature and pattern of her misconduct and demonstrated lack of rehabilitation potential." Appx1029. Likewise, Dr. Van Winkle—the deciding official whom Ms. McIntosh does not argue had any sort of retaliatory motive—explained that she based her decision in large part on numerous emails "containing Ms. McIntosh's own words" when reaching her decision. Appx1144; *see also* Appx978 (210:33-6).

Second, Ms. McIntosh contends that the administrative judge erred by failing to consider evidence of "similarly situated" individuals, asserting that "no[n] whistleblowers were permitted to take leave and extend leave without having to provide the same kind [of] medical documentation" required by Ms. McIntosh. Br. 46. She did not identify any "similarly situated" individuals below to support her whistleblowing allegations. *See* Appx715-717; Appx896-901; Appx911-917. The screenshots shown on Appx181, to which she cites in support

of this argument, are emails from a co-worker stating that (1) he was going to the hospital and (2) he would need to take a few more days off. This purported "comparator," who referred to his hospitalization, is far from the situation here. Ms. McIntosh sent three emails to Mr. Boswell providing only dates and the words "sick leave." Appx1030-1033. When requested to provide administratively acceptable medical documentation after Mr. Cohen and Employee Relations found her documentation insufficient, *see* Appx198; Appx1026-1027; Appx1035, she provided none.

Ms. McIntosh asserts that *Miller* and *Whitmore* also demonstrate that an agency's failure to bring evidence on the third *Carr* factor could be fatal. Br. 46. Yet both cases also explain that, "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Whitmore*, 680 F.3d at 1374; *Miller*, 842 F.3d at 1262. That is the case here. Moreover, considering the strength of the agency's evidence; the fact that Ms. McIntosh did not raise these allegations in connection with her whistleblower claims; and that the administrative judge is presumptively considered to have reviewed all evidence before her, the lack of a separate analysis into this third *Carr* factor demonstrates no error. *See Snyder*, 854 F.3d at 1373.

Because substantial evidence supports that the agency would have removed Ms. McIntosh regardless of her whistleblowing and grievances, and the

administrative judge's examination of the *Carr* factors was not arbitrary, capricious, or unsupported by law, the Court should affirm.

## V. The Court Should Not Consider Ms. McIntosh's Belated Appointments Clause Argument, But If It Does, Should Find That Administrative Judges Are Not Principal Officers

Although Ms. McIntosh was represented by counsel below, she failed to raise her Appointments Clause argument before the administrative judge, and thus it is waived.[11] Even if the Court determines to hear her argument, however, it should reject her assertion that MSPB administrative judges are principal officers.

### A. Ms. McIntosh Waived Her Appointments Clause Argument

Because Ms. McIntosh never raised her Appointments Clause argument below, she has waived her ability to do so here.

"[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37-38 (1952) (holding that parties may not wait until they are in court to raise a statutory "defect in the . . . appointment" of the official who issued the agency's initial decision); *see also In re DBC*, 545 F.3d 1373, 1378 (Fed. Cir. 2008). The Supreme Court has recognized that

[11] In our motion for remand, we expressly reserved the right to challenge "the presentation or merits" of Ms. McIntosh's Appointments Clause argument. DE 17 ¶ 4; DE 22-1 at 2-3.

Appointments Clause challenges, as with other arguments, must be timely raised below or they are subject to forfeiture upon appeal. *Ryder v. United States*, 515 U.S. 177, 182-83 (1995) (finding petitioner entitled to relief on Appointments Clause claim because he, unlike other litigants, had timely raised his objection).

Like other "nonjurisdictional claims that ha[ve] not been raised below," Courts retain their discretion to determine whether a waived Appointments Clause challenge should be heard; only "rare cases" warrant such an exercise of discretion. *Freytag v. Comm'r*, 501 U.S. 868, 878-79 (1991). Although the Court recently considered an Appointments Clause challenge notwithstanding the petitioner's waiver, *Arthrex, Inc. v. Smith Nephew, Inc.*, 941 F.3d 1320, 1326-27 (Fed. Cir. 2019), it more recently declined to so exercise that discretion. *Ciena Corp. v. Oyster Optics, LLC*, 958 F.3d 1157, 1160-61 (Fed. Cir. 2020); *see also Customedia Techs., LLC v. Dish Network Corp.*, 941 F.3d 1173 (Fed. Cir. 2019). The Court otherwise considers whether "prudential considerations" warrant exercising discretion to hear a waived argument. *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322-23 (Fed. Cir. 2008) (quoting *Forshey v. Principi*, 284 F.3d 1335, 1353-57 (Fed. Cir. 2002)).

Sound reasons exist for requiring a party to raise an Appointments Clause challenge to the agency in the first instance, including permitting the "'agency an opportunity to correct its own mistakes . . . before it is haled into federal court,'"

and promoting judicial efficiency by not wasting valuable resources at this Court or the board. *DBC*, 545 F.3d at 1378-79 (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). Even if an agency "lacks authority" to address such a constitutional challenge, it may still apply its expertise over "many threshold questions." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 16, 22-23 (2012).

In this case, the MSPB's expertise in its own procedures and the statutes that it regularly applies can, and should, be utilized on this constitutional challenge to those statutes. *Elgin*, 567 U.S. at 23. Had Ms. McIntosh timely raised her challenge below, the board would have had the opportunity to address the role that the administrative judges have within its statutory scheme. Nor is there any concern that the board would have failed to "even acknowledge[] that the [asserted] problem existed," *DBC*, 545 F.3d at 1379, considering that the question of whether board administrative judges are properly appointed was certified for interlocutory review by the full board prior to the decision in this case below. DE 22-1 at 2-3. Ms. McIntosh makes no attempt to explain her failure to raise her Appointments Clause argument below, Br. 47-51, and because the circumstances here are more analogous to those in *DBC* or *Ciena* than those in *Arthrex*, the Court should decline to consider her argument for the first time now.

In *DBC*, after the petitioner received an unfavorable decision from a panel at the patent board, it raised to this Court in the first instance an Appointments Clause

challenge to the board's appointment. *DBC*, 545 F.3d at 1377-78. The Court declined to consider that challenge. As it explained, DBC had ample opportunity to raise the issue both pre- and post-decision, thus giving the board the opportunity to address the issue; even if the board declined to do so, DBC would have preserved its appeal rights. *Id*. at 1379-80. The Court found fatal DBC's "lack of diligence to present an issue of which it was, or should have been, aware." *Id*. at 1380. Permitting litigants to raise such an issue for the first time on appeal, as DBC attempted, would encourage "sandbagging, *i.e*., 'suggesting or permitting, for strategic reasons, that the trial court pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error.'" *Id*. at 1380 (quoting *Freytag*, 501 U.S. at 895 (Scalia, J., concurring in part and concurring in the judgment)). The Court also found Congress' attempts to address the issue, and the fact that the Court had affirmed the board's action, "speaks against our exercising discretion and needlessly protracting the reexamination of the present patent." *Id*. at 1380-81.

Last year in *Arthrex*, the Court instead chose to exercise its discretion over a petitioner's waived Appointments Clause argument regarding the patent board's authority. 941 F.3d at 1326-27. The Court found some of the reasons justifying waiver in *DBC*, primarily Congress's remedial action, inapplicable. *Id*. at 1327.

Determining the question to be of "exceptional importance," the Court elected to hear the waived argument. *Id.*

Several months later, the Court declined to hear a waived Appointments Clause argument in *Ciena*, rejecting the petitioner's attempt to vacate and remand the patent board's decision in light of *Arthrex*. 958 F.3d at 1158-59. Unlike the petitioner in *Arthrex*—who was forced to the patent board following respondent's request for *inter partes* review of certain claims, *see Arthrex*, 941 F.3d at 1325-26—Ciena had elected to bring its claims before the patent board. *Ciena*, 958 F.3d at 1157. The Court explained that Supreme Court precedent did not require it to always "forgive waiver or forfeiture" of Appointments Clause claims; rather, "[w]hile the presence of a structural separation of powers issue *can* justify considering a matter in the face of a clear waiver or forfeiture, it does not compel it." *Id*. at 1160-61 (emphasis added). Petitioner had elected to appear before the patent board and "affirmatively sought a ruling from the Board members, regardless of how they were appointed. Ciena was content to have the assigned Board judges adjudicate its invalidity challenges until the Board ruled against it." *Id*. at 1159. Thus, "[a]ny constitutional concern regarding the appointment of the Board judges in this case is negated by Ciena's forfeiture." *Id.* at 1162; *see also, e.g., Customedia Techs., LLC v. Dish Network Corp.*, 941 F.3d 1173, 1174

(denying motion to remand following *Arthrex* because petitioner failed to raise its Appointments Clause challenge on appeal).

Ms. McIntosh attempts to engage in the "sandbagging" that the Court rejected in *DBC* and like *Ciena*, appeared content to have had the board adjudicate her claims, until it ruled against her. Her attempts to engineer a more favorable result by raising a belated Appointments Clause argument now should be rejected. Ms. McIntosh likewise fails to meet any of the four "prudential considerations" enumerated by this Court when considering whether to hear a waived argument. *See, e.g., Golden Gate*, 527 F.3d at 1322-23.

First, since the June 24, 2019 decision, there has been no "intervening legislation" regarding the board's authority. Second, there has been no jurisprudential change from the board or the Supreme Court. When raising her Appointments Clause argument, Ms. McIntosh relies upon *Lucia v. Securities Exchange Commission*, 138 S. Ct. 2044 (2018)—decided more than a year prior to the decision in her case. *See* Appx1; Br. 47-48. Nor does the Court's decision in *Arthrex* require that this Court hear Ms. McIntosh's Appointments Clause argument; as demonstrated above, the Court elected, but was not required, to do so. *See Arthrex*, 941 F.3d at 1327; *see also Ciena*, 958 F.3d at 1158-59.

Third, Ms. McIntosh notably failed to present any argument below regarding the administrative judge's authority over her appeal, notwithstanding numerous

opportunities to do so following *Lucia*. *See, e.g.*, DE 6 at 6-8 (certified list showing 21 actions after June 21, 2018). Finally, Ms. McIntosh, although appearing *pro se* for a limited time, was continually represented by counsel below after May 20, 2018. Appx749. Indeed, the administrative judge explicitly noted that Ms. McIntosh's counsel was "an experienced practitioner before the Board." Appx4; *see also* Br. 42 n.2 (claiming that Ms. McIntosh's "attorneys zealously advocated on her behalf" at the board.).

Because Ms. McIntosh should have been well aware of the Appointments Clause issue pending before the board, yet failed to raise the issue below, the Court should find that she waived her ability to do so now.

**B. The Administrative Judge Is Not An Principal Officer**

If the Court determines to address Ms. McIntosh's Appointments Clause argument, it should find that MSPB administrative judges are not principal officers.

Ms. McIntosh contends that MSPB administrative judges are officers of the United States who must be appointed consistent with the Appointments Clause; particularly, she asserts that they are principal officers. Br. 46-50. She does not argue that MSPB administrative judges are inferior officers and thus Ms. McIntosh waived that argument by failing to present it in her opening brief. *SmithKline*, 439 F.3d at 1319; *Customedia*, 941 F.3d at 1174. As intervenor, the MSPB argues that

the board should decide in the first instance whether its administrative judges are properly appointed pursuant to the Appointments Clause and argues that administrative judges are not principal officers. *See* DE 27 at 5-25.

We explained in our motion to remand that we did not contest the relief sought by Ms. McIntosh, while respectfully reserving any argument regarding the presentation and merits of her Appointments Clause argument. DE 17 at 2; *see also* DE 22-1 at 3-4. We also explained that the Appointments Clause issue was pending on interlocutory appeal before the board, with the President's board nominees pending before the Senate. DE 22-1 at 3. If the Court were to determine that Ms. McIntosh did not forfeit her Appointments Clause argument, we disagree that the administrative judges are principal officers, but instead would be inferior officers. *See* DE 17 ¶ 3; DE 22-1 at 2.

Ms. McIntosh contends that administrative judges are principal officers because they are not supervised by any other officer of the Executive Branch. Br. 48-49. That is incorrect. The MSPB's Members, who are principal officers appointed by the President with the advice and consent of the Senate, 5 U.S.C. § 1201, supervise administrative judges, may reverse their decisions, and may remove them from their administrative judge roles. *See Arthrex*, 941 F.3d at 1329 (identifying these factors as "strong indicators" that the office is an inferior office). Administrative judges "must follow and apply the Board's decisions," *Maloney v.*

*USPS*, No. PH-0752-06-0698-I-1, 2007 WL 933889 (MSPB Jan. 19, 2007), as well as applicable regulations promulgated by the MSPB, *see generally* 5 C.F.R. pt. 1201 (MSPB regulations concerning Practices and Procedures). This authority ensures that the board may generally supervise the method by which administrative judges conduct adjudications. *See Arthrex*, 941 F.3d at 1331-32. In addition, the MSPB may review any administrative judge's decision on a party's petition or *sua sponte*, 5 U.S.C. § 7701(e)(1); reviews the administrative judge's decision *de novo*, 5 C.F.R. § 1201.115; and may "reverse, modify, or vacate" the administrative judge's initial decision, *id.* § 1201.117.

Ms. McIntosh contends that this power is somehow limited because the board will reopen final decisions only in unusual cases. Br. 48 (citing 5 C.F.R. § 1201.118). But that regulation applies merely to decisions that are *already* final, and does not limit the MSPB's general authority to *sua sponte* review all administrative judge decisions. And in any event, the MSPB may revoke even that modest limitation at any time. *See In re Grand Jury Investigation*, 916 F.3d 1047, 1052 (D.C. Cir. 2019).

The MSPB may also remove any person from the office of administrative judge, and that office is created not by statute, but rather by regulation. *Compare* 5 U.S.C. § 7701(b)(1) (allowing the MSPB to assign adjudications to an "employee designated by the Board to hear such cases"), *and id.* § 1204(b)(1) (same), *with* 5

C.F.R. § 1201.4 (providing for the office of administrative judge, and defining administrative judges to be "[a]ny person authorized by the Board to hold a hearing or to decide a case without a hearing" including any "employee of the Board"). Accordingly, the board may remove its administrative judges by simply revoking the regulation that creates their office, and retaining them as employees who may perform non-officer functions. *In re Sealed Case*, 829 F.2d 50, 56 (D.C. Cir. 1987); *see also In re Grand Jury Investigation*, 916 F.3d at 1052.

Alternatively, the MSPB may remove any administrative judge from an adjudicative assignment simply by revoking the assignment and hearing the matter in the first instance. *See Edmond v. United States*, 520 U.S. 651, 664 (1997) (describing this authority as "a powerful tool for control"). Petitioner mistakenly contends that the position of administrative judge is protected by an "efficiency of the service" standard. Br. 49 (citing 5 U.S.C. § 7513(a)). But an employee who has been removed from only the office of administrative judge remains an employee of the MSPB, and has not been removed from board employment. Accordingly, administrative judges are inferior officers who are subject to extensive supervision by the MSPB, not principal officers.

Ms. McIntosh also notes that the MSPB currently lacks a quorum, and suggests that on this basis administrative judges are principal officers. Br. 49. The mere happenstance that the Senate has yet to confirm the President's nominees to

the board does not somehow promote MSPB administrative judges to the status of principal officers. Ms. McIntosh cites no authority for that remarkable position. And in any event, the President has submitted nominees to fill all vacant Member positions, and those nominations are currently on the Senate's Executive Calendar.[12] There is no reason to expect that the Senate will not act on those nominations in due course.

## CONCLUSION

For these reasons, the decision should be affirmed.

[12] *See* Congress.gov, https://www.congress.gov/nomination/116th-congress/187 (nomination of Dennis Dean Kirk); https://www.congress.gov/nomination/116th-congress/695 (nomination of B. Chad Bungard); https://www.congress.gov/nomination/116th-congress/183 (nomination of Julia Akins Clark) (last visited June 18, 2020).

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Allison Kidd-Miller
ALLISON KIDD-MILLER
Assistant Director

/s/ Erin K. Murdock-Park
ERIN K. MURDOCK-PARK
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel. (202) 616-3753
Fax. (202) 514-8624
E-mail. erin.k.murdock-park@usdoj.gov

Dated: June 29, 2020

Counsel for Respondent

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 29th day of June, 2020, a copy of the foregoing "RESPONDENT'S CORRECTED BRIEF" was filed electronically. This filing was served electronically to all parties by virtue of the court's electronic filing system.

/s/ Erin K. Murdock-Park
ERIN K. MURDOCK-PARK

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 27(d)(2)(A), this response contains 13,831 words, excluding the parts of the response exempted by Fed. R. App. P. 27(d)(2) and Fed. Cir. R. 27(d), as calculated by Microsoft Word – the word processing program used to prepare this brief – using a 14-point proportionally spaced typeface and type style.

/s/ Erin K. Murdock-Park
ERIN K. MURDOCK-PARK