No. 19-2454

# United States Court of Appeals for the Federal Circuit

ELFINA MCINTOSH,
*Petitioner,*

v.

DEPARTMENT OF DEFENSE,
*Respondent,*

and

MERIT SYSTEMS PROTECTION BOARD,
*Intervenor.*

*Petition for Review of the United States Merit Systems Protection Board in Docket No. DC-0752-17-1803-I-4, Hon. Sherry A. Zamora*

## REPLY BRIEF FOR PETITIONER ELFINA MCINTOSH

July 27, 2020

DAVIS POLK & WARDWELL LLP

Philip T. Sheng
1600 El Camino Real
Menlo Park, California 94025
Tel.: (650) 752-2000
philip.sheng@davispolk.com

Corey M. Meyer
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000
corey.meyer@davispolk.com

*Counsel for Petitioner*

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel certifies:

**1. The full name of every party or amicus represented by me is:**

Elfina McIntosh.

**2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:**

N/A.

**3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:**

N/A.

**4. The names of all law firms and the partners and associates that appeared for the party or amicus now represented by me in the lower tribunal or are expected to appear for the party in this Court and who are not already listed on the docket are:**

David Hart (Kator, Parks, Weiser & Harris)

Andrew Kim (Melville Johnson P.C.)

Felicia Nestor.

**5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal are:**

N/A.

Dated: July 27, 2020

Respectfully submitted,

*/s/ Philip T. Sheng*

Philip T. Sheng

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTEREST ........................................................................ i

ARGUMENT .................................................................................................1

I. The Court Should Remand for Reconsideration of the *Douglas* Factors ..............................................................................................2

A. The AJ Legally Erred in Ruling Ms. McIntosh Needed to Obey First and Grieve Later .....................................................2

B. The AJ's Decision Permitting DoD to Retroactively Convert Ms. McIntosh's Sick Leave into AWOL Should Be Overturned.........................................................................5

C. The AJ's Decision to Sustain DoD's AWOL Charges Related to Previously-Approved Annual Leave Should Be Reversed.............................................................................6

D. There Is No Evidence That Ms. McIntosh Had Any Intent to Deceive the Agency ................................................8

E. The AJ's Decision to Uphold the Inappropriate Conduct Charge Related to Safeguarding Documents Cannot Be Sustained ..........................................................................9

F. The AJ's Decision to Uphold DoD's Inappropriate Conduct Charge Should Be Reversed......................................10

II. DoD Failed to Prove by Clear and Convincing Evidence That It Would Have Removed Ms. McIntosh Absent Her Protected Activity and the AJ Erred in Finding Otherwise................................10

III. MSPB AJs Are Not Constitutionally Appointed ................................13

A. This Court Should Adjudicate Ms. McIntosh's Appointments Clause Argument..............................................13

B. The MSPB Has Been Without a Full Board for Over Five Years, and This Court Should Address the Appointments Clause Issue....14

C. Board AJs Are Principal Officers....20

1. The Board Lacks Unfettered Authority to Review AJ Decisions and the Court Should Sever the Limiting Regulation....20

2. The Board Lacks Unfettered Removal Authority....24

D. Even Accepting DoD's and Intervenor's Arguments, There Was No Board During the Entirety of This Case, Rendering the AJ's Decision Invalid as Applied to Ms. McIntosh....25

E. Even If AJs Are Inferior Officers, They Are Still Not Properly Appointed....28

CONCLUSION....29

## TABLE OF AUTHORITIES

PAGE

**Cases**

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
941 F.3d 1320 (Fed. Cir. 2019) .......... passim

*Ciena Corp. v. Oyster Optics, LLC*,
958 F.3d 1157 (Fed. Cir. 2020) .......... 16

*In re DBC*,
545 F.3d 1373 (Fed. Cir. 2008) .......... 17

*Edmond v. United States*,
520 U.S. 651 (1997) .......... 25, 26

*Gant v. United States*,
417 F.3d 1328 (Fed. Cir. 2005) .......... 11

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) .......... 17

*Helman v. Dep't of Veterans Affairs*,
856 F.3d 920 (Fed. Cir. 2017) .......... 29

*Hines v. Sec'y of Health & Human Servs*.,
940 F.2d 1518 (Fed. Cir. 1991) .......... 3, 6

*In re Grand Jury Investigation*,
916 F.3d 1047 (D.C. Cir. 2019) .......... 22

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd*.,
684 F.3d 1332 (D.C. Cir. 2012) .......... 26

*Juniper Networks, Inc. v. Shipley*,
394 F. App'x 713 (Fed. Cir. 2010) .......... 3

*Kent v. GSA*,
56 M.S.P.R. 536 (1993) .......... 3

*Kisor v. Wilkie*,
139 S. Ct. 2400 (2019) ....................22

*Masias v. Sec'y of Health and Human Servs.*,
634 F.3d 1283 (Fed. Cir. 2011) ....................25

*McCray v. Fid. Nat. Title Ins. Co.*,
682 F.3d 229 (3d Cir. 2012) ....................28

*McGirt v. Oklahoma*,
No. 18-9526, 2020 WL 3848063 (U.S. July 9, 2020) ....................19

*Miller v. Department of Justice*,
842 F.3d 1252 (Fed. Cir. 2016) ....................12

*Parkinson v. Department of Justice*,
815 F.3d 757 (Fed. Cir. 2016) ....................9

*Preminger v. Sec'y of Veterans Affairs*,
517 F.3d 1299 (Fed. Cir. 2008) ....................23

*Schultz v. U.S. Navy*,
810 F.2d 1133 (Fed. Cir. 1987) ....................7

*Special Counsel v. Gallagher*, 44 M.S.P.R. 57 (M.S.P.B. Mar. 2, 1990) ....................15

*Synan v. Merit Sys. Prot. Bd.*,
765 F.2d 1099 (Fed. Cir. 1985) ....................5

*U.S. v. Eaton*,
169 U.S. 331 (1898) .................... 27, 28

*United States v. Bohn*,
956 F.2d 208 (9th Cir. 1992) ....................28

*Wagner v. United States*,
365 F.3d 1358 (Fed. Cir. 2004) ....................23

**Statutes**

5 U.S.C. § 1202 ....................28

5 U.S.C. § 2302 ........................................................................................2

5 U.S.C. § 7701 ........................................................................... 20, 21, 23

**Other Authorities**

H.R. Rep. 115-67 (2017)..............................................................................2

77 Fed. Reg. 62350 (Oct. 12, 2012).........................................................21

77 Fed. Reg. 33663 (June 7, 2012) .........................................................21

MSPB, *Frequently Asked Questions about the Lack of Board Quorum and Lack of Board Members* 1 (Mar. 1, 2019), https://www.mspb.gov/FAQs_Absence_of_Board_Quorum_March_1_2019.pdf ..................... 15, 19

The White House, *President Donald J. Trump Announces Key Additions to His Administration* (Mar. 8, 2018), www.whitehouse.gov/presidential-actions/president-donald-j-trump-announces-key-additions-administration-31/.15

The White House, *President Donald J. Trump Announces Key Additions to His Administration* (June 20, 2018), www.whitehouse.gov/presidential-actions/president-donald-j-trump-announces-nomination-personnel-key-administration-posts/ ..........................................................................15

The White House, *Nomination Sent to the Senate* (Apr. 30, 2019), www.whitehouse.gov/presidential-actions/nomination-sent-senate/..................15

**Regulations**

5 C.F.R. § 1201.113 ............................................................................ 20, 21

5 C.F.R. § 1201.118 ............................................................................ 21, 23

# ARGUMENT

Ms. McIntosh is a single mother who worked for the government for nearly 20 years. She never received any formal disciplinary action and consistently received positive reviews. The Department of Defense ("DoD") even promoted her to GS-15 and granted her a performance-based bonus months before her termination. Despite her employment record and promotion, DoD terminated her after she filed several whistleblower grievances.

After filing her first grievance, her supervisor became hostile toward her and began "looking for options that will enable [him] to remove [her]." Appx0481; Appx0966 (159:2-161:2). DoD left no stone unturned in trying to remove Ms. McIntosh. For example, DoD retroactively converted her previously-approved sick leave into AWOL status and rejected her medical documentation as "administratively unacceptable" without any justification. As another example, DoD accused her of failing to safeguard confidential documents after she handed them to the executive assistant to the Deputy Assistant Secretary of Defense at his office inside the Pentagon. Meanwhile, DoD made no effort to investigate Ms. McIntosh's whistleblower complaints until after she was placed on administrative leave and no longer had access to her workstation. Appx0867-0868.

As Ms. McIntosh demonstrated in her opening brief ("McIntosh Br."), the AJ's decision upholding her termination is contrary to law and unsupported by

substantial evidence, and the AJ failed to conduct a proper *Carr* analysis. Ms. McIntosh also demonstrated that the AJ is a principal officer who was improperly appointed under the Appointments Clause, rendering the AJ's decision invalid. For all of these reasons, the decision below cannot stand.

## I. The Court Should Remand for Reconsideration of the *Douglas* Factors

Because the AJ should not have sustained some, if not all, of DoD's specifications, the Court should remand to determine anew what penalty, if any, is appropriate for Ms. McIntosh. Given the lack of evidence supporting DoD's charges, the harsh penalty of termination is not appropriate.

### A. The AJ Legally Erred in Ruling Ms. McIntosh Needed to Obey First and Grieve Later

The AJ legally erred in ruling Ms. McIntosh was obligated to obey Mr. Boswell's instructions and grieve later. DoD does not even attempt to address the plain language of 5 U.S.C. § 2302(b)(9)(D) or the legislative history of the Whistleblower Protection Enhancement Act ("WPEA") of 2012, which "was an explicit rejection of the general policy for federal employees to 'obey first, grieve later.'" H.R. Rep. 115-67, at 2 (2017). DoD also does not contest that *Pedeleose* was abrogated by the WPEA and the Follow the Rules Act of 2017. Nor could it.

DoD instead alleges that Ms. McIntosh "identified no law, rule, or regulation that Mr. Boswell supposedly asked her to violate." DoD Corrected Brief ("DoD Br.") at 35. That is untrue. Ms. McIntosh explicitly identified, with citation to

case law, the rule that an employee could be disciplined for improperly disclosing confidential information. Appx0906 (citing *Kent v. GSA*, 56 M.S.P.R. 536, 546-647 (1993)). In fact, DoD brought charges against Ms. McIntosh based on the same rule—i.e., allegedly improperly handling sensitive contract information. Appx0116. Moreover, DoD cannot dispute that Ms. McIntosh was prohibited from delegating approval authority and from disclosing Contracting Officer's Representative ("COR") information to unauthorized recipients. Appx0471-0472, Appx0474. Those rules were conditions of her appointment set forth in a signed Appointment Memorandum.[1]

DoD also argues that "McIntosh incorrectly asserts that the agency's specifications were 'based entirely on [her] refusal to disclose confidential information to Mr. Cohen'" and claims that the specifications were based also on the refusal to provide information to Ms. McIntosh-Braden. DoD Br. 34. Without explanation, DoD claims that Ms. McIntosh's "argument thus fails at the threshold." *Id*. at 34. But whether the specifications were based on the refusal to

[1] DoD argues that its own COR handbook—and in particular its instruction that "following the boss's orders" is not a valid excuse to violating the rules—is not in the record. There is no dispute as to the authenticity and accuracy of the handbook, signed by the Director of Defense Procurement and Acquisition Policy and published on DoD's website. It is an official DoD document, and the Court should take judicial notice of the fact that DoD instructs its CORs that "following the boss's orders" is not a valid excuse to violating the rules. *See Hines v. Sec'y of HHS*, 940 F.2d 1518, 1526 (Fed. Cir. 1991); *Juniper Networks v. Shipley*, 394 F. App'x 713 (Fed. Cir. 2010).

disclose information to both Mr. Cohen and Ms. McIntosh-Braden, as opposed to Mr. Cohen alone, is irrelevant to the fact that Ms. McIntosh was unlawfully punished for not disclosing information to Mr. Cohen.[2] DoD has no substantive response to the argument that Mr. Cohen was not authorized to receive sensitive COR information. All it can say is that he was "arguably" an "internal review official," and thus permitted to access the information. *Id*. at 33. Of course, DoD had to insert the "arguably" qualifier because its appendix citations say nothing about him being an "internal review official." *Id*. There is simply nothing in the record to suggest that Mr. Cohen was authorized to receive sensitive COR information, which is precisely the point—the AJ did not conduct that analysis. The AJ improperly required Ms. McIntosh to obey Mr. Boswell's orders first and grieve later.

DoD also contends that Ms. McIntosh incorrectly performed her duties by not permitting the Project Manager to approve travel authorizations on her behalf.[3]

---

[2] Specification 3 was indeed based solely on Ms. McIntosh's refusal to provide COR information to Mr. Cohen. DoD alleged that Ms. McIntosh refused to release "certain contract documents" and cites an allegedly "defiant note via email to Ms. Heather McIntosh-Braden" refusing to provide documents *to Mr. Cohen*. Appx0116 (quoting Appx0511 (refusing to release documents in response to the request that "Andy [Cohen] needs some additional information/access for a complete assessment.")).

[3] DoD appears to repeat the AJ's error of referring to "project manager" instead of program manager. *See* Appx0015.

DoD Br. 7. But DoD's appendix citations do not mention a Project (or Program) Manager and contradict DoD's assertion. The cited document states that Ms. McIntosh is "the only Government employee who may direct the flow of matters between the Government and the Contractor." Appx0470. The document further states, "[a]s a minimum, [Ms. McIntosh] must review invoices . . . to verify that the hours and costs incurred are reasonable" and that she "may *not* delegate any of the duties or responsibilities assigned to [her]." Appx0473-0474.

### B. The AJ's Decision Permitting DoD to Retroactively Convert Ms. McIntosh's Sick Leave into AWOL Should Be Overturned

DoD does not contest that its actions violated its regulations. Instead, DoD resorts to arguing waiver without addressing the points raised by Ms. McIntosh. DoD Br. 37-38. First, Ms. McIntosh squarely argued before the AJ that DoD lacked authority to convert her sick leave to AWOL, so there cannot be waiver.[4] *Id.* at 37 ("Ms. McIntosh asserted below . . . that the agency improperly 'converted' her sick leave to AWOL."). Second, Ms. McIntosh's supervisor approved her sick leave and wished her well. Appx1030. Ms. McIntosh should prevail on this alone. It cannot be that an employee's supervisor can approve a request for leave without expressing any reservation and then punish the employee

[4] Thus, DoD's reliance on *Synan v. MSPB* is misplaced. DoD Br. 37. The "issue" waived in *Synan* was never raised before the MSPB. *Synan v. MSPB*, 765 F.2d 1099, 1101 (Fed. Cir. 1985).

for taking that leave. Third, Ms. McIntosh complied with DoD's ex-post request for medical documentation. Appx1035. DoD does not even attempt to explain why this documentation was administratively unacceptable or what authority DoD had to demand additional, intrusive documentation. Appx0198. All DoD can cite is the subjective understanding of Mr. Cohen. DoD Br. 36-37.

Ms. McIntosh's citation to DoD's regulations is not raising a new argument. It is support for her argument that she was improperly punished for alleged AWOL violations and a direct response to the AJ's erroneous holding that "a supervisor can require medical documentation if there are concerns about an employee's absence."[5] Appx0024.

### C. The AJ's Decision to Sustain DoD's AWOL Charges Related to Previously-Approved Annual Leave Should Be Reversed

Regarding the AJ's decision to uphold DoD's AWOL charges related to Ms. McIntosh's previously-approved annual leave, the AJ stated that Ms. McIntosh submitted "no sworn statement or other evidence" that Mr. Boswell granted her verbal approval for her leave. Appx0026. In fact, the AJ consistently faulted Ms. McIntosh for allegedly failing to provide sworn evidence. *E.g.*, Appx0024; Appx0039. However, the AJ failed to give any weight to Ms. McIntosh's

[5] Moreover, DoD's regulations regarding sick leave are "not subject to reasonable dispute" and are "capable of accurate and ready determination." *Hines*, 940 F.2d at 1526.

deposition testimony, which was sworn. DoD does not dispute that Ms. McIntosh's deposition testimony was sworn, but instead argues that the AJ cited the testimony and that is sufficient. DoD Br. 40. But the AJ's citation is precisely the point. The AJ cited to Ms. McIntosh's deposition testimony, stated that she failed to provide any sworn evidence, and underweighted her testimony in favor of Mr. Boswell's sworn statement. Appx0026. While the AJ would have been free to weigh the two statements, it was error to characterize one party's evidence as "unsworn" and discount it when it was, in fact, sworn.

DoD argues *Schultz* does not support Ms. McIntosh's claims because she "does not contend that she requested sick leave for these days." DoD Br. 39. But that is not the point of *Schultz*. In *Schultz*, the appellant also did not request sick leave. *Schultz v. U.S. Navy*, 810 F.2d 1133, 1137 (Fed. Cir. 1987) (noting "Schultz' request to use *annual leave*" (emphasis added)). Instead, the appellant, like Ms. McIntosh, faced "the improper denial of leave." *Id*. Relying on the Office of Personnel Management's policy on annual leave, the Court found "Ms. Schultz' request to use annual leave" was in accordance with procedure. *Id.* Likewise, the Court should find that Ms. McIntosh properly exercised her right to use annual leave.

DoD further claims that a March 24, 2017 email from Mr. Boswell shows that there was no active leave request in the system, DoD Br. 40, but the email

actually confirms there was a leave request but that for whatever reason it was not showing in the system as needing approval, Appx0354. The fact that it was not showing as needing approval was the reason Mr. Boswell emailed Ms. McIntosh. Appx0354. Ms. McIntosh testified under oath that Mr. Boswell had already approved her annual leave in accordance with his practice for other approvals. Appx0970-0971 (177:3-179:8).

Finally, DoD's contention that Mr. Boswell was justified in tying Ms. McIntosh's use of annual leave to her use of sick leave because she was seeking to avoid a "bad closeout review" is not supported by DoD's appendix citations or any other evidence in the record. DoD Br. 40. Ms. McIntosh needed to take her annual leave to care for her child during spring break. Appx0970-0971 (176:17-177:2; 179:3-179:8).

### D. There Is No Evidence That Ms. McIntosh Had Any Intent to Deceive the Agency

The AJ erred in sustaining the lack of candor charge. At issue is an email Ms. McIntosh sent stating: "I am in a hostile work environment, and I am being harassed by Andy Cohen. For my safety, I have advised Mr. Hasting[s] that I am going home." Appx0031; Appx1047-1048. DoD alleged a lack of candor only with respect to the last sentence of the email, and the AJ sustained DoD's charge because the sentence "appears clearly designed to imply that she had notified someone in the agency" when she allegedly did not. Appx0031-0032. But the

email itself was the notification to the agency that she was going home. Ms. McIntosh immediately followed it up with an email to Mr. Hastings' assistant that she "will submit a leave slip for [her] departure." Appx0261. Ms. McIntosh could have just left without voluntarily sending the email, or she could have sent it without copying Mr. Hastings' assistant. But Ms. McIntosh had nothing to hide, and there is no evidence that she had the requisite intent to deceive the agency. Just like in *Parkinson v. DOJ*, the statement is improperly being interpreted in the most unfavorable way to her. 815 F.3d 757, 767 (Fed. Cir 2016), *aff'd in part, vacated in part on other grounds*, 874 F.3d 710 (Fed. Cir. 2017) (en banc).

### E. The AJ's Decision to Uphold the Inappropriate Conduct Charge Related to Safeguarding Documents Cannot Be Sustained

DoD does not dispute that there is no evidence in the record to support the AJ's finding that the desk of Mr. Hastings' assistant is "a public desk" or otherwise an unsecure location. Nor could it. Thus, DoD improperly urges this Court to blindly accept Mr. Hastings' sworn statement just as the AJ did. DoD Br. 30. DoD also tries to draw a comparison to Ms. McIntosh's refusal to provide sensitive information to Mr. Cohen, who lacked a "need-to-know." *Id.* at 31. But Ms. McIntosh had just been relieved of her duties, which was why she went to her second-level supervisor's office inside the Pentagon to return her COR files. She delivered the files to his executive assistant and immediately notified Mr. Cohen.

There is no basis to support the agency's charge that Ms. McIntosh failed to properly safeguard COR documents.

### F. The AJ's Decision to Uphold DoD's Inappropriate Conduct Charge Should Be Reversed

Ms. McIntosh's interpretation of Mr. Boswell's email relieving her of her duties was reasonable. McIntosh Br. 40-42. Indeed, the Deputy Assistant Secretary of Defense's executive assistant interpreted it in precisely the same way. Appx0171. Moreover, Mr. Cohen admitted that Ms. McIntosh informed him that she was going to send the email, yet he did nothing to stop her. Appx1025. DoD's only argument that Ms. McIntosh nonetheless did something wrong is that "[e]ven assuming that Ms. McIntosh genuinely believed that her COR duties had been removed, she should not have." DoD Br. 30. According to DoD, having a supervisor strip you of all your duties via email is not a proper mechanism for relieving you of COR duties, and Ms. McIntosh allegedly knew that. *Id*. (alleging Ms. McIntosh knew that there are only four ways to terminate COR appointments). That is not a reasonable interpretation of the law or evidence.

## II. DoD Failed to Prove by Clear and Convincing Evidence That It Would Have Removed Ms. McIntosh Absent Her Protected Activity and the AJ Erred in Finding Otherwise

As a stand-alone basis for reversal, Ms. McIntosh's opening brief establishes that the AJ failed to conduct a proper *Carr* analysis and that DoD failed to prove by clear and convincing evidence that it would have terminated Ms. McIntosh

absent her protected disclosures. McIntosh Br. 43-47. On appeal, DoD argues for the first time that it met its burden under *Carr*. Indeed, before the AJ, DoD's position was that Ms. McIntosh did not make any protected disclosures, and therefore, "the Agency has no burden to show by clear and convincing evidence that it would have taken the same personnel action in the absence of any protected activity." Appx0840. DoD stood by that positon and chose not to present any arguments in the event the AJ disagreed. *Id*. The AJ did disagree, which left DoD with no argument that it met its burden under *Carr*. DoD should not be allowed to make those arguments for the first time before this Court. *Gant v. United States*, 417 F.3d 1328, 1332 (Fed. Cir. 2005). There are no exceptional circumstances warranting departure from the general waiver rule because DoD acknowledged its burden before the AJ and made the strategic decision not to address the issue.

Despite DoD choosing not to present any argument or evidence—let alone clear and convincing evidence—on this point, the AJ somehow found that DoD met its burden. Appx0042-0044. Indeed, despite acknowledging that "the burden shifts to the agency to establish by clear and convincing evidence that it would have taken the same action in the absence of the protected disclosure," the AJ failed to cite a single argument by DoD. Appx0042. Worse, the AJ legally erred by shifting the burden on to Ms. McIntosh to "demonstrate any motivation for Mr. Cohen to retaliate against the appellant." Appx0043. The AJ's perfunctory, two-

paragraph decision is simply insufficient. McIntosh Br. 43-47. Because DoD failed to meet its high burden, the AJ's decision should be reversed.

Should the Court entertain DoD's new arguments, DoD still has not shown by clear and convincing evidence that it would have terminated Ms. McIntosh absent her protected disclosures. DoD argues that Mr. Cohen had "no discernable retaliatory motive" because "Ms. McIntosh's grievances mostly alleged improper acts by Mr. Boswell" and the allegations against Mr. Cohen "occurred when he was her co-worker." DoD Br. 49. These facts, even if true, do not support DoD's claim that Mr. Cohen had no discernable retaliatory motive. Mr. Cohen had strong incentives to retaliate because he was the subject of several grievances and was well aware of the others filed against his close colleagues. Appx0407-0409; Appx0915; Appx0999-1000. This is the same person who went out of his way to claim that Ms. McIntosh's medical documentation was administratively unacceptable without any justification and despite it being in accordance with DoD's regulations. McIntosh Br. 34. Moreover, even if a supervisor is not named in a protected disclosure they "may well be motivated to retaliate . . . as the criticism reflects on them in their capacities as managers and employees." *Miller v. DOJ*, 842 F.3d 1252, 1262 (Fed. Cir. 2016).

DoD also argues that Ms. McIntosh's evidence of her co-worker receiving different treatment should not be considered because the co-worker is not a

"similarly situated" individual. DoD Br. 51-52. DoD even claims that the co-worker's situation "is far from the situation here" because the co-worker mentioned the word "hospital." *Id.* (citing Appx0181). DoD's argument lacks merit. The co-worker sent two emails totaling no more than four incomplete sentences and was granted sick leave. In fact, the co-worker did not even request sick leave. He told his supervisor he was going to take it. Appx0181.

Ms. McIntosh similarly took leave and received approval from her supervisor. But then, DoD required her to provide medical documentation, which was deemed "not administratively acceptable" for reasons DoD has yet to explain. DoD then demanded additional, more intrusive medical documentation and gave her just 15 days to comply. Appx0198. To the extent the co-worker's situation is "far from the situation here," it is only because Mr. McIntosh was treated differently because she filed her grievances.

## III. MSPB AJs Are Not Constitutionally Appointed

Board AJs are principal officers and not properly appointed under the Appointments Clause. McIntosh Br. 47-51. Accordingly, the Court should fix the constitutional infirmity, as it did in *Arthrex*, and vacate and remand to a new AJ.

### A. This Court Should Adjudicate Ms. McIntosh's Appointments Clause Argument

DoD argues that Ms. McIntosh waived her argument by not raising it below. However, the same considerations that warranted adjudicating the Appointments

Clause challenge in *Arthrex* apply here. First, as *Arthrex* noted, the Supreme Court considers "Appointments Clause objections to officers as a challenge which could be considered on appeal even if not raised below." *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1326 (Fed. Cir. 2019). And, as in *Arthrex*, Ms. McIntosh brings her "Appointments Clause challenge . . . before the first body capable of providing [her] with the relief sought." *Id.* at 1339-40. As explained below, bringing the challenge before the non-existent Board at the MSPB would have been fruitless. Second, the same "important structural interests and separation of powers concerns protected by the Appointments Clause" are at issue here. *Id.* at 1326. Ms. McIntosh Appointments Clause challenge implicates the structural interests of the government's merit protection system and timely resolution is critical to providing certainty for government employees subjected to the MSPB adjudicatory process.

### B. The MSPB Has Been Without a Full Board for Over Five Years, and This Court Should Address the Appointments Clause Issue

The MSPB has been without a full Board for over five years, and there is no indication that a Board member—let alone three—will be appointed in the near future. *Questions About the Lack of Quorum*, www.mspb.gov/FAQs_Absence_

of_Board_Quorum_March_1_2019.pdf.[6] The Board has been without members for so long that, if confirmed by the Senate today, Julia Akins Clark's term would expire just months from now in March 2021. The White House, www.whitehouse.gov/presidential-actions/president-donald-j-trump-announces-nomination-personnel-key-administration-posts/. Yet, both DoD and MSPB as Intervenor ("Intervenor") argue that this Court should pass on this important issue to the Board. It should not.

If this Court determines that the statutory scheme with regard to Board AJs violates the Appointments Clause, then *only this court* can fix the constitutional infirmity by severing any impermissible statute. *Special Counsel v. Gallagher*, 44 M.S.P.R. 57, 73 (M.S.P.B. 1990) ("[T]he Board lacks authority to adjudicate the constitutionality of a statute."); *Arthrex*, 941 F.3d at 1325 (severing statute to remedy Appointments Clause issue). Intervenor erroneously claims that "[j]udicial economy" would be served by remanding because "a ruling by the Court that MSPB administrative judges are invalidly appointed . . . will have the same

[6] Two Board nominees have been pending since 2018. *See* The White House, www.whitehouse.gov/presidential-actions/president-donald-j-trump-announces-key-additions-administration-31/; The White House, www.whitehouse.gov/presidential-actions/president-donald-j-trump-announces-nomination-personnel-key-administration-posts/. And the third nominee has been pending since April 2019. *See* The White House, www.whitehouse.gov/presidential-actions/nomination-sent-senate/. While DoD notes that these nominees are on the Senate's Executive Calendar, DOD's citations simply underscore the inactivity surrounding them. DoD Br. 63, n.12.

practical effect as if the Court simply remanded the case without a substantive ruling." MSPB Br. 11. Intervenor ignores that only this Court could fix the constitutional infirmity as it did in *Arthrex*.

Moreover, even if the Board could provide some fix, a quorum (i.e., two or more members) is needed to authorize any change. MSPB Br. 10 ("Until the MSPB's quorum is restored, the Board cannot cure any appointment deficiencies the Court might identify."). Thus, raising the Appointments Clause challenge before the Board would have been a fruitless exercise for Ms. McIntosh. Indeed, as Intervenor admits, had Ms. McIntosh raised the issue below, her case would have just been dismissed. *Id.* at 8. And there are currently 2,700 appeals pending review by the Board that are sitting in limbo because a full Board does not exist. *Id*. at 11.

DoD cites two cases in an attempt to support its argument that this Court should not decide the Appointments Clause issue. Neither case supports punting. In the first case, *Ciena Corp. v. Oyster Optics*, this Court declined to hear the petitioner's Appointments Clause argument because the petitioner "affirmatively sought a ruling from the Board members" alleged to have been unconstitutionally appointed and only raised the challenge on appeal because the Board ruled against it. 958 F.3d 1157, 1159 (Fed. Cir. 2020). This case is nothing like *Ciena*. Here,

Ms. McIntosh had no option but to appeal her claim to the MSPB. Appx0124-0125.

The other case DoD cites, *DBC*, is similarly distinguishable. In *DBC*, this Court declined to hear an Appointments Clause challenge because the petitioner could not point to any intervening change in law and Congress had already "eliminat[ed] the issue of unconstitutional appointments going forward" by passing legislation that retroactively corrected the alleged constitutional violation. *In re DBC*, 545 F.3d 1373, 1380 (Fed. Cir. 2008). Here, this Court's intervening decision in *Arthrex* calls into serious question the constitutionality of Board AJs as principal officers,[7] and Congress has done nothing to address the issue, which could affect "all pending appeals at the MSPB." MSPB Br. 12.

DoD's assertion that Ms. McIntosh is "sandbagging" is not well taken. DoD Br. 58. Its claim that Ms. McIntosh "appeared content to have the board adjudicate her claims, until it ruled against her" is nonsensical—DoD terminated Ms. McIntosh and she had no choice but to appeal that termination through the Board. If any party has engaged in "sandbagging," it is DoD, which previously conceded

[7] DoD cites to *Golden Bridge* alleging that Ms. McIntosh fails to meet any of the "prudential considerations" when deciding whether to hear an allegedly waived argument. DoD Br. 58. But one of the considerations is "when there is a change in the jurisprudence of the reviewing court or the Supreme Court after consideration of the case by the lower court." *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1323 (Fed. Cir. 2008); *see also* MSPB Br. 13 ("The petitioner bases her argument on this Court's recent decision in *Arthrex*.").

in its motion for remand that "[it] does not contest the relief petitioner seeks—that her case should be remanded for a hearing 'by a new, duly-appointed AJ' or other officer appointed under the Appointments Clause." DE 17 ¶ 3; *see also id.* ¶ 2 (arguing that "the proper remedy" is a new hearing before a "properly appointed" AJ). Accordingly, DoD "respectfully request[ed] that the Court order a remand for further proceedings before a properly appointed officer." *Id.* ¶ 3. Ms. McIntosh opposed the remand solely because this Court first needed to fix the constitutional infirmity prior to remand. DE 18 at 1; *see also* MSPB Br. 10 (confirming that no case could be reassigned on remand because "all MSPB administrative judges are appointed in the same way. Thus, if one administrative judge's appointment is invalid if challenged under *Arthrex* or *Lucia*, all administrative judges' appointments could be deemed invalid."). The Court denied DoD's motion "without prejudice to DoD raising its request in its response brief." DE 23. Now, however, DoD's response brief says nothing about remanding to a properly appointed AJ and makes arguments inconsistent with its motion for remand. It appears DoD's motion for remand was simply an attempt to evade this Court's review and place this case into limbo with the 2,700 other cases pending before the nonexistent Board.

Intervenor suggests that the lack of a Board "is temporary, rather than structural, and when the Board is reconstituted it will be able to swiftly rule on

these issues and, if necessary, remedy them." MSPB Br. 5-6. But there is nothing to suggest that the "temporary" lack of quorum, which has lasted since January 2017, will be rectified "swiftly." *See Questions About the Lack of Quorum*, www.mspb.gov/FAQs_Absence_of_Board_Quorum_March_1_2019.pdf. Intervenor acknowledges that there are currently 2,700 appeals pending before the Board and "[n]ew appeals continue to be filed every day." MSPB Br. 12. It is entirely uncertain how a future Board, which consists of only three members, will be able to "swiftly" handle the backlog at the MSPB.

Finally, Intervenor argues that a substantive ruling by this Court "could reach far beyond just the petitioner's appeal" and could affect a large number of other cases. MSPB Br. 11. But even if that were true, it is irrelevant. The Constitution is the Constitution, and as the Supreme Court recently stated, "the magnitude of a legal wrong is no reason to perpetuate it." *McGirt v. Oklahoma*, 2020 WL 3848063, at *20 (July 9, 2020). Moreover, Intervenor overstates the potential impact of a ruling. As in *Arthrex*, if this Court remedies the constitutional infirmity, the impact could be limited to cases "where final decisions were issued and where litigants present an Appointments Clause challenge on appeal." *Arthrex*, 941 F.3d at 1340.

### C. Board AJs Are Principal Officers

In *Arthrex*, the Court cited three factors for distinguishing principal and inferior officers: "(1) whether an appointed official has the power to review and reverse the officers' decision; (2) the level of supervision and oversight an appointed official has over the officers; and (3) the appointed official's power to remove the officers." *Arthrex*, 941 F.3d at 1329. Factors 1 and 3 weigh in favor of finding that Board AJs are principal officers.

#### 1. The Board Lacks Unfettered Authority to Review AJ Decisions and the Court Should Sever the Limiting Regulation

DoD and Intervenor argue that the Board possesses unfettered authority to review AJ decisions. DoD Br. 61; MSPB Br. 19. But these claims contradict both the plain language of 5 U.S.C. § 7701(e) and the Board's interpretation of its regulations outside this litigation. Indeed, prior to Ms. McIntosh's challenge, the Board interpreted the relevant statutes and regulations to mean that the Board can only reopen decisions after they are final and, even then, only in very limited circumstances. Specifically, 5 C.F.R. § 1201.113(a) states that all decisions of AJs will become final after 35 days unless "any party files a petition for review or, if no petition for review is filed, files a request that the initial decision be vacated for the purpose of accepting a settlement agreement into the record." Prior to 2012, this same regulation contained an additional exception—"if the Board reopens the case

on its own motion." 5 C.F.R. § 1201.113 (2012). The Board *eliminated that exception* in 2012 and stated that it can only reopen final decisions—not initial decisions as DoD and Intervenor contend. The Board stated "that 'reopening' only applies to, and should be reserved for, instances in which the Board has already issued a final order or the initial decision has become the Board's final decision by operation of law."[8] 77 Fed. Reg. 62350, 62359 (Oct. 12, 2012); *see also* 77 Fed. Reg. 33663, 33668 (June 7, 2012). The Board went further and confirmed in 5 C.F.R. § 1201.118 that it will "exercise its discretion to reopen an appeal only in *unusual or extraordinary circumstances* and generally within a short period of time after the decision becomes final." 5 C.F.R. § 1201.118 (emphasis added). In adopting this regulation, the Board stated it "believes that reopening or reconsidering a final decision *must be confined to rare and limited circumstances*." 77 Fed. Reg. at 62359 (emphasis added); *see also* 77 Fed. Reg. at 33668. This interpretation extends to 5 U.S.C. § 7701(e), which similarly uses the term "reopen" to describe the Board's review power. The Board's interpretation follows the plain meaning of the statute; to "reopen" something it must first be closed, i.e., final. Thus, the Board's review authority is not "unfettered." It is, by the Board's own

[8] Intervenor's reliance on *Byars*, *Kling*, and dicta in *Azarkhish* is inapposite because these decisions do not directly interpret the meaning of "reopen" and also pre-date the Board's amendments to the regulation and interpretation of "reopen." *See* MSPB Br. 19-20.

interpretation, severely limited and confined to "unusual," "extraordinary," "rare," and "limited" circumstances. DoD and Intervenor cannot now reinterpret the relevant statutes and regulations for purposes of this litigation. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417-18 (2019).

DoD argues that the Board can "at any time" revoke the provision limiting reopening to unusual and extraordinary cases. DoD Br. 61. But DoD offers no explanation for how the Board can simply "revoke" its regulations at any time (particularly without a full Board in place). The case DoD cites addresses the authority of the Attorney General to oversee special counsel, the Department of Justice's own personnel. *Id.* (citing *In re Grand Jury Investigation*, 916 F.3d 1047, 1052 (D.C. Cir. 2019). That case has no relation to the MSPB's ability to revoke regulations impacting cases of government employees that appear before the MSPB.[9]

The Court noted in *Arthrex* that where an agency constrains its own review powers internally, it will be held to that standard in subsequent litigation. 941 F.3d at 1330. There, the government argued that the Director possessed strong review authority because he could convene a panel to rehear a case. The Court found this to be of minimal importance, however, as the PTAB's own "Standard Operating

[9] DoD also fails to explain how the MSPB can circumvent the APA's notice-and-comment requirement. *See* 5 U.S.C. § 553(b).

Procedure ma[de] clear that the Director would convene such a panel only in cases of 'exceptional importance[.]'" *Id.* The Court held the PTAB to its own words, finding the Director's review authority to be "constrained to a limited purpose." *Id.*; *see also Wagner v. US*, 365 F.3d 1358, 1361 (Fed. Cir. 2004) ("[A]n agency is bound by its own regulations."). By the same logic, DoD's argument that the MSPB's internal procedures should be ignored fails.

Intervenor argues that "[t]he plain language of section 7701(e) demonstrates that it is the Presidentially-appointed, Senate-confirmed Board members, i.e., the principal officers of the MSPB, who determine whether any administrative judge's decision can become a final decision of the MSPB." MSPB Br. 20. Intervenor fails to explain why that is, and it cannot be true since AJ decisions—such as the one terminating Ms. McIntosh—become final despite the lack of a Board for over three five years. And, as explained, the plain language of this section makes clear that the Board's authority is limited to "reopen[ing]" *final* decisions. 5 U.S.C. § 7701(e)(1).

To give Board members unfettered review authority, Ms. McIntosh proposes that the Court sever 5 C.F.R. § 1201.118. *See Arthrex*, 941 F.3d at 1325 (severing statute); *Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1310 (Fed. Cir. 2008) (noting that severability applies to regulations). For the appointment of

Board AJs to be constitutionally sound, the Board must have unfettered discretion in reviewing AJ decisions.

### 2. The Board Lacks Unfettered Removal Authority

Similarly, the Board lacks unfettered removal authority. The same Title 5 removal restrictions that the Court severed in *Arthrex* govern the Board's ability to remove AJs. McIntosh Br. 50.

DoD argues that the Board has removal power because it can revoke an AJ's case assignment and hear the matter in the first instance. DoD Br. 62. But this Court rejected that argument in *Arthrex*: "The Director's authority to assign certain APJs to certain panels is not the same as the authority to remove an APJ from judicial service without cause." 941 F.3d at 1332-33. This Court made clear that it is removal from the service that is relevant to removal authority—not removal from a particular case (or a number of cases). *See id*.

DoD also argues that the Board can remove AJs by "revoking the regulation that creates their office, and retaining them as employees who may perform non-officer functions." DoD Br. 62. However, the Director in *Arthrex* delegated similar adjudicative authority to ALJs, but the Court was unpersuaded that this constituted any sort of removal power—and with good reason. *See Arthrex*, 941 F.3d at 1332-33 ("The only *actual* removal authority the Director or Secretary have over APJs is subject to limitations by Title 5." (emphasis added)). It is a far stretch

to equate the power to remove a specific judge without cause, as in *Edmond*, with the abstract ability to revoke a delegation of power to all AJs. *See Edmond v. U.S.*, 520 U.S. 651, 664 (1997). If an agency must completely overhaul its longstanding administrative structure to remove one judge, it has no real removal power at all.

Intervenor concedes that the Board's removal power over AJs is the same as the removal power found to be insufficient in *Arthrex*. MSPB Br. 24. But it claims "a critical distinction exists" because "the MSPB's Board has unfettered review authority over administrative judge decisions." *Id.* While *Masias* noted the strength of a principal officer's review power may minimize the importance of a weaker removal power, this is not the case here. *See Masias v. Sec'y of HHS*, 634 F.3d 1283, 1294-95 (Fed. Cir. 2011). As explained above, the Board's review authority is not unfettered, which undermines Intervenor's entire argument. *Supra* at 20-23.

### D. Even Accepting DoD's and Intervenor's Arguments, There Was No Board During the Entirety of This Case, Rendering the AJ's Decision Invalid as Applied to Ms. McIntosh

DoD's and Intervenor's arguments that the statutory scheme provides the Board with sufficient review authority and sufficient removal authority over AJs are irrelevant as applied to Ms. McIntosh. Every argument DoD and Intervenor make in support of AJs being constitutionally appointed hinges on there being a quorum of the Board in place. *E.g.*, DoD Br. 61-62; MSPB Br. 16, 19. Yet,

during the *entirety* of Ms. McIntosh's case—from her termination until today and for the foreseeable future—there was no quorum. Thus, whatever review authority or removal authority the Board has over AJs is non-existent and inapplicable as applied to Ms. McIntosh. Without a Board in place, AJs do not feel the "threat of removal" or receive any "substantive input" from Presidentially-appointed and Senate-confirmed officials. *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341 (D.C. Cir. 2012). There was no Board to reprimand, fire, or oversee the AJ who decided Ms. McIntosh's case. Thus, the AJ's decision is invalid.

In response to Ms. McIntosh's argument, both DoD and Intervenor argue that AJs can constitutionally perform their duties without any Board members to provide the supervision, removal, and review functions mandated by the Appointments Clause. DoD Br. 62-63; MSPB Br. 22-23. But to adopt DoD and Intervenor's position would render the Appointments Clause meaningless. It is not sufficient that the functions required by the Appointments Clause are possible—there must also be officers executing those functions. *See Edmond*, 520 U.S. at 665 (deeming it "significant" whether an officer can independently "render a final decision on behalf of the United States").

DoD offers no support for its contention that Board AJs can function without any higher-level, Constitutionally-appointed officials. DoD Br. 62-63. And DoD

offers no basis for finding that the AJ in this case, who was not Presidentially-appointed and Senate-confirmed and who had no Presidentially-appointed and Senate-confirmed supervisor, met the requirements of the Appointments Clause.

Intervenor cites *U.S. v. Eaton*, 169 U.S. 331 (1898), to argue that the absence of a principal officer does not transform an inferior officer into a principal officer. MSPB Br. 23. But this Court need not find that the absence of a quorum *transforms* AJs into principal officers. AJs cannot adjudicate cases without the oversight of Presidentially-appointed and Senate-confirmed officials, as the Appointments Clause requires. It would frustrate the clear purpose of the review, supervision, and removal functions of the Appointments Clause to allow agencies to function for years without any properly appointed official performing those roles.

In any event, *Eaton* does not support Intervenor's argument. *Eaton* addresses the emergency circumstances of a consul in Bangkok falling ill in the pre-aviation age without a Constitutionally-appointed substitute. *Eaton*, 169 U.S. at 331-32. The temporary official, who did not issue final decisions on behalf of the U.S. government, answered to the Department of State, which provided the necessary level of oversight, and the Secretary of State provided the official with approval to temporarily serve in his role. *See Id.* at 342-43. Those circumstances are a far cry from an entire agency adjudicating the rights of thousands of Americans absent any Presidentially-appointed and Senate-confirmed officials.

Moreover, to the extent Intervenor argues *Eaton* means emergency circumstances warrant deviations from the Constitution, there is no similar emergency here. The Board members' terms were fixed and known when they were appointed, thus no one could be surprised when their terms ended. 5 U.S.C. § 1202(a) ("The term of office of each member of the [MSPB] is 7 years."). And the three years the MSPB has lacked a quorum is hardly comparable to the "limited time" at issue in *Eaton*. *Eaton*, 169 U.S. at 343.

### E. Even If AJs Are Inferior Officers, They Are Still Not Properly Appointed

In opposition to Ms. McIntosh's Appointments Clause challenge, DoD argues that Board AJs are not principal officers and are instead inferior officers. DoD Br. 60. Even if Board AJs are inferior officers, however, there would still be an Appointments Clause violation.[10] Only "the President," "courts of law," or "heads of departments" can appoint inferior officers. U.S. Const. art. II, § 2. Board AJs are not appointed by the President, a court of law, or the Board but

[10] DoD argues that Ms. McIntosh has waived the argument that Board AJs are inferior officers. DoD Br. 59. But DoD specifically argued in its opposition that Board AJs are inferior offices, not principal officers. *Id.* at 60 ("[W]e disagree that the administrative judges are principal officers, but instead would be inferior officers."); *id*. at 62 ("Accordingly, administrative judges are inferior officers."). Ms. McIntosh is entitled to respond to this argument and explain why she should still prevail even if DoD is correct. *E.g., McCray v. Fid. Nat. Title* , 682 F.3d 229, 241 (3d Cir. 2012) ("[I]t is well settled that 'where an appellee raises a[n] argument not addressed by the appellant in its opening brief, the appellant may reply.'"); *US v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992).

rather by employees of the MSPB. *Helman v. Dep't of Veterans Affairs*, 856 F.3d 920, 928 n.3 (Fed. Cir. 2017); MSPB Br. 16 n.7 ("[T]he authority over administrative judge employment conditions has been delegated from the Chairman to various members of MSPB's management chain."). Because Board AJs are not appointed by the President, a court of law, or the Board but rather by employees of the MSPB, DoD's argument that Board AJs are inferior officers still results in an Appointments Clause violation, and the AJ's decision below must still be vacated.[11]

## CONCLUSION

For the foregoing reasons, Ms. McIntosh respectfully requests the aforementioned relief.

[11] A Board AJ has ruled that AJs are inferior officers not properly appointed under the Appointments Clause and has certified the ruling to the Board for interlocutory appeal. DE 22-2 (Order, *Flynn v. SEC*, DC-1121-14-1124-M-4 (M.S.P.B. Apr. 23, 2019)). That was over a year ago, and for reasons explained, it is unlikely a full Board will be in place to review the decision any time soon. Moreover, it is uncertain the Board even has jurisdiction to address the issue, in which case, it would come before this Court. *See supra* at 16. As explained above, the Court should address the Appointments Clause issue.

Dated: July 27, 2020

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

*/s/ Philip T. Sheng*

Philip T. Sheng
1600 El Camino Real
Menlo Park, California 94025
Tel.: (650) 752-2000
philip.sheng@davispolk.com

– and –

Corey M. Meyer
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
corey.meyer@davispolk.com

*Counsel for Petitioner*

**CERTIFICATE OF SERVICE**

I certify that on July 27, 2020, the foregoing Reply Brief for Petitioner was filed electronically using the CM/ECF system and served upon registered counsel by operation of the Court's CM/ECF system.

Dated: July 27, 2020

DAVIS POLK & WARDWELL LLP

By: */s/ Philip T. Sheng*
Philip T. Sheng

1600 El Camino Real
Menlo Park, California 94025
Tel.: (650) 752-2000
philip.sheng@davispolk.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1), because it contains 6,973 words (calculated by Microsoft Word 2016).

2. The brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it was prepared using Microsoft Word 2016 in Times New Roman 14-point font.

Dated: July 27, 2020

DAVIS POLK & WARDWELL LLP

By: */s/ Philip T. Sheng*
Philip T. Sheng

1600 El Camino Real
Menlo Park, California 94025
Tel.: (650) 752-2000
philip.sheng@davispolk.com