NO. 19-2454

# SUPPLEMENTAL BRIEF FOR INTERVENOR MERIT SYSTEMS PROTECTION BOARD

---

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

ELFINA MCINTOSH,
Petitioner,

v.

DEPARTMENT OF DEFENSE,
Respondent,

and

MERIT SYSTEMS PROTECTION BOARD,
Intervenor.

---

PETITION FOR REVIEW OF A DECISION OF THE
MERIT SYSTEMS PROTECTION BOARD IN NO. DC-0752-17-0803-I-4

---

Respectfully submitted,

TRISTAN L. LEAVITT
General Counsel

KATHERINE M. SMITH
Deputy General Counsel

STEPHEN FUNG
Attorney
Office of the General Counsel
Merit Systems Protection Board
1615 M Street, NW
Washington, DC 20419-0002
(202) 254-4483

DATE: October 22, 2021

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. This Court Should Remand This Matter to Allow the Board to First Address the Officer Question .......... 2

II. The Supreme Court's *Arthrex* Decision Supports a Finding that MSPB Administrative Judges are Not Principal Officers .......... 4

A. The Board Members are the MSPB's Only Principal Officers .......... 4

B. The Board's Lack of Quorum Does Not Make Administrative Judges Principal Officers .......... 7

1. The Board's Temporary Status Does Not Change the Administrative Judges' Status .......... 7

2. The Board's Temporary Status Does Not Affect its Ability to Continue Operations .......... 9

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Cases**

*Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019) .......... 1, 5
*Azarkhish v. Office of Pers. Mgmt.*, 915 F.2d 675, 679 (Fed. Cir. 1990) .......... 6
*Byars v. Dep't of the Army*, 9 M.S.P.R. 225, 225-26, 228-29 (1981) .......... 6
*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984) .......... 12
*Frankl v. HTH Corp.*, 650 F.3d 1334, 1354 (9th Cir. 2011) .......... 13
*Kling v. Dep't of Justice*, 2 M.S.P.R. 464, 468 (1980) .......... 6
*Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1193–94 (10th Cir. 2014) .......... 13
*Kreisberg v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 140 (2nd Cir. 2013) .......... 13
*Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB*, 564 F.3d 469, 475 (D.C. Cir. 2009) .......... 12
*Lucia v. Sec. Exchg. Comm.*, 138 S.Ct. 2044, 2055-56 (2018) .......... 2
*New Process Steel, L.P. v. National Labor Relations Board*, 560 U.S. 674, 687 (2010) .......... 11, 12
*Osthus v. Whitesell Corp.*, 639 F.3d 841, 844 (8th Cir. 2011) .......... 13
*Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 853–54 (5th Cir. 2010) .......... 13
*R.R. Yardmasters of Am. v. Harris*, 721 F.2d 1332, 1344 n.31 (D.C. Cir. 1983) .......... 10

*Rodriguez v. Dep't of Veterans Affairs*, 8 F.4th 1290, 1309 (Fed. Cir. 2021) .......... 8

*SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2020) .......... 10

*U.S. v. Eaton*, 169 U.S. 331, 343 (1898) .......... 8

*UC Health v. National Labor Relations Board*, 803 F.3d 669 (D.C. Cir. 2015) .......... 12, 13

*United States v. Arthrex, Inc., et al.*, 141 S. Ct. 1970 (2021) .......... 1, 5

**Statutes**

5 U.S.C. § 1203 .......... 8

5 U.S.C. § 7701(b)(1) .......... 10

5 U.S.C. § 7701(e)(1) .......... 6

5 U.S.C. § 7701(e)(1)(A) .......... 6, 9

5 U.S.C. § 7701(e)(1)(B) .......... 6

**Other Authorities**

*Flynn v. Sec. and Exchange Comm'n*, MSPB Docket No. DC-1221-14-1124-M-4, Order and Certification for Interlocutory Appeal (MSPB, Apr. 23, 2019) .......... 4

MSPB Organization Functions and Delegations of Authority, at 19-20, available at https://tinyurl.com/yax7k7ux (last accessed October 21, 2021) .......... 10

**Regulations**

5 C.F.R. § 1201.118 .......... 6

## INTRODUCTION

Pursuant to this Court's July 22, 2021 order, the Merit Systems Protection Board ("MSPB" or "intervenor") hereby submits this supplemental brief addressing the applicability of the Supreme Court's decision in *United States v. Arthrex, Inc., et al.*, 141 S. Ct. 1970 (2021), to the MSPB's administrative judges. Petitioner urges this Court to find now that MSPB administrative judges qualify as officers, either principal or inferior, of the United States under the Constitution's Appointments Clause. For the reasons stated in intervenor's principal brief ("IPB") and as further explained below, intervenor again requests this Court remand this matter to allow the Board to address that question first. However, in the event this Court decides to address the principal officer question, for the reasons stated in intervenor's principal brief, MSPB administrative judges do not qualify as principal officers of the United States based on this Court's prior decision in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019), vacated by *United States v. Arthrex, Inc., et al.*, 141 S. Ct. 1970 (2021), and for the reasons stated below, the Supreme Court's *Arthrex* decision further supports this conclusion.

## ARGUMENT

### I. This Court Should Remand This Matter to Allow the Board to First Address the Inferior Officer Question

At the outset, for the reasons previously stated in intervenor's principal brief, intervenor repeats its request that this Court remand this matter to the Board so that the Board may first consider the question of whether MSPB administrative judges qualify as officers, either principal or inferior, under the Constitution. Petitioner requests in her supplemental brief that this Court rule on the question now, rather than remanding it to the Board first, suggesting that remanding this matter to the Board first "would only perpetuate the growing number of cases pending before it that cannot proceed unless and until an Article III court rules." Petitioner's Supplemental Brief ("PSB") at 7. The opposite is true.

As noted by petitioner in her supplemental brief, this Court lacks the authority to meaningfully remedy an Appointments Clause deficiency for the MSPB's administrative judges. PSB, at 7. A ruling from this Court that MSPB administrative judges are constitutional officers would instead require a remedy from the Board, either in the form of reduced authority if the administrative judges are found to be principal officers, or in the form of new, or ratified, appointments if the administrative judges are found to be inferior officers. *See Lucia v. Sec. Exchg. Comm.*, 138 S.Ct. 2044, 2055-56 (2018)

(the remedy for an Appointments Clause violation is reassignment to a new, properly appointed inferior officer). But until the Board's quorum is restored, the Board cannot provide any such remedy, as either approach would require action by the newly appointed Board. As such, all appeals in which an Appointments Clause violation is found to exist, including petitioner's appeal, along with potentially every other pending appeal at the MSPB to the extent an Appointments Clause claim was raised, would be forced to wait for adjudication until the quorum is restored and the appointments deficiencies are remedied.

At the time of filing of intervenor's principal brief, the MSPB had approximately 4,200 appeals pending between its regional offices and the Board, and less than 200 of those appeals included a challenge to the appointment of the administrative judge. IPB at 11-12. The total number has grown to approximately 4,600 appeals, but the number of appeals including an Appointments Clause challenge is still just little more than 200. Requiring the nearly 4,400 appeals that do not include an Appointments Clause challenge to wait for the resolution of an issue they did not raise would be tremendously unfair for those appeals. An adverse ruling by this Court on the officer issue would not provide any immediate relief to petitioner, as it could not be remedied until the new Board is confirmed. Yet it could harm

thousands of other appellants who did not raise the issue and who wish to have their appeals adjudicated by MSPB administrative judges regardless of whether the administrative judges were constitutionally appointed. In short, petitioner's requested relief would get her nothing, and only hurt others. Consequently, intervenor renews its request that this Court remand the matter for the Board to adjudicate the officer issue in the first instance and provide any applicable relief.

## II. The Supreme Court's *Arthrex* Decision Supports a Finding that MSPB Administrative Judges are Not Principal Officers

### A. The Board Members are the MSPB's Only Principal Officers

In the event this Court chooses to address the question of whether MSPB administrative judges qualify as officers, intervenor submits that the Supreme Court's reasoning in *Arthrex* unequivocally establishes that MSPB administrative judges are not principal officers of the United States.[1] In *Arthrex*, the Supreme Court vacated the three-pronged test articulated by this Court in the decision on review and replaced it with a single criterion –

---

[1] As stated in intervenor's principal brief, because the question of whether MSPB administrative judges qualify as inferior officers is pending before the Board on interlocutory review in a separate appeal, intervenor currently takes no position on that question at this time. *Flynn v. Sec. and Exchange Comm'n*, MSPB Docket No. DC-1221-14-1124-M-4, Order and Certification for Interlocutory Appeal (MSPB, Apr. 23, 2019).

whether the decisions of USPTO administrative patent judges (APJs) could be reviewed by a superior within USPTO who was accountable for the decisions.[2] *Arthrex,* 141 S.Ct. at 1979-86. The Supreme Court found they could not; the USPTO's statutory structure prevented the USPTO Director from having any straightforward or meaningful ability to review, alter, or change decisions of the Patent Trial and Appeal Board (PTAB), USPTO's decision-making body, which is primarily composed of APJs. *Id.* The absence of such power for the Director meant that the APJs were the officials with final say on matters before them, which led the Supreme Court to conclude that the APJs wielded powers of principal, rather than inferior, officers. *Id.*

The MSPB does not suffer from the same problem. As explained in intervenor's principal brief, the MSPB's statutory structure grants the Board

[2] Petitioner suggests in her brief that USPTO APJs' removal protections served as one of two primary factors for the Supreme Court when reaching its decision. Petitioner's Supplemental Brief ("PSB") at 1-2. This argument incorrectly reformulates the Supreme Court's decision. While the Supreme Court noted the USPTO Director's lack of unfettered removal authority, it did so as part of a broader analysis regarding whether the USPTO Director had sufficient control over PTAB decisions (rather than control over the APJs themselves). *Arthrex*, 141 S.Ct. at 1982. Indeed, the Supreme Court had the opportunity to adopt this Court's usage of unlimited removal authority as a primary factor in a principal officer analysis, but declined to do so. *Id.* at 1985-86; *see also Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d at 1332-34.

unfettered discretion to review and change any decision of an administrative judge. IPB, at 13-22. First and foremost, all initial decisions issued by an administrative judge can be appealed to the Board through an administrative petition for review; the filing of such a petition will deprive that initial decision of finality, and the Board's decision in the petition operates as the final decision of the MSPB. 5 U.S.C. § 7701(e)(1)(A). Moreover, the Board as a body also has the statutory authority to reopen and reconsider any decision from an administrative judge on its own motion; this action will prevent the decision from becoming a final MSPB decision, even if sufficient time has elapsed (35 days) that the decision would ordinarily have become a final MSPB decision. 5 U.S.C. § 7701(e)(1)(B); 5 C.F.R. § 1201.118; *see also Azarkhish v. Office of Pers. Mgmt.*, 915 F.2d 675, 679 (Fed. Cir. 1990) (Congress explicitly granted the full Board authority to reopen any initial decision upon its own motion). Further, the individual Board members also may direct that the Board review an administrative judge's decision, and such an action will equally divest an administrative judge's initial decision of finality. 5 U.S.C. § 7701(e)(1); *see also Byars v. Dep't of the Army*, 9 M.S.P.R. 225, 225-26, 228-29 (1981) (a single Board member reopened an appeal *sua sponte* under section 7701(e) to address whether there was a nexus between the appellant's misconduct and the efficiency of the service); *Kling*

*v. Dep't of Justice*, 2 M.S.P.R. 464, 468 (1980) (recognizing that the authorization of section 7701(e) for the Board to reopen cases on its own motion, without the necessity of a petition for review by any party or the Director of the Office of Personnel Management, demonstrates a congressional intent to vest ultimate responsibility for all Board adjudicative functions in the Board itself). In effect, an administrative judge's decision can only become a final decision of the MSPB if the Board permits it to do so. Thus, unlike the USPTO Director, it is the presidentially-appointed, Senate-confirmed Board members – i.e., the principal officers of the MSPB – who ultimately wield authority regarding the finality of any administrative judge's decision. Consequently, in contrast to the USPTO, the MSPB's statutory scheme provides the Board with sufficiently strong review powers that the administrative judge's authority cannot be deemed unreviewable, and as such, the Supreme Court's *Arthrex* holding does not render MSPB's administrative judges principal officers under the Constitution.

### B. The Board's Lack of Quorum Does Not Make Administrative Judges Principal Officers

#### 1. The Board's Temporary Status Does Not Change the Administrative Judges' Status

Perhaps in implicit acknowledgment of the plenary authority of the Board, petitioner's supplemental brief focuses not on the MSPB's statutory

review structure – which, as explained above, does not render MSPB's AJs principal officers under *Arthrex* – but instead on the Board's temporary inquorate status. PSB, at 2-3. Per petitioner, the current lack of Board members converts the administrative judges into principal officers. But this argument was already rejected by this Court in *Rodriguez v. Dep't of Veterans Affairs*, 8 F.4th 1290, 1309 (Fed. Cir. 2021). This Court held in *Rodriguez* that the absence of a quorum of the Board *did not* convert the MSPB administrative judges into principal officers, explaining that the Board's loss of quorum was a "temporary circumstance, not a structural defect resulting from statutory limitations on Board review of administrative judges' initial decisions." *Rodriguez*, 8 F.4th at 1309; *cf. U.S. v. Eaton*, 169 U.S. 331, 343 (1898) ("Because the subordinate officer is charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, he is not thereby transformed into the superior and permanent official. To so hold would render void any and every delegation of power to an inferior to perform under any circumstances or exigency the duties of a superior officer, and the discharge of administrative duties would be seriously hindered.").

As this Court explained, the Board's loss of a quorum is only temporary. Ultimately, when the President's nominees have been confirmed by the

Senate, *see* 5 U.S.C. § 1203, the Board will be reconstituted and will have authority to review petitioner's appeal, along with every other pending petition for review.[3] Moreover, even without sitting Board members to *sua sponte* invoke the Board's review powers, the statutory scheme permitting the parties to seek review continues to function. Parties who disagree with an MSPB administrative judge's decision may file for administrative review, thus preventing the administrative judge's decision from becoming final until the new Board reviews it. 5 U.S.C. § 7701(e)(1)(A). The delay from the Board's lack of quorum is unfortunate, but it does not nullify the Board's statutory review powers, and thus does not elevate the MSPB's administrative judges to principal officer status.

**2. The Board's Temporary Status Does Not Affect its Ability to Continue Limited Operations**

Petitioner also adds a new argument to her supplemental brief, arguing now that the MSPB's administrative judges lost all authority to render decisions once the Board lost its quorum in January 2017. PSB at 2. Because petitioner did not raise this argument in her initial brief, however, it should be considered waived. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d

[3] As of the date of this filing, three individuals have been nominated to the Board and are awaiting confirmation by the Senate.

1312, 1319 (Fed. Cir. 2020). Nevertheless, even if this Court does consider this new argument, it should reject it for lack of merit.

The MSPB's administrative judges continue to adjudicate cases based on a longstanding delegation of authority issued well before the MSPB's loss of quorum. MSPB Organization Functions and Delegations of Authority, at 19-20, available at https://tinyurl.com/yax7k7ux (last accessed October 15, 2021). The Board's operating statute grants it express authority to make such delegations to the administrative judges. 5 U.S.C. § 7701(b)(1). Petitioner's entire argument that these delegations ceased upon the loss of quorum is based on dicta in a nearly 40-year-old opinion from the Court of Appeals for the D.C. Circuit. *R.R. Yardmasters of Am. v. Harris*, 721 F.2d 1332, 1344 n.31 (D.C. Cir. 1983). But that issue was not before the D.C. Circuit in that decision, and its statement that the National Mediation Board, as well as its delegated authority, would cease to exist, was nothing more than conjecture by the court. *Id.* Since the *Yardmasters* decision, there has been a wealth of authority addressing the continuity of delegations in a Federal agency led by a multi-member board when that multi-member board loses its quorum, all of which was entirely disregarded by petitioner in making her argument.

The question of what happens to the operations of a Federal agency led by a multi-member board when the board loses its quorum was most

prominently answered by the Supreme Court in *New Process Steel, L.P. v. National Labor Relations Board*, 560 U.S. 674, 687 (2010). In *New Process Steel*, the National Labor Relations Board's ("NLRB") enabling statute had a quorum requirement which required the NLRB to have at least three members seated in order to act. *New Process Steel*, 560 U.S. at 679. The statute did allow, however, the NLRB to delegate any or all of its powers to a subgroup of its members, as long as that subgroup contained at least three members, and further allowed just two members of that subgroup to operate as a quorum of the subgroup. *Id*. The Supreme Court was presented with the question of whether a two-member quorum of a three-member subgroup can exercise the full powers of the NLRB when that three-member subgroup was previously delegated the full powers of the NLRB under a valid delegation, but then lost one of its three members due to the expiration of a term. *Id*. at 676-78. The Supreme Court held that the two-member quorum could not continue to exercise the powers of the NLRB, despite the prior delegation, because it would contradict the statutory requirement that the NLRB have three members "at all times" to meet its quorum requirement. *Id*. at 687-88. Moreover, although the lower court decision in *New Process Steel* had held that all delegations of authority from the NLRB must terminate upon the loss of a quorum, *Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB*, 564 F.3d

469, 475 (D.C. Cir. 2009), the Supreme Court expressly declined to adopt this rule, stating that its decision did not "cast doubt on the prior delegations of authority to nongroup members, such as the regional directors or the general counsel." *New Process Steel*, 560 U.S. at 684 n.4. Thus, while the issue of continuity of delegations was not directly presented to the Supreme Court, the Supreme Court had the opportunity to declare all delegations of the NLRB to lower officials terminated after the NLRB lost its quorum, and expressly declined to do so. *Id*.

Since the issuance of *New Process Steel*, multiple circuit courts have considered the ongoing validity of delegations from a multi-member board after that board loses its quorum, and each court answered that question to the opposite of petitioner's argument. The Second, Fifth, Eighth, Ninth, Tenth, and D.C. Circuits (the last court having originally issued the *Yardmasters* decision petitioner relies upon) have all reviewed the issue, and each, relying on the *New Process Steel* decision, concluded that delegations of a multimember board's authority to subordinate authorities in the agency can continue after that board loses its quorum.[4] *See Kobach v. U.S. Election*

[4] The D.C. Circuit decision, *UC Health v. National Labor Relations Board*, 803 F.3d 669 (D.C. Cir. 2015), also relied on deference to the NLRB pursuant to *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984), to reach its holding. *UC Health*, 803 F.3d at 673-81.

*Assistance Comm'n*, 772 F.3d 1183, 1193–94 (10th Cir. 2014); *see also UC Health v. National Labor Relations Board*, 803 F.3d 669 (D.C. Cir. 2015); *Kreisberg v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 140 (2nd Cir. 2013); *Osthus v. Whitesell Corp.*, 639 F.3d 841, 844 (8th Cir. 2011); *Frankl v. HTH Corp.*, 650 F.3d 1334, 1354 (9th Cir. 2011); *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 853–54 (5th Cir. 2010). Indeed, the Tenth Circuit actually considered in *Kobach* the same scenario the Board currently faces – a complete loss of all of the members of the Election Assistance Commission ("EAC"). *Kobach*, 772 F.3d at 1193-94. There, the Tenth Circuit not only held that the prior delegations of the EAC could continue after the loss of all of the EAC's members, but also rejected the idea that the loss of all members meant that the EAC must cease to operate, stating that "it would be impractical to simply shutter the EAC while it lacks a quorum." *Id*. at 1194.

Accordingly, contrary to petitioner's suggestion, the Board's loss of quorum did not invalidate the administrative judge's authority to render a decision in petitioner's case. The Board's inquorate status is only temporary, and does not present the type of structural concern that creates a constitutional violation. Moreover, the Supreme Court, along with numerous circuit courts, have all authorized the continued execution of authority delegated from a multi-member board after that board loses its quorum, meaning that this Court

should equally find that the administrative judge was properly operating under authority delegated by a quorum of the Board.

## CONCLUSION

For the reasons set forth above, intervenor respectfully requests that the Court remand this matter to allow the Board to consider both parties' Appointments Clause positions in the first instance. In the alternative, if the Court reaches the *Arthrex* argument on the merits, intervenor requests that the Court reject the petitioner's contention that MSPB administrative judges are principal officers.

Respectfully submitted,

TRISTAN L. LEAVITT
General Counsel

KATHERINE M. SMITH
Deputy General Counsel

/s/ Stephen W. Fung
STEPHEN W. FUNG
Attorney
Office of the General Counsel
Merit Systems Protection Board
1615 M Street, NW
Washington, DC 20419-0002
(202) 254-4483

DATE: October 22, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on this date, service of INTERVENOR'S SUPPLEMENTAL BRIEF was made upon all parties via CM/ECF.

DATE: October 22, 2021

/s/ Naomi D. Williams
Naomi D. Williams
Paralegal

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g)(1) of the Federal Rules of Appellate Procedure, I hereby certify that the text of the electronic version of the foregoing brief is identical to the paper copies, has been scanned by Symantec Endpoint Version 12.1 and found to be virus-free, and that the textual portion of the brief, exclusive of the tables of contents and authorities, certificates of service and compliance, and statement of related cases, but including headings, footnotes, and quotations, contains 3,089 words as determined by the word counting feature of Microsoft Word 2019, and therefore complies with Rule 32(a)(7)(B).

/s/ Stephen W. Fung
STEPHEN W. FUNG