**Appeal No. 19-2454**

# In the United States Court of Appeals for the Federal Circuit

ELFINA MCINTOSH,
*Petitioner,*

*v.*

DEPARTMENT OF DEFENSE,
*Respondent,*

and

MERIT SYSTEMS PROTECTION BOARD,
*Intervenor.*

**On Appeal from the Merit Systems Protection Board**
**No. DC-0752-17-0803-I-4**

## SUPPLEMENTAL BRIEF OF RESPONDENT DEPARTMENT OF DEFENSE

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARTIN F. HOCKEY, JR.
Acting Director

ALLISON KIDD-MILLER
Assistant Director

GALINA I. FOMENKOVA
Trial Attorney
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495

*Attorneys for the Department of Defense*

TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

SUPREME COURT'S *ARTHREX* DECISION .......... 2

ARGUMENT .......... 4

I. The Supreme Court's *Arthrex* Decision Confirms That MSPB Administrative Judges Are Not Principal Officers .......... 5

II. The Supreme Court's *Arthrex* Decision Confirms That Ms. McIntosh Waived Her Appointments Clause Challenge .......... 11

III. Whether MSPB Administrative Judges Are Properly-Appointed Inferior Officers—If Not Waived—Is A Question Better Left For The Board .......... 14

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
941 F.3d 1320 (Fed. Cir. 2019) .......... 2

*Ciena Corp. v. Oyster Optics, LLC*,
958 F.3d 1157 (Fed. Cir. 2020) .......... 11

*In re DBC*,
545 F.3d 1373 (Fed. Cir. 2008) .......... 11, 12, 14

*Helman v. Dep't of Veterans Affairs*,
856 F.3d 920 (Fed. Cir. 2017) .......... 8, 16

*New Process Steel, L.P. v. NLRB*,
560 U.S. 674 (2010) .......... 11

*Rodriguez v. VA*,
8 F.4th 1290 (Fed. Cir. 2021) .......... 10-11

*R.R. Yardmasters of Am. v. Harris*,
721 F.2d 1332 (D.C. Cir. 1983) .......... 11

*United States v. Arthrex, Inc.*,
141 S. Ct. 1970 (2021) .......... 1-4, 6, 7, 10

## STATUTES AND REGULATIONS

5 U.S.C. § 1201 .......... 8

5 U.S.C. § 1204 .......... 15

5 U.S.C. § 7701 .......... 8-10, 15

35 U.S.C. § 6 .......... 3

5 C.F.R. § 1201.113 .......... 9

5 C.F.R. § 1201.115 .......... 9

Pursuant to the Court's July 22, 2021 Order, ECF 60, respondent, the Department of Defense (DOD), submits this supplemental response brief regarding the Supreme Court's ruling in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021). The *Arthrex* decision confirms that the statutory framework governing the Merit Systems Protection Board (MSPB or board) is constitutionally valid because it grants officers properly appointed as principal officers under the Appointments Clause—*i.e.*, the three board members—the discretion and authority to issue final decisions binding on the Executive Branch in any case. The Supreme Court's *Arthrex* decision further confirms that the administrative judges at the MSPB are not—and do not need to be—principal officers.

Consequently, there is no need for this Court—or any court—to sever or otherwise modify any congressional statute to bring it in line with the confines of the Appointments Clause. Thus, the Supreme Court's *Arthrex* decision extinguishes Ms. McIntosh's excuse for failing to raise her Appointments Clause challenge below because the board would be fully equipped and capable of addressing any regulation or internal procedure that Ms. McIntosh could claim was problematic. And even if Ms. McIntosh has not waived her argument, *Arthrex* vitiates it on appeal.

SUPREME COURT'S *ARTHREX* DECISION

In *Arthrex*, this Court initially held that the statute underlying the Patent Trial and Appeal Board (PTAB) violates the Appointments Clause of the Constitution because it made the administrative patent judges principal officers, while allowing for their appointment without Presidential or Senate involvement. To remedy this constitutional problem, the Court severed the portion of the Patent Act that restricted the removal of administrative patent judges, thereby converting them into inferior officers, and remanded for a new hearing by a new panel. *See generally Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019). The Supreme Court then granted *certiorari* to "consider whether the PTAB's structure is consistent with the Appointments Clause" and vacated this Court's decision. *Arthrex*, 141 S. Ct. at 1978.

Unlike this Court, the Supreme Court did not hold that administrative patent judges were principal officers; nor did it specifically hold that they were originally inferior officers who had exceeded the permissible scope of their authority. Rather, the Court majority explained that this distinction did not matter; what mattered was that "APJs ha[d] the power to render a final decision on behalf of the United States without … review by their nominal superior or any other principal officer in the Executive Branch." *Id*. at 1981 (citation and quotation omitted). And because the Director of the Patent and Trademark Office (PTO), a principal

officer, was statutorily barred from rehearing the decisions of the administrative patent judges, he was unconstitutionally relieved "of responsibility for the final decisions rendered by APJs purportedly under his charge." *Id.*

In other words, the issue was not with the administrative patent judges themselves, but that both the Secretary of Commerce and the PTO Director—the two positions related to the Patent Act that do require Presidential nomination and Senate confirmation as principal officers—lacked statutory authority to independently review PTAB decisions. The Director could only sit as one member of a three-judge panel, the Secretary was not involved in the merits decisions at all, and reconsideration could only be performed by the PTAB itself.

Thus, to remedy this constitutional violation, the Court did not change anything in the statutory structure regarding the administrative patent judges—they continued to be appointed the same way, performed the same functions, and retained the same employment protections. Rather, the Court severed the portion of the statute specifying that "only the [PTAB] may grant rehearings," to allow the "Director [to] review final PTAB decisions and, upon review, [] issue decisions himself on behalf of the Board." *Id.* at 1986-87 (plurality) (first alteration in original); *see id.* at 1988 (Breyer, J., joined by Sotomayor, J. and Kagan, J., concurring in part in the judgment and conditionally agreeing with the remedy); *see also* 35 U.S.C. § 6(c).

"To be clear," the Court emphasized, "the Director need not review every decision of the PTAB" for the *inter partes* review process to be constitutionally sound. *Arthrex*, 141 S. Ct. at 1988. "What matters is that the Director have the *discretion* to review decisions rendered by APJs." *Id*. (emphasis added); *see id*. (Breyer, J., joined by Sotomayor, J. and Kagan, J., conditionally agreeing with the remedy).

## ARGUMENT

Ms. McIntosh made a strategic decision in this case—to challenge the status of MSPB administrative judges specifically and only as principal officers—and that strategic decision dictated her subsequent actions: that was the sole Appointments Clause argument she raised in her opening brief, *see* Op. Br. 47-51; and that was the basis for her justification for failing to raise the issue below, because only the Court could revise the MSPB statute if the administrative judges otherwise would be principal officers, *see* Repl. Br. 14-16. But that strategic decision has consequences: Ms. McIntosh tied the fate of her Appointments Clause challenge to the status of MSPB administrative judges as principal officers. Now her case must fall because the Supreme Court's *Arthrex* decision left no doubt that the MSPB statutory structure is constitutionally valid and MSPB administrative judges are not—and have no need to be—principal officers.

Finally, even if this Court wanted to credit her belated, and at best half-hearted, gestures toward an argument that administrative judges are not validly appointed as *inferior* officers, Ms. McIntosh plainly could have, and therefore should have, raised that issue directly at the board. The board is fully capable of resolving that question internally. Indeed, the best relief she can hope for at this point is a remand, putting her further back into the identical queue she would have been in anyway, to await the confirmation of a board, which can then appoint administrative judges or otherwise address their status.

Thus, to the extent the Court allows Ms. McIntosh to raise a new argument regarding the appointment of administrative judges as inferior officers, the Court should remand the case back to the board to address that question in the first instance. Whether administrative judges are properly appointed inferior officers is an issue already before the board in an interlocutory appeal, and we agree with the MSPB that the board would be in a better position to decide it (and, if necessary, fashion a remedy) in the first instance. As such, this Court should not preemptively interfere with that prospective decision.

## I. The Supreme Court's *Arthrex* Decision Confirms That MSPB Administrative Judges Are Not Principal Officers

Ms. McIntosh argues that "*Arthrex* held that [administrative patent judges] are improperly appointed principal officers because of two key factors: insulation from executive review and for-cause removal protection," and that she "relies on

these very same factors to establish that [MSPB administrative judges] are not properly appointed principal officers." Supp. Br. 1-2. Her argument fails at its inception. The Supreme Court did not so hold. The Supreme Court's actual holding does, however, confirm that the "very same" features introduced by the Supreme Court to make the PTAB constitutionally sound are already present in the MSPB statute.

The Supreme Court did *not* hold that administrative patent judges "are improperly appointed principal officers." The Supreme Court majority refused to pick a side in the principal-vs.-inferior-officer debate under the original terms of the Patent Act, though there can be no doubt that it left the administrative patent judges as *inferior* officers under the terms of the revised statute. *Arthrex*, 141 S. Ct. at 1987 ("If the Director were to have the 'authority to take control' of a PTAB proceeding, APJs would properly function as inferior officers.") (citation omitted). Nor did the Supreme Court touch the administrative patent judges' removal protections.

Rather, the Supreme Court focused on whether the statute gives someone who is not a properly appointed principal officer absolute authority to issue final decisions that bind the Executive Branch. As the Court explained, "the [] constitutional violation" is that "[o]nly an officer properly appointed to a principal

office may issue a final decision binding the Executive Branch in the proceeding before us." *Id*. at 1985.

In the case of the PTAB, the Court found that the Patent Act did grant such absolute authority. "APJs have the power to render a final decision on behalf of the United States without any [] review by their nominal superior or any other principal officer in the Executive Branch." *Id*. at 1981 (quotation and citation omitted). Neither the PTO Director nor the Secretary of Commerce—the two positions that require Presidential nomination and Senate approval in the PTAB world—had any direct oversight authority over any decision issued by the PTAB. Thus, final decisions in all cases would necessarily be rendered by someone other than a principal officer.

The Supreme Court remedied that constitutional violation by giving a principal officer—the Director—the discretion to exercise supervisory authority over PTAB decisions. Notably, under the *remedied*—*i.e.*, constitutionally approved—statutory structure, no party is guaranteed review by a principal officer; what they gained from the Supreme Court is the *possibility* of review by a principal officer. "To be clear," the Court emphasized, "the Director need not review every decision of the PTAB. What matters is that the Director have the discretion to review decisions rendered by APJs." *Id*. at 1988.

The plain upshot of the Supreme Court's decision is that initial adjudications can be performed by non-principal officers even if those decisions, as a practical matter, ultimately stand as final, so long as the statute grants a principal officer the discretion and the authority to review and to alter that decision. The MSPB statute already matches that framework.

As this Court previously recognized:

> Under the conventional Title 5 MSPB appeal process, the Board typically refers its cases to an administrative judge, *but once the administrative judge makes an initial decision, the Board may review the decision and render its own final decision*. Through this framework, *Title 5 permissibly vests in the members of the Board—appointed by the President and confirmed by the Senate—the authority to render a final decision* overturning another officer's decision.

*Helman v. Dep't of Veterans Affairs*, 856 F.3d 920, 929 (Fed. Cir. 2017) (emphasis added) (citing 5 U.S.C. §§ 1201, 7701(b)(1) & (e)(1)). That is, the MSPB *already* has a statutory framework that operates *exactly* the way the Supreme Court *remedied* the constitutional violation in *Arthrex*.

Ms. McIntosh does not dispute that MSPB board members are properly appointed principal officers under the statute. Instead, she argues that the review authority vested in these principal officers is insufficient because (1) the regulations limit *reopening* a *final* decision by the board to "unusual or extraordinary circumstances," Repl. Br. 20-24; and (2) as a practical matter, there

is no current board, Repl. Br. 25-28, Supp. Br. 2-3. The Supreme Court's *Arthrex* decision confirms that both arguments are unavailing.

First, any limitation on the board's ability to *reopen* a *final* decision—even assuming a requirement of "unusual or extraordinary circumstances" would otherwise be too restrictive—is beside the point. Any party can *prevent* an administrative judge's initial decision from *becoming* final by seeking board review, and the board has the discretion to review any decision upon a petition filed by any party. 5 U.S.C. § 7701(e)(1)(A); 5 C.F.R. §§ 1201.113(a), 1201.115; *see also* Appx50-51 (Ms. McIntosh's decision expressly informing her that "[t]his initial decision will become final on July 29, 2019, *unless* a petition for review is filed by that date. … You may request Board review of this initial decision by filing a petition for review.") (emphasis added).

The board's authority to grant a petition for review is plainly *not* limited to "unusual or extraordinary circumstances." *See* 5 C.F.R. § 1201.115 ("Situations in which the Board may grant a petition or cross petition for review *include, but are not limited to* … erroneous findings of material fact …; an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case …; rulings … not consistent with required procedures or involv[ing] an abuse of discretion; [or] [n]ew and material evidence or legal argument … that … was not available when the record closed …") (emphasis added); *id.* ("Notwithstanding

the above provisions in this section, the Board reserves the authority to consider *any* issue in an appeal before it.") (emphasis added).

The fact that the board can also, on its own initiative, reopen a decision even if no party seeks such review is further evidence that MSPB administrative judges do *not* "have the power to render a final decision on behalf of the United States without any such review by their nominal superior or any other principal officer in the Executive Branch." *See Arthrex*, 141 S. Ct. at 1981 (quotation and citation omitted); 5 U.S.C. § 7701(e)(1)(B).

If "[w]hat matters is that the [board] have the discretion to review decisions rendered by [administrative judges]," *Arthrex*, 141 S. Ct. at 1988, then the MSPB statute and regulations provide for just that. In *Arthrex*, the Supreme Court solved the constitutional violation by giving parties the right to seek rehearing from a principal officer. That is exactly what the MSPB statute already provides.

Second, the current absence of a board does not alter the fundamental nature or the constitutional soundness of the MSPB statutory framework. Nor could it. It would be untenable for the same person doing the same job to be an inferior officer one day and a principal one the next; bouncing between constitutionally valid and invalid appointments. Indeed, this Court has already rejected Ms. McIntosh's exact argument: "To be sure, the temporary absence of a quorum means that, at present, if an employee seeks review by the Board, the review will be delayed. But

the delay, while unfortunate, does not convert a constitutionally valid review process into a violation of the Appointments Clause." *Rodriguez v. VA*, 8 F.4th 1290, 1309 (Fed. Cir. 2021). The current absence of a board cannot undermine the fact that the *statute* granting review authority to past and future boards is constitutionally sound.[1]

## II. The Supreme Court's *Arthrex* Decision Confirms That Ms. McIntosh Waived Her Appointments Clause Challenge

There is no question that a challenge under the Appointments Clause can be waived, and has been found by this Court to have been waived. *E.g.*, *Ciena Corp. v. Oyster Optics, LLC*, 958 F.3d 1157 (Fed. Cir. 2020); *In re DBC*, 545 F.3d 1373, 1377 (Fed. Cir. 2008) ("We agree with the government that DBC waived the [Appointments Clause] issue by failing to raise it before the Board."). There is

[1] Ms. McIntosh's passing suggestion that "[o]nce a quorum of the Board ceased to exist, the power of AJs to render decisions should have ceased to exist as well," Supp. Br. 2, overstates the cases she relies on, neither of which involved any delegations to administrative judges at all. Indeed, the DC Circuit stated that "[t]his case does not raise, and we need not decide, the issue whether an employee of the Board could act for the Board pursuant to a delegation order if all three Board members resigned," rendering the quotation relied upon by Ms. McIntosh explicitly *dicta*. *R.R. Yardmasters of Am. v. Harris*, 721 F.2d 1332, 1348 n.31 (D.C. Cir. 1983). And in *New Process Steel, L.P. v. NLRB*, authority was permissively delegated to a three-member panel, which then lost its third member, such that the problem was that the entity *to which authority was delegated*—in this case that would be the administrative judges, not the board—ceased to exist. 560 U.S. 674, 679 (2010); *see id*. at 701 n.4 ("Our conclusion … does not cast doubt on the prior delegations of authority to nongroup members, such as the regional directors or the general counsel.").

equally no dispute that Ms. McIntosh never raised such a challenge at the MSPB. Thus, the only question is "whether this is one of those exceptional cases that warrants consideration of the Appointments Clause issue despite its tardy presentation." *DBC*, 545 F.3d at 1379.

Ms. McIntosh's proffered basis for what makes this case "exceptional" to justify an exercise of this Court's discretion to take up her belated Appointments Clause challenge is that she raised it "before the first body capable of providing [her] with the relief sought." Repl. Br. 14 (alteration in original, citation omitted). That is, she argues that intervention by an Article III court is necessary, because "[i]f this Court determines that the statutory scheme with regard to Board AJs violates the Appointments Clause, then *only this court* can fix the constitutional infirmity by severing any impermissible statute." Repl. Br. 15 (emphasis in original); *see* Supp. Br. 6-7. And as such, she claims that it would have been futile and therefore was unnecessary for her to have raised the issue below. However, that justification presumes a "constitutional infirmity" in the MSPB statute. If the MSPB statute is constitutionally sound as-is, then no involvement of an Article III court is required, Ms. McIntosh accordingly has no excuse for her failure to raise the issue below, and this Court should decline her invitation to consider it anyway.

And in light of the Supreme Court's *Arthrex* decision, there is no question that Ms. McIntosh's justification fails. As discussed above, there is no

"constitutional infirmity" in the "statutory scheme with regard to [MSPB] AJs"—indeed the MSPB statutory scheme already matches what the Supreme Court created as the *remedy* for the constitutional violation in the PTAB. That is, as far as the statute is concerned, the MSPB represents the solution, not a problem. Tellingly, Ms. McIntosh does not identify any statutory provision that only this Court could invalidate. There is nothing for this Court, or any other Article III court, to sever.

Nor does the current absence of a board absolve Ms. McIntosh from raising the issue to the MSPB. There does not appear to be any dispute that, even if this Court finds an Appointment Clause violation, the practical upshot of that decision is that Ms. McIntosh will have to wait until there is a board in place, as no one has suggested that this Court has the power to appoint administrative judges. *See* Supp. Br. 7 (relief requested). Further, Ms. McIntosh is simply wrong that "[r]emanding to the memberless Board without deciding the constitutional issue would only perpetuate the growing number of cases pending before it *that cannot proceed unless and until an Article III court rules*." Supp. Br. 7 (emphasis added). The thing standing in the way of those cases proceeding is Senate confirmation of at least two of the pending board nominees, which no one has suggested this Court could remedy either. The fact is, coming to this Court will not get Ms. McIntosh a decision by a validly appointed administrative judge (to the extent she does not

already have one and the issue is not waived) any faster—or without the board's assistance—than if she had appealed to the board directly.

She, therefore, has no valid excuse for failing to raise her Appointments Clause challenge below, nor has she presented the kind of "exceptional circumstances" that would warrant an exercise of this Court's discretion to consider it anyway. "We decline DBC's invitation to consider a challenge it failed to timely raise, as we do not view the circumstances of this case to warrant such an exceptional measure. Primarily, we reemphasize that while this issue could have been raised before the Board, it was not." *DBC*, 545 F.3d at 1380. Ms. McIntosh waived her Appointments Clause challenge and this Court should decline to hear it.

## III. Whether MSPB Administrative Judges Are Properly-Appointed Inferior Officers—If Not Waived—Is A Question Better Left For The Board

Finally, Ms. McIntosh argues that the "remedy in *Arthrex* is not applicable because board AJs are not properly appointed inferior officers." Supp. Br. 3. In fact, the remedy in *Arthrex* is not applicable because the MSPB statute already does what the *Arthrex* remedy sought to accomplish. More to the point, Ms. McIntosh waived any argument that MSPB administrative judges are improperly appointed inferior officers not once, but twice—first by failing to raise it below

and then again by failing to raise it in her opening brief.[2]

But to the extent that this Court elects to consider this argument, then the appropriate remedy would be to remand that question to the board, where, indeed, it is already pending. The board is fully equipped to handle any issue with respect to the appointment of administrative judges as inferior officers. The board has the power to issue (or revise) its regulations and to issue (or revise) its delegation of authority to hear cases on its behalf. 5 U.S.C. §§ 1204(h) & (b), 7701(b). Indeed, the board is arguably *better* positioned than this Court would be to address this question in the first instance. The board would have at its disposal an intimate understanding of how each of the administrative judges has been appointed, unlike

---

[2] Ms. McIntosh's suggestion that we "should agree" that the administrative judge in her case was not validly appointed as an inferior officer because the DOD, and other agencies, have raised that issue in other cases at the MSPB, Supp. Br. 4-5, ignores practical reality and is largely beside the point. Ms. McIntosh does not suggest that the Government would be *estopped* from defending this case, nor could she. There is nothing contradictory between the agencies' recognition of the fact that there is an interlocutory appeal currently pending before the board that raises the inferior officer issue, and our argument that this question is beyond the scope of Ms. McIntosh's appeal.

On the other hand, there are plainly practical reasons for Government agencies, including the DOD, to want to see the Appointments Clause issue resolved at the board before proceeding to litigate their cases to a potentially illusory conclusion. If, for example, the board *were* to decide in the pending interlocutory appeal that (some or all) administrative judges were not properly appointed as inferior officers and so order new hearings, it would be a waste of limited Government resources to have tried the case through a hearing in the meantime.

the meager, and practically non-existent record on that factual question available to this Court.[3] And if there is a problem, the board could choose among the constitutionally valid alternatives, *e.g.* appointing the administrative judges as inferior officers or reducing their authority, as best fits its operational needs.

At the end of the day, unless all parties are satisfied with the board's resolution, this Court undoubtedly will have ample opportunity to review the board's prospective decision on the status of administrative judges as inferior officers in a future case. A decision on the merits of that question now, without the benefit of the board's analysis, risks unnecessary interference with the administration of the MSPB, but will not assist or speed up the resolution of any infirmity therein in the meantime (or for Ms. McIntosh).

## CONCLUSION

For the foregoing reasons, the Court should reject Ms. McIntosh's invitation to consider her waived Appointments Clause challenge, and for the reasons set forth in our response brief, affirm the decision of the MSPB on the merits.

To the extent that the Court considers Ms. McIntosh's Appointments Clause challenge, the Court should reject her argument that MSPB administrative judges

[3] Ms. McIntosh's citation to this Court's footnote in *Helman*, Supp. Br. 3—a case in which there was no argument that administrative judges were officers, 856 F.3d at 928—cannot make up for the general dearth of factual evidence in this record regarding the specific appointment of the administrative judge in this case.

are principal officers. Finally, to the extent that the Court further permits Ms. McIntosh to challenge the administrative judges' appointment as inferior officers, the Court should remand the case to await the decision by the board on that question in the already pending interlocutory appeal.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARTIN F. HOCKEY, JR.
Acting Director

/s/ Allison Kidd-Miller
ALLISON KIDD-MILLER
Assistant Director

/s/ Galina I. Fomenkova
GALINA I. FOMENKOVA
Trial Attorney
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

October 22, 2021

*Attorneys for the Department of Defense*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation set forth in Court's July 22, 2021 Order (ECF 60). The brief contains 3,994 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

October 22, 2021

/s/ Galina I. Fomenkova
GALINA I. FOMENKOVA

*Attorney for the Department of Defense*