# United States Court of Appeals
# for the Federal Circuit

---

**ELFINA MCINTOSH,**
*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent*

**MERIT SYSTEMS PROTECTION BOARD,**
*Intervenor*

---

2019-2454

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-17-0803-I-4.

---

Decided: November 9, 2022

---

PHILIP SHENG, Davis Polk & Wardwell LLC, Menlo Park, CA, argued for petitioner. Also represented by COREY M. MEYER, New York, NY.

GALINA I. FOMENKOVA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., ALLISON KIDD-

MILLER.

STEPHEN FUNG, Office of General Counsel, United States Merit Systems Protection Board, Washington, DC, argued for intervenor. Also represented by TRISTAN L. LEAVITT, KATHERINE MICHELLE SMITH.

_____

Before LOURIE, BRYSON, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

The Department of Defense removed Elfina McIntosh from her position. Ms. McIntosh alleged she was removed for protected whistleblowing activity. The Merit Systems Protection Board sustained the removal and concluded that the Department would have removed her even absent her protected whistleblowing activity. She now challenges the Board's decision, arguing (1) that the Board's administrative judges are improperly appointed principal officers under the Appointments Clause and (2) that substantial evidence does not support the Board's decision on her removal. We affirm.

I

Elfina McIntosh was employed by the Department of Defense Education Authority as a Program and Budget Analyst. In her role as a Contracting Officer's Representative (COR), Ms. McIntosh was responsible for approving travel expenses for two government contracts. Generally, contractor employees would submit a travel request to the Program Manager, Heather McIntosh-Braden (no relation to Ms. McIntosh), who would then forward them to Ms. McIntosh for review. Ms. McIntosh would ensure the requests complied with Federal Travel Regulations and approve or reject them.

Ms. McIntosh received a promotion around October 2016. Following her promotion, Ms. McIntosh's superiors

noted that her "demeanor degraded" and her "work ethic deteriorated." J.A. 887. The agency raised two repeated problems with Ms. McIntosh's job performance: refusal to approve invoices and refusal to provide contract information to her coworkers as directed.

First, in December 2016, Ms. McIntosh refused to approve a travel authorization request that was submitted to her on the same day as the scheduled travel because she believed she would need to change the start date for it to be contractually appropriate. Her supervisor, Wayne Boswell, stated that this was an emergency circumstance and that the request should be approved to prevent negative impacts on the armed forces. He stated that if she would not approve it, he would. Ms. McIntosh maintained that it would be inappropriate for Mr. Boswell to do so because he was not the designated COR, even though he was the Director of the Office of Financial Readiness.

This was not the only instance of Ms. McIntosh refusing to approve invoices, as she also refused to approve invoices if she herself had not authorized the travel, even if the travel had been authorized by others, like Mr. Boswell, Ms. McIntosh-Braden, or the Contracting Officer Louis Gilden. Mr. Boswell explained to Ms. McIntosh that the contracting officer had informed him that he, as the Director, and Ms. McIntosh-Braden, as the Program Manager, could also approve travel requests. On February 8, 2017, Mr. Boswell informed Ms. McIntosh that her refusal to review and approve invoices amounted to a "refus[al] to perform [her] job requirements." J.A. 1074. That same day, Ms. McIntosh filed a grievance against Mr. Boswell, alleging that he had directed her to approve invoices she had not authorized.

Second, Ms. McIntosh was asked, but repeatedly refused, to provide detailed information about one of her assigned contracts to Mr. Boswell, Ms. McIntosh-Braden, and her coworker, Andy Cohen, who had been asked to review

the contract processes. Ms. McIntosh objected because "the documents and information at issue were sensitive and could only be shared on a need-to-know basis." J.A. 15. Ms. McIntosh also asserted that Mr. Cohen was not a COR on the contract and so was not authorized to receive any information about it. Mr. Boswell, as the Director, gave his authorization. Ms. McIntosh filed more formal grievances on these incidents, alleging that she was being forced to disclose unauthorized information and was harassed and belittled by Mr. Cohen and Mr. Boswell.

The agency investigated Ms. McIntosh's grievances, interviewing several of her co-workers and supervisors. Ms. McIntosh did not respond to the investigator's request for an interview. Based on its investigation, the agency denied Ms. McIntosh's grievances on June 27, 2017, determining that the agency "did not create a hostile work environment or violate any law, rule, or regulation, as alleged." J.A. 258–59.

In February 2017, Mr. Boswell asked Ms. McIntosh to send him her annual leave plan because she had significant use-or-lose leave left over from 2016. In response, Ms. McIntosh sent Mr. Boswell an email with "Tentative Leave Dates" that "may be changed or modified," including March 27–April 3, 2017. J.A. 176.

On March 22, 2017, Ms. McIntosh sent Mr. Boswell an email with the subject line "Sick Leave, 3-22" and no other text. J.A. 1030. Mr. Boswell wished her a speedy recovery but also found her absence curious because they had scheduled her performance review for that day, before Mr. Boswell's imminent retirement. Mr. Boswell sought guidance from Employee Relations, who advised that he could require Ms. McIntosh to submit medical documentation from a licensed doctor that should "[i]nclude a statement that the medical problem rendered her incapacitated for the performance of her duties[.]" J.A. 1031. Mr. Boswell requested the documentation.

Ms. McIntosh again emailed in sick on March 23 and 24. She was also absent from work from March 27–April 4, 2017. She asserted that she had been granted that leave after she sent Mr. Boswell the email with her tentative leave dates. But Mr. Boswell asserted in his sworn statement that, while he received that email, Ms. McIntosh never submitted an actual leave request, nor did Mr. Boswell approve all the dates at issue. He also provided email documentation that showed he had tried to contact Ms. McIntosh about the tentative leave dates because he had no active request for the leave in the attendance system.

Ms. McIntosh returned to work on April 5, by which time Mr. Boswell had retired and Mr. Cohen had become her supervisor. Upon her return, Ms. McIntosh submitted a letter from her doctor that said she "should be excused from work due to illness from 3/22/2017 through 3/24/2017." J.A. 1035. Mr. Cohen, who had since been promoted to replace Mr. Boswell, consulted Employee Relations and determined that the documentation was not administratively acceptable. He requested further documentation and gave her 15 days to procure it. Ms. McIntosh never provided the added documentation.

Upon returning to work on April 5, Ms. McIntosh went to meet with John T. Hastings, her second-level supervisor, to discuss her grievances. He directed her to meet with Mr. Cohen, but she refused, reiterated her grievances, and requested reassignment. She then emailed the contracting officers of the two contracts she managed and told them to remove her as COR immediately.

On the morning of April 6, Mr. Cohen sought to speak with Ms. McIntosh, but she told him that he should email her instead and left. She then went to Mr. Hastings's office to speak with him. After he asked her to wait a few moments as he finished a task, he turned to her. She responded, "[n]ever mind, I'll handle it myself. I'm not doing COR duties anymore." J.A. 495. She then left and, on her

way out, left three binders containing COR files on the desk of Mr. Hastings's executive assistant. She told Mr. Hastings that they were COR files and later emailed Mr. Cohen to alert him that the files were in Mr. Hastings's office for his retrieval. Ms. McIntosh then emailed several people to let them know she was leaving early because she was "in a hostile work environment" and that, for her safety, she "ha[d] advised Mr. Hasting[s] that I am going home." J.A. 1047–48. She left at 8:47 am.

Mr. Cohen placed Ms. McIntosh on paid administrative leave on April 7, 2017 and issued a Notice of Proposed Removal on May 19, 2017. The Notice contained 22 specifications across four charges: 1) inappropriate conduct, 2) failure to follow supervisory instructions, 3) absences without leave (AWOL), and 4) lack of candor. The deciding official, Ms. McIntosh's third-level supervisor, Dr. Elizabeth Van Winkle, sustained the removal, concluding that Ms. McIntosh's "lack of dependability and refusal to work with team members" meant that management had lost "confidence in [her] ability to perform [her] duties." J.A. 123–24. Ms. McIntosh's removal became effective on August 18, 2017.

Ms. McIntosh appealed her removal to the Board. The administrative judge sustained 18 of the agency's 21 remaining specifications, across all four charges.[1] She found that Ms. McIntosh largely did not dispute the actions supporting the charges and that the sworn statements from Ms. McIntosh's supervisors, as well as emails and contemporaneous documents in the record, were more persuasive than Ms. McIntosh's evidence.

The administrative judge also considered Ms. McIntosh's whistleblower defense that the agency was

---

[1]    The agency withdrew one of the specifications. J.A. 1010.

retaliating for the grievances she had filed alleging that Mr. Boswell, Ms. McIntosh-Braden, and Mr. Cohen had violated federal contracting rules. She concluded that Ms. McIntosh had met her burden, based on the knowledge-timing test, of showing that her grievances, filed in early 2017, could be a contributing factor in the May 2017 removal decision. But the administrative judge determined that, under the *Carr* factors, the agency had established by clear and convincing evidence that it would have removed Ms. McIntosh even absent her disclosures, given the "strength of the evidence against the appellant and the seriousness of the charges." J.A. 42–44 (citing *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999)). Finally, the administrative judge concluded that the agency's penalty of removal was reasonable and promoted the efficiency of the service.

The administrative judge's decision became final on July 20, 2019. Ms. McIntosh appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

Under 5 U.S.C. § 7703(c), we may reverse a Board decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Sistek v. Dep't of Veterans Affs.*, 955 F.3d 948, 953 (Fed. Cir. 2020). The petitioner bears the burden of establishing reversible error. *Id.*

We review the Board's legal decisions de novo and its findings of fact for substantial evidence. *Salmon v. Soc. Sec. Admin.*, 663 F.3d 1378, 1380 (Fed. Cir. 2011); *Bolton v. MSPB*, 154 F.3d 1313, 1316 (Fed. Cir. 1998). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Simpson v. Off. of Pers. Mgmt.*, 347 F.3d 1361, 1364 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

197, 229 (1938)). We defer to the Board's penalty determination "unless the penalty exceeds the range of permissible punishments specified by statute or regulation, or unless the penalty is 'so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.'" *Villela v. Dep't of the Air Force*, 727 F.2d 1574, 1576 (Fed. Cir. 1984) (quoting *Power v. United States*, 531 F.2d 505, 507 (Ct. Cl. 1976)).

## III

### A

Ms. McIntosh first argues that, under the Appointments Clause, the Board's administrative judges are principal officers and are therefore required to be appointed by the President and confirmed by the Senate. Because the administrative judge here was not appointed by the President and confirmed by the Senate, Ms. McIntosh contends that her final decision is invalid. Appellant's Br. 47. We disagree.

The Appointments Clause provides that only the President, with the advice and consent of the Senate, can appoint principal officers. U.S. Const. art. II, § 2, cl. 2; *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1979 (2021). For inferior officers, the Clause permits Congress to vest appointment power "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

The Supreme Court has explained that "[w]hether one is an 'inferior' officer depends on whether he has a superior," and "'inferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Edmond v. United States*, 520 U.S. 651, 662–63 (1997). *Edmond* emphasized three factors for distinguishing principal and inferior officers: (1) whether an appointed official has the power to review and reverse

the officers' decision; (2) the level of supervision and oversight an appointed official has over the officers; and (3) whether an appointed official has the power to remove the officers without cause. *See id.* at 664–65; *see also Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1338 (D.C. Cir. 2012).

In *United States v. Arthrex, Inc.*, the Supreme Court determined that the administrative patent judges of the Patent Trial and Appeal Board (PTAB), who are appointed by the Secretary of Commerce and issue decisions on behalf of the Executive Branch, were improperly appointed principal officers because they had the "'power to render a final decision on behalf of the United States' without any . . . review by their nominal superior or any other principal officer in the Executive Branch." 141 S. Ct. at 1981 (quoting *Edmond*, 520 U.S. at 665). Ms. McIntosh contends that the same problem exists with the Merit Systems Protection Board's administrative judges.

The Board's structure and, in particular, how its administrative judges are appointed and issue decisions, is different from the PTAB. The MSPB itself is made up of three members who are appointed by the President with the advice and consent of the Senate, making them principal officers. 5 U.S.C. § 1201. The Board's administrative judges, who are appointed under the Board Chairman's general authority under 5 U.S.C. § 1204(j), adjudicate cases and issue initial decisions under the Board's appellate jurisdiction. *See* 5 U.S.C. § 7701(b)(1) ("The Board may hear any case appealed to it or may refer the case to an . . . employee of the Board designated by the Board to hear such cases . . . ."). An administrative judge's initial decision becomes the final decision of the Board unless a party appeals or the Board reopens the case on its own motion. *Id.* § 7701(e)(1). Thus, unlike the PTAB, an administrative judge's decision is subject to review by a principal officer, in this case, the three member MSPB.

Still, Ms. McIntosh argues that the Board's administrative judges qualify as principal officers because "an appointed official . . . does not have the power to review and reverse [their] decision[s] in cases that are *not* appealed to the Board." Appellant's Br. 49 (citing 5 U.S.C. § 7701(a)-(b)) (emphasis added). Ms. McIntosh is incorrect. Under 5 U.S.C. § 7701(e)(1)(B), the Board, whose members are principal officers appointed by the President with the advice and consent of the Senate, *see* 5 U.S.C. § 1201, may "reopen[] and reconsider[] a case *on its own motion*." 5 U.S.C. § 7701(e)(1)(B) (emphasis added). Review is not limited only to cases in which a party appeals to the full Board. Even "[o]ne member of the Board may grant a petition or otherwise direct that a decision be reviewed by the full Board." *Id.* And the Board has discretion to determine whether "unusual or extraordinary circumstances" warrant reopening the appeal. 5 C.F.R. § 1201.118. In contrast, no principal officer had the power to review the final decisions of administrative patent judges before the constitutional remedy in *Arthrex. See Arthrex*, 141 S. Ct. at 1981.

Federal employees retain the unilateral ability to petition for the Board's review of an administrative judge's initial decision, 5 U.S.C. § 7701(e)(1)(A); 5 C.F.R. § 1201.114(c), and so need not rely on the Board's discretion to obtain review. Upon review, the Board may "reverse, modify, or vacate" the administrative judge's decision. 5 C.F.R. § 1201.117. Moreover, "the board is free to substitute its judgment for that of one of its presiding officials." *Connolly v. U.S. Dep't of Just.*, 766 F.2d 507, 512 (Fed. Cir. 1985). The statutes and related regulations show that the Board maintains significant review authority over administrative judges' decisions, and the first and second prongs of *Edmond* weigh in favor of concluding that the Board's administrative judges are not principal officers.

B

Ms. McIntosh next argues that the Board Chairman "lack[s] unfettered removal authority" to remove the Board's administrative judges, suggesting that they are principal officers under the third *Edmond* prong. Appellant's Br. 50 (quoting *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1332 (Fed. Cir. 2019), *vacated*, 141 S. Ct. 1970). While true that the Board's administrative judges can only be removed "for such cause as will promote the efficiency of the service," 5 U.S.C. § 7513(a), that fact alone is insufficient to render them principal officers. Indeed, in *Arthrex*, the same for-cause removal restriction applied to administrative patent judges, but the Supreme Court ultimately held that the administrative patent judges could properly be considered inferior officers, even with the restriction on removal, as long as their decisions were subject to review by a principal officer. *Arthrex*, 141 S. Ct. at 1985–87. To remedy the unconstitutional statutory structure in *Arthrex*, the Supreme Court held unenforceable the provision of the America Invents Act that shielded administrative patent judges' decisions from Director review. *Id.* at 1987. This enabled the Director to "review[] the decisions of the PTAB on his own." *Id.* The Court left in place the removal restrictions under 5 U.S.C. § 7513, because, "regardless [of] whether . . . at-will removal by the Secretary would cure the constitutional problem, review by the Director better reflects the structure of supervision within the PTO and the nature of [administrative patent judges'] duties." *Id.* The Court emphasized that "the Director need not review *every* decision of the PTAB. What matters is that the Director have the discretion to review decisions rendered by [administrative patent judges]." *Id.* at 1988 (emphasis added).

Here, unlike the U.S. Patent and Trademark Office Director or the Secretary of Commerce, principal officers who previously lacked the authority to review administrative patent judges' decisions, *see Arthrex*, 141 S. Ct. at 1978, the

Board, a body of properly appointed principal officers, already has the discretion and authority to review administrative judges' decisions sua sponte, *see supra* section III.A. The Board's statutory structure mirrors that of the PTAB following the *Arthrex* remedy: the Board has the unfettered authority to review decisions rendered by administrative judges, and so even if the administrative judges are protected by the § 7513 removal standard, they are "subject to the direction and supervision of an officer nominated by the President and confirmed by the Senate," just as administrative patent judges are following the *Arthrex* remedy. *Arthrex*, 141 S. Ct. at 1988. We hold that the Board's administrative judges are not principal officers.

## C

Third, Ms. McIntosh argues that the administrative judge's decision violates the Appointments Clause because no Board was in place throughout her case, meaning "whatever review authority or removal authority the Board has over [administrative judges] is non-existent and inapplicable as applied to Ms. McIntosh." Appellant's Reply Br. 26. But Ms. McIntosh could have still petitioned for Board review and had her decision reviewed once a quorum was established, as explained at the end of the administrative judge's decision. Furthermore, this court recently considered this argument in another Board appeal and rejected it:

> The absence of a quorum . . . is a temporary circumstance, not a structural defect resulting from statutory limitations on Board review of administrative judges' initial decisions . . . . To be sure, the temporary absence of a quorum means that, at present, if an employee seeks review by the Board, the review will be delayed. But the delay, while unfortunate, does not convert a

constitutionally valid review process into a vi-
olation of the Appointments Clause.

*Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290, 1309
(Fed. Cir. 2021). We note that Board members have since
been nominated and confirmed, and a quorum has been re-
stored. Press Release, U.S. Merit Sys. Prot. Bd., *MSPB
Welcomes Acting Chairman Cathy A. Harris* (June 6, 2022),
https://mspb.gov/publicaffairs/press_releases/Cathy_Har-
ris_Press_Release_1930967.pdf.

## D

Finally, Ms. McIntosh argues in her Reply Brief that
even if the Board's administrative judges are inferior offic-
ers and not principal officers, they are still not properly ap-
pointed by the "President," a "court[] of law," or a "head[]
of department[]" as required by the Appointments Clause.
Appellant's Reply Br. 28. The government argues that she
has doubly forfeited this challenge by not raising it before
the Board or in her opening brief.

Ms. McIntosh did not preserve this argument because
challenging the appointment of an inferior officer is a sep-
arate ground for reversal that she failed to raise in her
opening brief. "Our law is well established that arguments
not raised in the opening brief are" forfeited. *Smithkline
Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed.
Cir. 2006) (citation omitted). We have found similar be-
lated Appointments Clause challenges forfeited following
our initial decision in *Arthrex. See Customedia Techs., LLC
v. Dish Network Corp.*, 941 F.3d 1173, 1174 (Fed. Cir. 2019)
(concluding that Appointments Clause challenges not
raised in the opening brief are forfeited).

Even if the administrative judges are inferior officers,
any issues with their appointment have since been reme-
died. A quorum of the reconstituted Board, who qualify as
"heads of departments" under the Appointments Clause,
issued a Ratification Order on March 4, 2022 that ratified

the prior appointments of administrative judges, "approv[ing] these appointments as our own under Article II of the Constitution." U.S. Merit Systems Protection Board Ratification Order (Mar. 4, 2022), available at https://www.mspb.gov/foia/files/AJ_Ratification_Order_3-4-2022.pdf.

In sum, the Board's administrative judges are not principal officers under the Appointments Clause because the Board retains the unfettered authority to review their decisions under 5 U.S.C. § 7701(e)(1)(B), meaning they are "subject to the direction and supervision of an officer nominated by the President and confirmed by the Senate." *Arthrex*, 141 S. Ct. at 1988. Ms. McIntosh's Appointments Clause challenge thus fails, and we turn to the merits.

## IV

On the merits, Ms. McIntosh argues that substantial evidence does not support the agency's four charges against her, or that the administrative judge committed legal error in affirming said charges. We address each charge in turn.

## A

Specification 1 of Charge 1 alleges that Ms. McIntosh engaged in inappropriate conduct when she emailed contractors unilaterally removing herself from her COR duties. Ms. McIntosh contends that no evidence supports the administrative judge's conclusion, despite sworn statements from Ms. McIntosh's superiors that she had not been authorized to remove herself from those duties and lacked the authority to do so unilaterally. Ms. McIntosh does not dispute that she sent the emails but defends that she sent them in response to an email from Mr. Boswell with the subject "Financial Readiness Leadership" that said, "effective 3 April [sic], Andy Cohen will . . . assume all duties in overseeing program management and COR responsibilities" relating to the two contracts Ms. McIntosh oversaw. J.A. 171–72. She claims she read this email as stripping

her of her COR duties. This reading strains credulity. As the administrative judge noted, Mr. Boswell emailed several people across the contracting group to advise them that he was retiring and that Mr. Cohen would be taking over his duties as Director—"[n]othing in that email addresses any change in the assigned COR or otherwise indicates that [Ms. McIntosh] was relieved of her duties concerning those contracts." J.A. 6 & n.3. Substantial evidence supports the administrative judge's conclusion about this specification.

Ms. McIntosh also challenges Specification 2 of Charge 1, which alleges that she engaged in inappropriate conduct when she left three binders of sensitive COR files on the public desk of Mr. Hastings's executive assistant, refused to speak to Mr. Hastings, and directed Mr. Cohen to retrieve the files. Ms. McIntosh does not dispute that the binders contained sensitive information but asserts that she left them with Mr. Hastings's assistant in an office in the Pentagon, "an undoubtedly secure place." Appellant's Br. 39. Mr. Hastings provided a sworn statement that the documents should have been left with Mr. Cohen, Ms. McIntosh's supervisor, who was responsible for overseeing the contracts at issue. The administrative judge weighed this sworn statement, corroborated by a contemporaneous memorandum written by Mr. Hastings, against Ms. McIntosh's unsworn statement and determined that Mr. Hastings's evidence was entitled to more weight, especially because Ms. McIntosh had failed to make this argument in her reply to the agency's proposal notice. The administrative judge concluded that, "[a]s it is undisputed that the documents contained sensitive or proprietary information regarding contracts within Mr. Cohen's division," preponderant evidence supported the specification. J.A. 10–11. Given that Ms. McIntosh knew the files were sensitive and repeatedly refused to share them with others on that basis, she should have known she could not leave them with someone who was not authorized to view them. Ms.

McIntosh asks us to reweigh the evidence on appeal, which we cannot do. *Rickel v. Dep't of the Navy*, 31 F.4th 1358, 1366 (Fed. Cir. 2022). Substantial evidence supports the administrative judge's conclusion about Charge 1, Specification 2.

B

As to Charge 2, failure to follow supervisory instructions, Ms. McIntosh argues that, under 5 U.S.C. § 2302(b)(9)(D), the agency was forbidden from taking a personnel action against her for "refusing to obey an order that would require the individual to violate a law, rule, or regulation." In her view, her refusal to give COR documents to Mr. Cohen, because he was not the COR assigned to the contract and therefore not authorized to receive that information, was a protected action.

This argument is new on appeal—before the Board, Ms. McIntosh cited only to a case that discussed how disclosing confidential information about "processes, operations, style of work, or apparatus" of contract offerors could violate a criminal code. J.A. 906 (citing *Kent v. GSA*, 56 M.S.P.R. 536, 546–647 (1993)). But she never specifically pointed to that criminal code or any "law, rule, or regulation" that she was allegedly asked to violate in complying with Mr. Boswell's instructions to share the information with Mr. Cohen and Ms. McIntosh-Braden. *See* J.A. 258 (Agency's Response to Grievances finding Ms. McIntosh failed to provide clarification about the allegations and that Mr. Cohen "was in a need-to-know position"). Ms. McIntosh now cites the COR Handbook in support—specifically, a section that says CORs cannot use "following the boss's orders" as an excuse to approve unauthorized contract changes. Appellant's Br., 9, 33 (citing Dep't of Def., COR Handbook 57 (2012). But that Handbook was not in the record below, and this argument was never made to the Board, and so it is forfeited. Even if it were not, showing the COR

files to Mr. Cohen as instructed would not have been an unauthorized contract change.

Ms. McIntosh also cites to the COR Appointment Memoranda, which state that a COR must "protect[] privileged and sensitive procurement information." J.A. 471. Even if the COR Appointment Memoranda qualified as a "rule" she was asked to violate under 5 U.S.C. § 2302(b)(9)(D), it was "not a clear and direct violation" of the memoranda to provide the contracting information to Mr. Cohen. The Department of Defense Instruction governing COR appointments states that "COR files will be available for review by the contracting officer, *internal review officials, or other officials as authorized by the contracting officer*." J.A. 227 (emphasis added). Mr. Cohen was authorized by the Director, Mr. Boswell, to review the documents and so he qualified as an internal review official. It was not reasonable for Ms. McIntosh to think she could not disclose the documents to Mr. Cohen. Substantial evidence supports the administrative judge's finding that Ms. McIntosh failed to follow supervisory instructions.

C

The agency charged Ms. McIntosh with multiple specifications of being absent without leave (AWOL). Ms. McIntosh argues that she was not AWOL on March 22–27, 2017, as alleged by Specifications 1–3 of Charge 3, but that the agency impermissibly converted her granted sick leave to AWOL status. "To support a charge of AWOL, the agency must show both that the appellant was absent and that either the absence was not authorized or that a request for leave was properly denied." *Cooke v. U.S. Postal Serv.*, 67 M.S.P.R. 401, 404 (1995), *aff'd*, 73 F.3d 380 (Fed. Cir. 1995).

Substantial evidence supports the administrative judge's conclusion that Ms. McIntosh was AWOL. She does not dispute that she was not at work from March 22–24, 2017. Following her cursory email stating, "Sick Leave, 3-

22," Mr. Boswell sought guidance from Employee Relations, as directed by the regulation, as to what steps he could take to verify her absence, given that it was taken the day they had scheduled her last performance review before his retirement. And Mr. Cohen, as Ms. McIntosh's supervisor, was within his authority to request additional information, after he, in consultation with Employee Relations, found her initial medical note "not administratively acceptable." J.A. 24, 518. Mr. Cohen gave her 15 days to acquire this new documentation, and she never provided it. Thus, her sick leave was never authorized, and substantial evidence supports the administrative judge's sustaining of these specifications.

For the first time on appeal, Ms. McIntosh raises the agency's leave regulations, which state:

> Ordinarily, a medical certificate is not required for [sick leave] absences of 3 days or less. When there is reason to believe that an employee is misusing sick leave, a medical certificate may be required for all absences chargeable to sick leave, regardless of the duration. This restriction can be imposed only when the employee has first been specifically informed of the requirement in advance. . . . Failure to comply with these requirements may be the basis for denying sick leave and carrying an employee in an AWOL status. When appropriate, disciplinary action may be taken for noncompliance. . . . Contact the Personnel Center, Employee Relations Section, for advice and guidance concerning leave usage.

Dep't of Def., DoDEA Regulation 5360.9 (Apr. 2, 1999), available at https://www.dodea.edu/Offices/Policy-AndLegislation/upload/5630_9.pdf. Ms. McIntosh argues that she was never informed of this medical certification requirement in advance, in violation of the regulation. Ms. McIntosh never raised this regulation below, and so

her argument is forfeited. Even if it were not, Mr. Cohen consulted Employee Relations, as directed by the regulation, and gave notice to Ms. McIntosh that he was seeking more medical certification. Even with the 15 days he gave her to obtain it, she never provided it.

Ms. McIntosh also challenges the administrative judge's sustaining of Specifications 4–10 of the agency's AWOL charges, regarding her absences on March 27–31 and April 3–4, 2017. She does not dispute that she was absent those days but contends that her "Tentative Leave Dates" email from February 2017 included those dates and that Mr. Boswell orally approved them before later revoking his approval. Appellant's Br. 35–36. But, as the Board noted, Ms. McIntosh presented no evidence that she submitted an actual leave request or that it was approved— while Mr. Boswell provided a sworn statement that she never submitted an actual leave request and that he never approved the dates at issue. J.A. 26–28. He also provided contemporaneous email documentation showing that he had informed Ms. McIntosh that there was no active leave request in the system. Substantial evidence supports the administrative judge's sustaining of these specifications as well.

D

As to Charge 4, lack of candor, Ms. McIntosh argues that the charge cannot be sustained because there is no evidence that she had any intent to deceive the agency when she emailed agency officials telling them she had advised Mr. Hastings that she was leaving for the day on April 6, 2017. But a lack of candor charge does not require an intent to deceive. *See Ludlum v. Dep't of Just.*, 278 F.3d 1280, 1284 (Fed. Cir. 2002) ("Falsification involves an affirmative misrepresentation, and requires intent to deceive. Lack of candor, however, is a broader and more flexible concept . . . . It may involve a failure to disclose something that, in the circumstances, should have been disclosed in order to

make the given statement accurate and complete." (citation omitted)). The administrative judge weighed Ms. McIntosh's inconsistent statements that she had either advised Mr. Hastings that she was leaving, or that she had advised him and that he concurred, against Mr. Hastings's sworn statement that he was never informed of, nor did he approve, her leaving that day. The administrative judge concluded that Ms. McIntosh's email "appears clearly designed to imply that she had notified someone in the agency when, in fact, the preponderant evidence indicates that she left work without any authorization." J.A. 31–32. It is not for us to reweigh evidence on appeal. Substantial evidence supports the administrative judge's conclusion that Ms. McIntosh lacked candor.

Because we conclude that each of the agency's charges are supported by substantial evidence, we defer to the judgment of the agency and conclude that the penalty of removal was not an abuse of discretion. *Quinton v. Dep't of Transp.*, 808 F.2d 826, 829 (Fed. Cir. 1986).

E

Turning to Ms. McIntosh's whistleblower reprisal defense, she contends that the agency failed to prove by clear and convincing evidence that she would have been removed regardless of the grievances she had filed. In determining whether the agency has met this burden, we consider the three *Carr* factors: 1) the strength of the agency's evidence in support of its action, 2) the existence and strength of any motive to retaliate on the part of the agency officials who participated in the decision, and 3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr*, 185 F.3d at 1323. The agency "need not produce evidence with regard to each of these factors, nor must each factor weigh in favor of the agency," but we instead consider the record as a whole and balance the factors to determine whether substantial evidence supports the

agency's action. *Robinson v. Dep't of Veterans Affs.*, 923 F.3d 1004, 1019–20 (Fed. Cir. 2019).

Ms. McIntosh mostly contends that the administrative judge's *Carr* analysis was too brief, and therefore legally insufficient. Appellant's Br. 44. Ms. McIntosh also complains that the administrative judge did not address the third *Carr* factor.

On the first *Carr* factor, the administrative judge noted that, most significantly, the agency had established its four charges by preponderant evidence—"serious charges, many with multiple specifications, and were often repeated." J.A. 43. We have already concluded that substantial evidence supports the administrative judge's determinations on these charges. Therefore, the evidence and the first *Carr* factor strongly support the agency's decision to remove Ms. McIntosh.

As for the second *Carr* factor, the administrative judge determined that the deciding official, Dr. Van Winkle, had no retaliatory motive because she was never the subject of any of Ms. McIntosh's complaints. The administrative judge also determined that Mr. Cohen had no motivation to retaliate because Ms. McIntosh "provide[d] no evidence of any disclosure she made that [he] engaged in activity in violation of any law, rule or regulation or that he engaged in gross mismanagement, a gross waste of funds," or other violations. J.A. 43. Ms. McIntosh did file a grievance, however, alleging that Mr. Cohen acted in a hostile and belligerent manner toward her. While the administrative judge thought these allegations did not show any motivation for Mr. Cohen to retaliate, we take a different view. A personal complaint about Mr. Cohen's behavior could give rise to a personal motive to retaliate. We do agree, however, that Dr. Van Winkle likely had no motivation to retaliate, given that she was never the subject of any grievances and because Ms. McIntosh admitted that the two had never interacted. Therefore, the evidence for this factor is neutral.

Finally, under the third *Carr* factor, Ms. McIntosh did not identify any "similarly situated" individuals before the Board, except in support of discrimination claims she has waived on appeal. *See* J.A. 715–17, 896–901, 911–17. The agency also did not identify any "similarly situated" individuals. J.A. 434. Because no pertinent evidence was presented on *Carr* factor three, it is effectively removed from the analysis. *Rickel*, 31 F.4th at 1366 (citing *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1374 (Fed. Cir. 2012)).

Considering the record as a whole and balancing the factors, we conclude that substantial evidence supports the administrative judge's determination that, "[b]ased on the strength of the evidence against the appellant and the seriousness of the charges," J.A. 43–44, the agency has met its burden of showing it would have removed Ms. McIntosh even absent her grievances.

V

We have considered Ms. McIntosh's remaining arguments but find them unpersuasive. Because the Merit Systems Protection Board's administrative judges are not principal officers, and because substantial evidence supports the Board's decision on Ms. McIntosh's removal, we affirm.

**AFFIRMED**

COSTS

No costs.